UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

M.C. o/b/o E.C., a minor,       12 CV 9281 (CM)(AJP)
                Plaintiff,

    -against-       **AFFIDAVIT OF ATTORNEY**


Department of Education of the City of
New York,

                Defendant.
----------------------------------------------------------------x

STATE OF NEW YORK    )
COUNTY OF NEW YORK  ) ss.:

LEAH A. HILL, being duly sworn, deposes and says:

1. I am an attorney duly admitted to practice in the State of New York. I am a Clinical Associate Professor at Fordham University School of Law ("Fordham") and Supervising Attorney with Lincoln Square Legal Services, Inc. ("LSLS"). LSLS represents M.C. in this action for attorneys' fees and costs and also represented M.C. in all phases of the underlying due process proceeding and impartial hearing held pursuant to the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA").

2. I make this affidavit in support of this motion for summary judgment seeking an award of attorneys' fees and costs to M.C. as the prevailing party, pursuant to 20 U.S.C. § 1415(i)(3), the attorneys' fees provision of the IDEIA.

<u>CLINICAL PROGRAM AT FORDHAM</u>

3. LSLS is a charitable, not-for-profit organization established to implement Fordham's "in-house" or live-client clinical program, an experiential learning

1

      program for students who have completed at least two semesters of law school. Students enroll in various substantive clinical courses in order to provide legal representation under faculty supervision to low-income families in civil and criminal legal matters. Fordham's nationally recognized clinical program, recently ranked number fifteen in the country by U.S. News and World Report, offers students fifteen clinics to choose from, including the Family Advocacy Clinic ("FAC").

4. All of the live-client clinical courses available through the program include a mandatory three-credit casework component focused on client representation and a two-credit seminar component focused on substantive law, skill development and ethical considerations in practice.

5. I teach the FAC seminar and supervise the students in the casework component, where we represent LSLS clients in special education proceedings.

## NATURE OF THE FAC

6. Students interested in the FAC undergo a competitive selection process during which they are required to complete an application and submit a resume. Following submission of these documents, and prior to being offered a position in the clinic, students attend a group interview and orientation session. Afterwards students are selected based upon their experience and prior coursework, with preference being given to students who have taken a semester-long course focused on client interviewing, counseling and negotiation, and are in their third year of law school.

7. During their tenure with the FAC, law student interns are assigned to work in teams and must meet with me for supervision at least once per week to review their work and develop litigation strategies. Additional supervision meetings are scheduled as needed based upon the level of work required on any given case. Students are also required to utilize Time Matters®, the practice management software used by LSLS to maintain and manage confidential client files. Students use Time Matters® to contemporaneously record all of the activities on cases and enter the hours spent on those activities utilizing the program's billing function. The interns are also required to submit copies of their weekly billing reports to my assistant for tracking each week. Thereafter a weekly billing report is prepared and submitted to me for review. In that way I am able to monitor student activities and billing practices.

LAW STUDENT INTERNS WHO PROVIDED REPRESENTATION TO M.C.

8. As set forth below, this case was handled by five law student interns enrolled in the FAC beginning in the fall of 2009, when a due process complaint was filed, through the spring of 2011, when the impartial hearing decision was rendered. I supervised each of the interns who provided representation on this case and assumed primary responsibility for representation during the summer when clinic classes were not in session. As such I am fully familiar with the facts and circumstances set forth below.

9. STS1 (hereinafter referred to as "Law Student Intern 1")[1] was enrolled in the FAC during the fall of 2009 from August until December. AA9 ("Law Student Intern 2") and RWU ("Law Student Intern 3") were enrolled in the spring of 2010 from January until May. SMI ("Law Student Intern 4") and BDU ("Law Student Intern 5") were enrolled in the FAC in the fall of 2010 from August until December, with BDU continuing into the spring 2011 semester. All of the above-named students were assigned to represent M.C. during their respective terms.

10. This affidavit sets forth the basis for how the legal interns' hourly rate was determined, and also details the services they performed and the time they expended for M.C.

11. This affidavit also sets forth my experience and qualifications upon which my hourly rate was determined, and also details the services I performed and the time I expended for M.C.

## MY EXPERIENCE, QUALIFICATIONS, AND HOURLY RATE

12. I received my J.D. degree from Rutgers University School of Law in 1985 and my B.A. degree from Brooklyn College in 1982. I was admitted to practice in the

---

[1] To protect the privacy of the law student interns who were assigned to represent M.C., variations of the individuals' initials, as generated by Time Matters®, have been used throughout this affidavit, memorandum of law, and supporting papers. To that end, the resumes of Law Student Interns 1 through 5, attached herewith as Exhibits A through E, have been redacted to exclude full names and contact information. Copies of unmodified resumes are on file with the Department of Education ("DOE").

4

courts of the State of New York in 1987. A copy of my resume is submitted herewith as Exhibit F.

13. I have nearly three decades of litigation experience. I started my legal career with Legal Services for New York City in 1986 and later worked for the Legal Aid Society, Civil Division, as a staff attorney. At both agencies I provided representation to low-income clients in a variety of civil proceedings in state and federal court. The bulk of my experience involved representation of clients in a range of trial-level family law proceedings, including child custody and visitation, matrimonial, child abuse and neglect, and proceedings to obtain orders of protection in cases involving domestic violence.

14. Early on in my career, I developed such a track record of successful litigation that I was called upon to conduct substantive law and litigation skills trainings for new attorneys at the Legal Aid Society. In 1995, I left my position at the Legal Aid Society to accept an Assistant Clinical Professor position at New York University School of Law in the Family Defense Clinic. The following year I began teaching at Fordham where I later helped to pioneer a collaborative interdisciplinary clinical model that combines law and social science theories to craft approaches to solving family and education law problems. The model involves co-teaching with a social work professor and utilizes graduate social work students to work collaboratively with the law student interns.

15. For the past seventeen years I have been teaching law students about the intricacies of practicing law by providing them with hands-on, closely supervised experiences representing clients in a variety of family and education law

proceedings. In my teaching and practice I have employed the interdisciplinary model I helped pioneer at Fordham. During this period I have also been hired as a consultant to develop and conduct trainings of attorneys and summer associates in large law firms and at the New York City Law Department.

16. In my clinical teaching and practice I began to focus heavily on special education cases beginning in 2006, and those cases now make up the bulk of the FAC's interdisciplinary docket. Given my background in litigation and my experience integrating social science knowledge into my legal practice, the transition into representing clients in special education cases was seamless. Since I handled my first special education case in 2006, FAC clients have prevailed at every impartial hearing we have undertaken. We have also achieved other victories for our clients, including thousands of hours of compensatory education services and hundreds of thousands of dollars for private school tuition.

17. Upon information and belief, my experience is commensurate with a senior partner in private practice, with an hourly rate easily above the $400 I have charged in this case. My rate is also consistent with the rates charged in the relevant community. Copies of affidavits filed in another case in the Southern District of New York ("SDNY"), which reflect billing rates for disinterested special education law practitioners with comparable experience, is submitted herewith as Exhibits G through K.

## LAW STUDENT INTERNS' EXPERIENCE, QUALIFICATIONS, AND HOURLY RATE

18. Resumes for the law student interns set forth each student's experience and qualifications, and reveal that each had relevant experience prior to enrollment in the FAC. These law student interns comprised an impressive group with an array of relevant prior experience. Exhs. A-E.

19. Upon information and belief, the law student interns are comparable to paralegals or summer associates in private practice. The hourly rate of $150 charged for the law student interns in this case is consistent with rates that paralegals are billed for in the SDNY. Small firms in the SDNY, which focus on special education law, regularly bill paralegal work within the range of $125 to $200 per hour. Copies of affidavits filed in another case in the SDNY, which reflect billing rates for disinterested special education law practitioners' paralegals, is submitted herewith as Exh. K at 15, 18 and Exh. I at 2.

## TASKS PERFORMED AND PROCEEDINGS – M.C. o/b/o E.C.

20. M.C. is the parent and natural guardian of E.C., who, at the time M.C. sought legal assistance from LSLS, was a student in the New York City ("NYC") public school system with multiple deficits in all academic areas. A copy of the Federal Complaint is submitted herewith as Exhibit L.

21. M.C. and LSLS signed a retainer agreement on November 9, 2009. A copy of the Retainer Agreement is submitted herewith as Exhibit M.

22. The law student interns representing M.C. met with and interviewed her numerous times, and obtained and analyzed E.C.'s educational records and

7

documents relating to his disabilities. The records were extensive and complex due to the complicated nature of E.C.'s disabilities and educational history. This was compounded by the myriad procedural and substantive errors of the DOE, including but not limited to, incomplete and inconsistent evaluations and Individualized Education Programs ("IEPs").

23. In order to prepare M.C.'s request for an impartial hearing and ensure a fair outcome for E.C., the law student interns investigated claims and developed case theories in order to draft a due process complaint. The complaint outlined several procedural and substantive failures on the part of the DOE, which amounted to the denial of a free and appropriate public education ("FAPE") to E.C. A copy of the Due Process Complaint is submitted herewith as Exhibit N.

24. On November 20, 2009, the law student interns filed a due process complaint on behalf of M.C., requesting an impartial hearing to challenge the appropriateness of E.C.'s classifications in 2007, 2008 and 2009, the adequacy of E.C.'s evaluations and development of his IEPs in 2007, 2008, and 2009, and the failure by the DOE to properly implement E.C.'s IEPs in 2008 and 2009. The due process complaint outlined the DOE's repeated procedural and substantive errors in evaluating and classifying E.C., and in developing and implementing appropriate IEPs for him. The due process complaint alleged that, collectively, these errors amounted to a denial of a FAPE. Exh. N.

25. As relief, M.C. requested comprehensive independent evaluations at public expense, and further that E.C.'s "current program and placement be reviewed, taking into account said independent evaluations." M.C. also requested

compensatory education services to compensate E.C. for services, which the DOE never delivered to him. Exh. N.

26. The DOE did not submit an answer to M.C.'s complaint and the case proceeded to hearing. A copy of the June 9, 2010 Impartial Hearing Transcript is submitted herewith as Exhibit O at 14.

27. M.C.'s impartial hearing, Case Number 125343, was assigned to Impartial Hearing Officer ("IHO") Ralph Pennington, Esq. Exh. L ¶11.

28. In December 2009, the law student interns represented M.C. at a Resolution Meeting with the DOE, in which they negotiated the terms of a Partial Resolution Agreement. This Agreement, dated February 23, 2010, secured comprehensive, independent evaluations of E.C. to be conducted at public expense, and further that the Committee on Special Education (CSE) be reconvened following the completion of the independent evaluations. A copy of the Partial Resolution Agreement is submitted herewith as Exhibit P.

29. In preparation for the impartial hearing, and in further development of the record, the law student interns continued to obtain and analyze educational records, consult with experts, and prepare M.C. and other witnesses for the impartial hearing.

30. The impartial hearing was first scheduled for April 30, 2010. The DOE requested an adjournment, and the hearing was rescheduled for June 9, 2010.

31. LSLS prepared and submitted sixteen preliminary exhibits, totaling nearly 100 pages, including E.C.'s educational records. LSLS timely served the DOE with

copies of all documentary evidence at least five days in advance of the June 9, 2010 hearing.

32. The DOE did not submit a witness list or an exhibit list. Exh. O at 13.

33. At the June 9, 2010 impartial hearing, the LSLS law student interns delivered their opening statement and entered the sixteen exhibits into evidence. Exh. O. On the same day of hearing, the IHO granted the DOE's request for adjournment. Exh. O at 5.

34. The next day of hearing was scheduled for July 8, 2010. Exh. O at 11. Again, the DOE requested an adjournment, and the hearing was rescheduled for September.

35. In the interim, the LSLS law student interns continued to obtain and analyze additional records pertaining to E.C.'s disabilities.

36. The impartial hearing proceeded on September 21, 2010. LSLS withdrew and resubmitted the sixteen exhibits previously entered into evidence on June 9, 2010. LSLS submitted thirteen additional exhibits, for a total of twenty-nine exhibits for the record. Collectively, these twenty-nine exhibits demonstrated the complexity of E.C.'s educational history and disabilities, as well the DOE's many procedural failures. A copy of the September 21, 2010 Impartial Hearing Transcript is submitted herewith as Exhibit Q.

37. The primary issue litigated at the hearing was the DOE's failure to provide E.C. with a FAPE, as required by IDEIA. Exhs. O and Q.

38. At the conclusion of the hearing, the IHO directed the parties to submit closing statements by November 5, 2010. Exh. Q at 37.

39. LSLS submitted a twenty-nine page closing statement to provide detailed analysis of the record and application of the relevant law to M.C.'s case. LSLS also submitted an additional exhibit, an IEP dated August 10, 2010. In the closing statement, LSLS amended the relief sought to request a Related Service Authorization ("RSA") in the form of 198 hours of speech and language therapy and 360 hours of individual reading and writing instruction to compensate E.C. for the services never delivered to him by the DOE. The closing statement further requested that the CSE reconvene to develop a new and appropriate IEP and defer to the Central Based Support Team ("CBST") to place E.C. in an appropriate nonpublic school setting. The closing statement specifically requested the School of Language and Communication Development ("SLCD"). A copy of the Closing Statement is submitted herewith as Exhibit R.

40. The DOE did not submit a closing statement to the IHO.

41. IHO Pennington issued his decision on January 4, 2011 with findings in favor of M.C. on <u>all</u> claims asserted. IHO Pennington found that a "gross violation of FAPE was committed by the Department" for the 2008-2009 and the 2009-2010 school years. See Hearing Officer's Findings of Fact and Decision submitted herewith as Exhibit S at 4. IHO Pennington ordered the DOE to fund and/or provide E.C. an RSA for additional services in the amount of 198 hours of speech and language therapy and 360 hours of private tutoring. He further ordered that the CSE reconvene within three weeks of his decision, with a properly constituted team, to consider all of E.C.'s evaluations, develop an appropriate IEP, and

consider deferral to CBST in light of the proposed placement of SLCD. Exh. S at 6 and "Pay Order".

42. LSLS expended 978.3 hours over a fifteen-month period on M.C.'s case, a fraction of which was actually billed for. Exh. L ¶24.

43. The retainer agreement between LSLS and M.C. allows LSLS to pursue and retain attorneys' fees as part of settlement or litigation of M.C.'s case. Exh. M ¶8. On April 11, 2011, M.C. signed an additional authorization allowing LSLS to pursue and retain attorneys' fees incurred during its representation of M.C., pursuant to the 2009 Retainer Agreement. A copy of the Authorization is submitted herewith as Exhibit T.

44. The law student interns prepared billing records to submit to the DOE in relation to LSLS's demand for payment of reasonable attorneys' fees for the representation of M.C. LSLS was proactive in exercising billing judgment prior to making the demand for attorneys' fees. LSLS did not charge for excessive, redundant or unnecessary work. In addition, LSLS did not charge for time spent implementing the impartial hearing decision or preparing the fee application. Exh. L ¶23.

45. In a letter dated March 25, 2011, LSLS made a written demand upon the DOE for payment of reasonable attorneys' fees. See Attorney Fee Request submitted herewith as Exhibit U. The request was accompanied by all documents required by the DOE. Exh. L. ¶21-22.

46. While the parties were not able to reach a settlement, LSLS made reasonable efforts to resolve the dispute before filing this federal court action. Exh. L. ¶26.

47. In preparing for the federal complaint, and in order to reveal its billing judgment, LSLS submitted its actual billing records which made visible the "no charge" billing records. This timesheet also includes billing entries related to time spent implementing the impartial hearing decision and preparing the fee application. Exh. L. ¶23.

48. I attest that I supervised and provided the legal services for M.C. as described in the timesheet submitted as an exhibit to the federal complaint, on the dates, and for the time periods, specified. Timesheets were prepared from contemporaneously maintained records. All dates and descriptions of tasks performed are true and accurate. All work performed was reasonable and necessary to provide competent representation and ensure a fair outcome for E.C.

49. At this time I respectfully request leave to file a supplemental affidavit and timesheet for tasks performed in this district court action, at the time M.C.'s reply papers are due, that will support M.C.'s request for reasonable costs and fees incident to this action.

WHEREFORE, I respectfully request the Court to award reasonable attorneys' fees for LSLS's work incident to M.C.'s impartial hearing, and in this district court action, in the following amounts:

Impartial Hearing, M.C. o/b/o E.C.   $56,945[2]
Federal court action                 TO BE REQUESTED

_____
LEAH A. HILL, Esq.

Sworn to before me this
18th day of April, 2013

_____
Notary Public

Kelsey Lynne Ripper
Notary Public
State of New York, NY County
LIC. #01RI6255102
COMM. EXP. 01/30/2016

---

[2] M.C. erroneously charged for one hour of attorney time for attendance at a Resolution Meeting on December 8, 2009. Accordingly, M.C. reduces her claim by $400.00 to reflect a credit of this one hour.

14