UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

M.C. o/b/o E.C., a minor,                                    12 CV 9281 (CM)(AJP)

                    Plaintiff,

      -against-

Department of Education of the City of
New York,

                    Defendant.

-------------------------------------------------------------x


# MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
## AWARDING ATTORNEYS' FEES AND COSTS

**LEAH A. HILL, Esq.**
**LINCOLN SQUARE LEGAL SERVICES**
**33 West 60th Street, 3rd Floor**
**New York, NY 10023**
**212-636-6934**
**Fax (212) 636-6923**
**lhill@lsls.fordham.edu**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT

STATEMENT OF FACTS

    A.    Plaintiff M.C.

    B.    Professor Leah A. Hill's Qualifications, Experience, and Hourly Rate

    C.    Law Student Interns' Qualifications, Experience, and Hourly Rate

        1.  Law Student Intern 1

        2.  Law Student Intern 2

        3.  Law Student Intern 3

        4.  Law Student Intern 4

        5.  Law Student Intern 5

        6.  Law Student Interns' Hourly Rate

STATUTORY AND REGULATORY FRAMEWORK

ARGUMENT

    PLAINTIFF WAS THE PREVAILING PARTY AND IS ENTITLED TO AN AWARD OF REASONABLE ATTORNEYS' FEES PURSUANT TO THE IDEIA

    A.    M.C. Was the Prevailing Party

    B.    The Hours Spent Pursuing M.C.'s Claims Were Reasonable

    C.    Professor Leah Hill's Hourly Rate is Consistent With Rates Prevailing in the Community and is Appropriate Under the IDEIA

**D.**   **Law Student Interns' Hourly Rate is Consistent With Rates Prevailing in the Community and is Appropriate Under the IDEIA**

**E.**   **Costs and Fees Incurred in Maintaining This Action**

**CONCLUSION**

## TABLE OF AUTHORITIES

**PAGE**

### CASES

Bd. of Educ. v. Rowley, 458 U.S. 176, 207 (1982)   9

A.R. v. New York City Dep't of Educ., 407 F.3d 65 (2d Cir. 2005)   9, 10, 17

E.S. v. Katonah-Lewisboro Sch. Dist., 796 F. Supp. 2d 421 (S.D.N.Y. 2011)   12, 13, 14, 18
    aff'd sub nom. E.S. ex rel. B.S. v. Katonah-Lewisboro Sch. Dist.,
    487 F. App'x 619 (2d Cir. 2012)

Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res.,   10
    532 U.S. 598, 604 (2001)

Hensley v. Eckerhart, 461 U.S. 424 (1983)   11

Petrovits v. New York City Transit Authority 2004 WL 42258 (S.D.N.Y.)   12

Wise v. Kelly, 620 F. Supp. 2d 435 (S.D.N.Y. 2008)   12, 15

G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.,   14
    09 CIV. 859 (KMK), 2012 WL 4108111 (S.D.N.Y. Sept. 18, 2012)

I.B. v. New York City Dept. of Educ., 336 F.3d 79 (2d Cir. 2003)   15

Moon v. Gab Kwon, 99 CIV. 11810 (GEL),   15
    2002 WL 31512816 (S.D.N.Y. Nov. 8, 2002)

LV v. New York City Dept. of Educ.,   16
    700 F. Supp. 2d 510, 523-24 (S.D.N.Y. 2010).

Robinson v. City of New York, 05 CIV. 9545 (GEL),   16
    2009 WL 3109846 (S.D.N.Y. Sept. 29, 2009)

Torres v. City of New York, 07 CIV. 3473 (GEL),   16
    2008 WL 419306 (S.D.N.Y. Feb. 14, 2008)

<u>Lucerne Textiles, Inc. v. H.C.T. Textiles Co., Ltd.</u>,                   16-17
    12 CIV. 5456 KMW AJP, 2013 WL 174226
    (S.D.N.Y. Jan. 17, 2013) <u>report and recommendation adopted,</u>
    12 CV 5456 KMW AJP, 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013)

<u>Hnot v. Willis Group Holdings Ltd.</u>, 01 CIV. 6558 GEL,                   18
    2008 WL 1166309 (S.D.N.Y. Apr. 7, 2008)

<u>U.S. ex rel. ATC Distribution Group, Inc. v.</u>                           18
    <u>Ready-Built Transmissions, Inc.</u>, 03 CIV2150GWG,
    2007 WL 2522638 (S.D.N.Y. Sept. 7, 2007)

## STATUTES

20 U.S.C. § 1400, et seq.,                                                   1

20 U.S.C. § 1415(i)(3)                                                       1

20 U.S.C. §1400(d)(1)(A)                                                     9

20 U.S.C §1400(d)(1)                                                         9

1415(b)(6)(A)                                                                9

N.Y. Educ. L. §4404(1)(a)                                                    9

20 U.S.C. §1415(i)(3)(B)(i)                                                  9

20 U.S.C. §1415(i)(3)(B)                                                     9

20 U.S.C. §1415(i)(3)(B)(i)(I)                                              10

20 USC § 1415(i)(3)(C)                                                      12

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

M.C. o/b/o E.C., a minor,

                          Plaintiff,

           -against-

Department of Education of the City of
New York,

                          Defendant.

-----------------------------------------------------------x

12 CV 9281 (CM)(AJP)

**MEMORANDUM OF LAW
IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT
AWARDING ATTORNEYS'
FEES AND COSTS**

## PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted in support of the plaintiff's ("M.C.'s") motion for award of attorneys' fees and costs pursuant to the fee shifting provision of the "Individuals with Disabilities Education Improvement Act" ("IDEIA"), 20 U.S.C. § 1400, et seq., specifically 20 U.S.C. § 1415(i)(3).  M.C. is entitled to such fees and costs because she was the prevailing party at an impartial hearing regarding her child, E.C.  At the time M.C. sought legal assistance, E.C. was a child who presented with multiple academic and social deficits, severe expressive and receptive language difficulties and unidentified disabilities, all of which went unaddressed by the Department of Education ("DOE").  M.C. was represented by a legal team comprised of law student interns and a seasoned supervising attorney, all of whom were affiliated with Fordham University School of Law ("Fordham").  The attorney and law student interns' hours expended on this case were reasonable to ensure a fair outcome for M.C., due to the complicated nature of E.C.'s disabilities and educational history that informed the proceedings below, and in light of the DOE's persistent failures and subsequent lack of

1

preparedness in defending the due process complaint.  The sweeping relief granted by the

Impartial Hearing Officer ("IHO") further indicates that the hours expended were reasonable.

The attorney and law student interns' hourly rates are commensurate with, if not below, market

rates that prevail in the community.

## STATEMENT OF FACTS

### A.    Plaintiff M.C.

M.C. is the parent and natural guardian of E.C., who, at the time M.C. sought legal

assistance from LSLS, was a student in the New York City ("NYC") public school system with

multiple deficits in all academic areas.  Hill Aff. ¶ 20; Exh. L ¶¶ 5, 15.

Lincoln Square Legal Services ("LSLS") represented M.C. on behalf of E.C., in all

phases of the underlying due process proceeding and impartial hearing held pursuant to the

IDEIA. Hill Aff. ¶ 21; Exhs. L ¶ 8, M.  The case was handled by several law student interns,

selected for participation in the Family Advocacy Clinic ("FAC") at Fordham under the

supervision of Leah A. Hill, Esq., Clinical Associate Professor, and Supervising Attorney, LSLS.

Hill Aff. ¶¶ 1, 8; Exh. L ¶ 9.

At the time LSLS was retained to represent M.C., E.C. had been a special education

student in the New York City public school system for six years.  During this time, the DOE

failed to properly evaluate and classify E.C. and further failed to develop an appropriate

Individualized Education Plan ("IEP") to address E.C.'s multiple disabilities.  Exh. S at 4-5.

After several client interviews with M.C., and review of numerous educational records,

LSLS filed a due process complaint on behalf of M.C., on November 20, 2009, requesting an

impartial hearing to challenge the appropriateness of E.C.'s classifications, the adequacy of

E.C.'s evaluations and development of his IEPs, and the failure by the DOE to properly

implement E.C.'s IEPs. Hill Aff. ¶¶ 22-24; Exh. N. The due process complaint covered a period of three years and outlined the DOE's repeated procedural and substantive errors. The due process complaint alleged that, collectively, these errors amounted to a denial of a Free Appropriate Public Education ("FAPE"). Hill Aff. ¶ 24; Exhs. L ¶ 10, N.

As relief for the DOE's repeated failures and gross violations of its responsibility to provide E.C. with a FAPE, M.C. requested independent evaluations, compensatory education services. Hill Aff. ¶ 25; Exh. N. All of the foregoing relief was granted by IHO Ralph Pennington. Hill Aff. ¶ 41; Exhs. L ¶ 13, S at 6, "Pay Order."

This case was complicated as a result of the DOE's numerous procedural and substantive failures and the lack of responsiveness and preparedness of its representatives. Throughout the proceedings below, the DOE caused continuous delay by requesting multiple adjournments. Hill Aff. ¶¶ 22, 26, 30, 33-34. Moreover, the DOE failed to even put on a case against M.C. Hill Aff. ¶¶ 26, 32, 40.

At the conclusion of the hearing, IHO Pennington directed the parties to submit closing statements. LSLS timely submitted a twenty-nine page closing statement providing a detailed analysis of the record in light of the relevant law. Hill Aff. ¶ 39; Exh. R.

IHO Pennington issued his decision on January 4, 2011 with findings in favor of M.C. on all claims asserted. Significantly, IHO Pennington found that a "gross violation of FAPE was committed by the DOE" for two school years. Hill Aff. ¶ 41; Exhs. L ¶ 18, S at 4. The DOE was ordered to fund and/or provide E.C. a Related Services Authorization ("RSA") for additional services totaling 198 hours of speech and language therapy and 360 hours of private tutoring. He further ordered that the Committee on Special Education ("CSE") reconvene within three weeks of his decision, with a properly constituted team, to consider all of E.C.'s evaluations, develop an

appropriate IEP, and consider deferral to Centralized Based Support Team ("CBST") in light of

the proposed placement at the School of Language and Communication Development ("SLCD").

Hill Aff. ¶ 41; Exhs. L ¶ 20, S at 6 and "Pay Order".

In a letter dated March 25, 2011, LSLS made a written demand upon the DOE for

payment of reasonable attorneys' fees. Hill Aff. ¶ 45; Exhs. L ¶ 21, U.  LSLS was proactive in

exercising billing judgment prior to making the demand for attorneys' fees, by not charging for

excessive, redundant or unnecessary work.  Hill Aff. ¶ 44; Exh. L ¶ 23.

**B.**     **Professor Leah A. Hill's Qualifications, Experience, and Hourly Rate**

Professor Hill, Esq. is a Clinical Associate Professor at Fordham and Supervising

Attorney with LSLS.  Hill Aff. ¶ 1; Exh. F at 1.  She both represented M.C. and supervised law

student interns assigned to represent M.C. in connection with the due process complaint and

subsequent impartial hearing.  Hill Aff. ¶ 8.  Professor Hill received her J.D. degree from

Rutgers University School of Law in 1985 and her B.A. degree from Brooklyn College in 1982.

Hill Aff. ¶ 12; Exh. F at 2.  She was admitted to practice in the courts of the State of New York

in 1987.  Hill Aff. ¶ 12.

Prior to her nearly seventeen-year-long tenure at Fordham, Professor Hill gained

substantial experience as a litigator first with Legal Services for New York City (1986-1990) and

subsequently with Legal Aid Society, Civil Division (1990-1995).  Hill Aff. ¶¶ 13-14; Exh. F at

2.  After nearly a decade of litigating cases, Professor Hill became a Clinical Professor, teaching

first at New York University School of Law (August 1995-August 1996) and subsequently at

Fordham (August 1996-Present).  Hill Aff. ¶ 14; Exh. F at 1.

During Professor Hill's association with Fordham, by the time she came to represent

M.C., she, along with the law student interns who she supervised, had successfully litigated

several special education cases.  Hill Aff. ¶¶ 9, 16.  Professor Hill had also taught various law school courses, remained actively associated with several professional groups, authored law-related publications, participated in and facilitated various professional conferences, engaged in public speaking events (by invitation) and had even been hired as a consultant to develop and conduct trainings of attorneys and summer associates in large law firms and at the New York City Law Department.  See generally Exh. F.

Professor Hill has been practicing law, as a litigator, Clinical Professor, or both, for nearly three decades.  Hill Aff. ¶¶ 13-15; Exh. F at 1-2.  Prior to 2009, when she handled plaintiff's impartial hearing, she had more than twenty years of experience as a practicing attorney in the State of New York.  Hill Aff. ¶¶ 12-14; Exh. F at 2.  Accordingly, her experience is commensurate with that of a senior partner in private practice, focusing on special education law, in the Southern District of New York ("SDNY"), with an hourly rate easily above the $400 rate requested in this action.  Hill Aff. ¶17.  See Exh. G (affirming that attorney who graduated law school in 1972 currently charges $550 per hour); Exh. H (affirming that attorney who graduated law school in 1990 currently charges $500 per hour); Exh. I (affirming that attorney admitted to practice in New York in 1996 currently charges $475 per hour); Exh. J (affirming that attorney who graduated law school in 2002 currently charges $450 per hour).

### C.    Law Student Interns' Qualifications, Experience, and Hourly Rate

The five law student interns, whose work on the M.C. matter was charged, provided representation to M.C. in connection with the due process complaint and subsequent impartial hearing.  Hill Aff. ¶ 8.  All of these law student interns comprised an impressive group with an array of relevant prior experience before enrolling in the FAC.  Hill Aff. ¶ 18; Exhs. A-E.

### 1. Law Student Intern 1

Law Student Intern 1 was enrolled in the FAC during the fall of 2009 from August until December.  Hill Aff. ¶ 9; Exh. A.  By the time Law Student Intern 1 enrolled in the FAC in her final year of law school, she had already gained valuable experience as a fall/summer law clerk (November 2008-August 2009) at a law firm, and prior to that, as a judicial intern in the Bronx Supreme Court (February 2008-August 2008).  Exh. A.

Law Student Intern 1 received her J.D. degree from Fordham in May 2010 with a public service fellowship, public service award, as a member of the Environmental Law Review, and having served as a participant in the School's Mediation Clinic.  Exh. A.  She received her B.A. degree from Hamilton College in May 2007.  Exh. A.

### 2. Law Student Intern 2

Law Student Intern 2 was enrolled in the FAC during the spring of 2010, from January until May.  Hill Aff. ¶ 9; Exh. B.  In the years between graduating from college and matriculating in law school, Law Student Intern 2 worked for two years as a research analyst at Ipreo (July 2006-August 2008), where she was tasked with substantial projects.  Exh. B  In addition, prior to enrolling in the FAC, Law Student Intern 2 worked for one year as a bookkeeper/assistant for a doctor (August 2008-July 2009).  Exh. B.

Law Student Intern 2 received her J.D. degree from Fordham in May 2011, having been a member of the Environmental Law Journal.  Exh. B.  She received her B.A. degree from Fordham University in May 2006.  Exh. B.

### 3. Law Student Intern 3

Law Student Intern 3 was enrolled in the FAC during the spring of 2010, from January until May.  Hill Aff. ¶ 9; Exh. C.  Prior to enrolling in the FAC, while a student at Fordham, Law

Student Intern 3 had gained substantive legal experience as a summer associate in the Mass Torts Group of Bernstein Liebhard, LLP (May 2009-August 2009).  Exh. C.

Law Student Intern 3 received her J.D. degree from Fordham in May 2011, having had a student note published in the Fordham International Law Journal and having served as an Associate Editor on the same.  Exh. C.  She received her M.S. degree in Pharmaceutical Sciences from Rutgers University in October 2008, and B.S. degree *magna cum laude* from The College of New Jersey in May 2006.  Exh. C.

### 4.   Law Student Intern 4

Law Student Intern 4 was enrolled in the FAC during the fall of 2010 from August until December.  Hill Aff. ¶ 9; Exh. D.  In the years between graduating from college and matriculating in law school, Law Student Intern 4 worked for more than three years at Cravath, Swaine & Moore LLP, first as a Litigation Legal Assistant (September 2006-March 2008) and then as a Litigation Case Manager with increased responsibilities (March 2008-August 2009).  Exh. D.  She subsequently returned to the Firm at a partner's request "to assist with [a] copyright infringement and antitrust case" (April 2010-July 2010).  Exh. D.

Prior to enrolling in the FAC, while a student at Fordham, Law Student Intern 4 had gained valuable experience as a research assistant at Fordham's Samuelson-Glushko Intellectual Property & Information Law Clinic (June 2010-August 2010) and as a judicial intern in the Kings County Supreme Court (June 2010-August 2010).  Exh. D.

Law Student Intern 4 received her J.D. degree from Fordham in May 2012, having been a member of the Fordham Intellectual Property, Media & Entertainment Law Journal and participating in various law-related activities.  Exh. D.  Law Student Intern 4 received her

Masters of Public Administration and B.A. degrees, both from John Jay College of Criminal

Justice/CUNY, in June 2006.  Exh. D.

### 5.  Law Student Intern 5

Law Student Intern 5 was enrolled in the FAC for the duration of his final year of law

school, in the fall of 2010, beginning in August, through the spring of 2011.  Hill Aff. ¶ 9; Exh.

E.   Prior to enrolling in the FAC, while a student at Fordham, Law Student Intern 4 had gained

valuable experience as an intern to the Jamaican Council for Human Rights (Spring Break 2009),

as a fellow to the New York City Bar Association (March 2009-December 2010), and as a City

Bar Justice Center intern (May 2010-August 2010).  Exh. E.

Law Student Intern 5 received his J.D. degree from Fordham in May 2011, having been

honored as a competitor in the Willem C. Vis International Arbitration Moot, where his "team

finished 11th out of 75 in the world."  Exh. E.  Law Student Intern 5 received his B.A. degree

from Boston College in May 2007.  Exh. E.

### 6.  Law Student Interns' Hourly Rate

All of the law student interns' experience is commensurate with, or exceeds that of

paralegals or summer associates in private practice in the SDNY, with an hourly rate similar to

$150 that has been requested in this case.  Hill Aff. ¶ 19.  See Exh. I at 2 (affirming that the

paralegal rate at law firm focusing on special education law in the SDNY is $200 per hour); Exh.

K at 15 (affirming that paralegal rates at a firm in the SDNY, which focuses on special education

law, is either $125 or $150 per hour depending on the paralegal's level of experience).  Unlike

paralegals these law student interns had all completed at least two semesters of law school and

participated in a clinic where they received extensive supervision.

## STATUTORY AND REGULATORY FRAMEWORK

The purpose of the IDEIA is to ensure that students with disabilities are provided with a FAPE, which meets their needs. 20 U.S.C. §1400(d)(1)(A). To ensure that disabled children are provided with special education and related services designed to meet each student's unique needs, (20 U.S.C §1400(d)(1)), IDEIA presents educators and parents with the necessary tools to implement an education plan reasonably calculated to bestow an educational benefit upon each student. Bd. of Educ. v. Rowley, 458 U.S. 176, 207 (1982).

Section 1415(b)(6)(A) of the IDEIA provides procedural safeguards that enable parents and students to challenge the local educational agency's decisions, including the right to file a due process complaint requesting an impartial hearing "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education." Id. In New York State, this impartial hearing is held at the school district level by an IHO. N.Y. Educ. L. §4404(1)(a).

In the Court's discretion, parents who prevail in "any action or proceeding" brought under the IDEIA are entitled to recover reasonable attorneys' fees as part of the costs incurred in the course of the proceedings. 20 U.S.C. §1415(i)(3)(B)(i). "Any action or proceeding," as referred to in 20 U.S.C. §1415(i)(3)(B), includes impartial hearings. A.R. v. New York City Dep't of Educ., 407 F.3d 65, 75 (2d Cir. 2005).

## ARGUMENT

### PLAINTIFF WAS THE PREVAILING PARTY AND IS ENTITLED TO AN AWARD OF REASONABLE ATTORNEYS' FEES PURSUANT TO THE IDEIA

Under the IDEIA, "in any action or proceeding" courts have the discretion to "award "reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child

with a disability." 20 U.S.C. §1415(i)(3)(B)(i)(I).  An impartial hearing held under the IDEIA

qualifies as a proceeding for purposes of recovering attorneys' fees.  A.R., 407 F.3d at 75.  When

determining an award of attorneys' fees under the IDEIA, courts first examine whether the party

seeking fees is the prevailing party.  If the answer is yes, courts then determine whether the party

should be awarded fees.  E.S. v. Katonah-Lewisboro Sch. Dist., 796 F. Supp. 2d 421, 427

(S.D.N.Y. 2011) aff'd sub nom. E.S. ex rel. B.S. v. Katonah-Lewisboro Sch. Dist., 487 F. App'x

619 (2d Cir. 2012).

### A.    M.C. Was the Prevailing Party

To be considered a prevailing party one must "succeed on any significant issue in

litigation which achieves some of the benefit the parties sought in bringing the suit" either during

or concluding an action.  Id. (quoting B.W. ex rel. K.S. v. New York City Dep't of Educ., 716 F.

Supp. 2d 336, 345 (S.D.N.Y. 2010).    Further, a "judicially sanctioned change" in the legal

relationship of the parties must be achieved.  Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't

of Health & Human Res., 532 U.S. 598, 604 (2001) (quoting Tx. State Teachers Ass'n, 489 U.S.

at 792, 109 S.Ct. 1486).

It is beyond dispute that M.C. is a prevailing party for the purposes of obtaining an

attorneys' fee award under the IDEIA. Not only did M.C. achieve success on a significant issue

after the impartial hearing, she prevailed on all the claims she asserted.  After the conclusion of

the hearing, the IHO determined that a "gross violation of FAPE was committed by the DOE"

for the 2008-2009 and the 2009-2010 school years." Exhibit S at 4.  The procedural violations

identified in the IHO decision were overwhelming.  He found that "the DOE failed to properly

and fully evaluate E.C." (Exhibit S at 4), "failed to properly classify E.C." (Exhibit S at 4),

"repeatedly used a classification that is not recognized under the law further proving that the

DOE failed to properly develop an appropriate IEP over a substantial period of time" (Exhibit S at 4), "repeatedly changed E.C.'s classifications though he had not been properly evaluated as a basis for the changes" (Exhibit S at 4), "failed to provide a properly composed IEP team and excluded meaningful participation from the parent who is a critical participant "(Exhibit S at 4, 5), "failed to properly implement the flawed yet developed IEPs" (Exhibit S at 4), and "failed to provide at least 198 hours of services mandated under E.C.'s IEP." (Exhibit S at 4).

The relief ordered by the IHO was similarly forceful, creating an unquestionable judicially sanctioned change in the legal relationship between the parties. The DOE was ordered to "fund and/or provide E.C. an RSA for additional services totaling 198 hours of speech and language therapy and 360 hours of private tutoring." Exh. S at 6. He further ordered that "the CSE reconvene within three weeks of his decision, with a properly constituted team, to consider all of E.C.'s evaluations, develop an appropriate IEP, and consider deferral to CBST in light of the proposed placement at the SLCD." Exh. S at 6.

### B.    The Hours Spent Pursuing M.C.'s Claims Were Reasonable

The attorneys' fee request by LSLS does not include any unreasonable, unnecessary or excessive hours. Hensley v. Eckerhart, 461 U.S. 424 (1983). All work performed was essential to providing competent representation and ensuring a fair outcome for E.C. Hill Aff. ¶ 23. Further, LSLS maintained accurate, contemporaneous and detailed billing records by utilizing case management software, Time Matters®. Hill Aff. ¶ 7, 48. Tasks billed for included, but are not limited to, client interviews, analysis of extensive documents and claims, preparation of documents for submission at the hearing, conducting the hearing and writing a twenty-nine page closing brief. Hill Aff. ¶ 31, 36. Analysis of the records was particularly time consuming because they were extensive and complex due to the complicated nature of E.C.'s disabilities and

11

educational history.  Hill Aff. ¶ 36.  This was compounded by the myriad procedural errors

committed by the DOE.  Hill Aff. ¶ 36.  LSLS faced the additional challenge created by the

DOE's lack of preparedness and delays.  Hill Aff. ¶ 30, 33, 34, 40.

    To further ensure that the hours expended was reasonable, LSLS was especially vigilant

in exercising billing judgment.  See Petrovits v. New York City Transit Authority 2004 WL

42258 (S.D.N.Y.).  LSLS scrutinized the billing records to identify entries that were excessive,

redundant or unnecessary and did not charge for that work.  Hill Aff. ¶ 44.  In fact, LSLS only

billed for a fraction of the total hours expended over a fifteen-month period.  Hill Aff. ¶ 42.

### C.    Professor Leah Hill's Hourly Rate is Consistent With Rates Prevailing in the Community and is Appropriate Under the IDEIA

    Fees awarded pursuant to the IDEIA are based on such rates "prevailing in the

community in which the action or proceeding arose for the kind and quality of services

furnished." 20 USC § 1415(i)(3)(C).  Professor Hill's hourly rate of $400 is considerably less

than the prevailing rates in the relevant community.  See Exhs. G-K.  It should be noted that the

analysis used for determining reasonable hourly rates "for attorneys from non-profit

organizations, and attorneys from private law firms doing pro bono work, is the same as it is for

other attorneys." Wise v. Kelly, 620 F. Supp. 2d 435, 442 (S.D.N.Y. 2008) (citing Arbor Hill

Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 493 F.3d 110, 112 (2d Cir. 2007)

opinion amended and superseded sub nom. Arbor Hill Concerned Citizens Neighborhood Ass'n

v. Cnty. of Albany & Albany Cnty. Bd. of Elections, 522 F.3d 182 (2d Cir. 2008) and holding

modified by Simmons v. New York City Transit Auth., 575 F.3d 170 (2d Cir. 2009)).

    Judges are instructed to use their discretion and consider case-specific variables to

determine the reasonableness of the attorney's hourly rate.  E.S. v. Katonah-Lewisboro Sch.

Dist., 796 F. Supp. 2d 421, 428 (S.D.N.Y. 2011) aff'd sub nom. E.S. ex rel. B.S. v. Katonah-Lewisboro Sch. Dist., 487 F. App'x 619 (2d Cir. 2012) (citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008)).  Further, "a reasonable hourly rate is the rate a 'paying client would be willing to pay," and "[i]n determining the reasonableness of the proposed hourly rate, a court should consider the twelve factors outlined in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1994), and 'bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Id. at 428-29 (quoting Arbor Hill, 522 F.3d at 190).  After determining a reasonable hourly rate, the court "should use the rate to calculate the 'presumptively reasonable fee.'"  Id. at 429 (quoting Arbor Hill, 522 F.3d at 190).  The fee applicant has the burden of showing "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Id. at 429 (quoting Blum v. Stenson, 465 U.S. 886, 896 n. 11 (1984)).

In E.S., the plaintiffs failed to establish "that their counsel's rates [were] in line with the prevailing rate for legal services in their community." E.S., 796 F. Supp. 2d at 429.  Relying primarily on prior case law, this Court set an experienced attorney's hourly rate at $350.  This particular attorney had graduated from law school in 1993 and had fourteen years of experience in special education cases. Id. at 425-26, 430.  Affirming the District Court's ruling in E.S., the Second Circuit made clear that "[a]bsent more compelling evidence of the reasonableness of the rates requested, the district court acted well within its discretion by looking to other IDEA cases in determining an appropriate rate . . . ." E.S. ex rel. B.S. v. Katonah-Lewisboro Sch. Dist., 487 F. App'x 619, 624 (2d Cir. 2012).

13

More recently, in <u>G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.</u>, 09 CIV. 859 (KMK), 2012 WL 4108111 (S.D.N.Y. Sept. 18, 2012), this Court approved requested hourly rates of $450 and $300 for two attorneys in an IDEIA case, one of whom had graduated from law school in 1978 and the other of whom had been admitted in New York State in 1996. <u>Id.</u> at *10. This was after noting both that courts in this district have been awarding the same "prevailing rates" for IDEIA cases in the last two years that had been used "up to fourteen years ago," namely $350 to $375 per hour, and that it is unquestionable that "market rates for legal services in New York has increased" during this fourteen year period. <u>Id.</u> at 8-9.  This Court then found the requested rates of $450 and $300 to be reasonable, despite the fact that neither attorney submitted affidavits "created for the purpose of demonstrating that the fees sought by [the attorneys] [were] reasonable in this case." <u>Id.</u> at n.13.

Unlike the plaintiff in <u>E.S.</u>, M.C., in the instant action, has indeed offered evidence of the reasonableness of the requested rate of $400 by annexing copies of affidavits filed in another case in the SDNY, which reflect billing rates for disinterested special education law practitioners with comparable skill, experience and reputation, providing similar services in the same district. See Exhibits G through K.  Further, M.C., in the instant action, has requested an amount lower than all of the aforementioned practitioners, including that of an attorney who graduated law school in 2002, who currently charges $450 per hour.  Exh. J (affirming that attorney who graduated law school in 2002 currently charges $450 per hour); <u>see</u> Exh. G (affirming that attorney who graduated law school in 1972 currently charges $550 per hour); Exh. H (affirming that attorney who graduated law school in 1990 currently charges $500 per hour); Exh. I (affirming that attorney admitted to practice in New York in 1996 currently charges $475 per hour).

The fact that part of Professor Hill's career was spent practicing in an area other than education law is no objection to an otherwise comparable hourly rate. See I.B. v. New York City Dept. of Educ., 336 F.3d 79, 82 (2d Cir. 2003) (explaining that it is "entirely obvious that most important legal skills are transferrable, and, unsurprisingly, DOE is unable to identify any caselaw to the contrary"). This is especially true in light of Professor Hill's seamless transition into representing clients in special education cases as a result of her background in litigation and experience integrating social science knowledge into her legal practice. Hill Aff. ¶ 16. As stated in Professor Hill's affidavit, at the time she represented M.C. in her Impartial Hearing in 2009, she had been admitted to practice for more than twenty years (since 1987). Hill Aff. ¶ 12. For most of her legal career she concentrated on family law matters, but she gained substantial experience in special education hearings beginning in 2006. Hill Aff. ¶ 16.

**D.**      **Law Student Interns' Hourly Rate is Consistent With Rates Prevailing in the Community and is Appropriate Under the IDEIA**

Similar to the analysis used to determine reasonable hourly rates in the attorney context, law student interns are to be "compensated at prevailing market rates," but generally "at rates similar to those of paralegals." Moon v. Gab Kwon, 99 CIV. 11810 (GEL), 2002 WL 31512816 (S.D.N.Y. Nov. 8, 2002) at *3 (citing Krauth v. Executive Telecard, Ltd., No. 95 Civ. 3967 (RWS), 1996 WL 29420 at *17 (S.D.N.Y. Jan 24, 1996)). More than a decade ago, in Moon, this Court found an hourly rate of $80.00 to be reasonable for Fordham Law student interns at LSLS, after noting that, depending on the amount of the paralegal's experience, fees in the range of $75 to $130 have been awarded, id. at *2, and highlighting that "these rates have been steadily rising over the past decade." Id. at *3.

15

In 2008, in <u>Wise v. Kelly</u>, this Court reiterated "the obvious proposition that billing rates continue to increase over time." 620 F. Supp. 2d at 447. Accordingly, the Court recommended hourly rates of $100 and $125 for paralegals and summer associates respectively. <u>Id</u>. at 450. In line with this proposition, in 2010, this Court found the requested rates of $125 and $150 per hour for paralegals, at Attorneys for Children ("AFC") and Milbank respectively, to be reasonable. <u>LV v. New York City Dept. of Educ.</u>, 700 F. Supp. 2d 510, 523-24 (S.D.N.Y. 2010).

In making its determination, the Court in <u>LV</u> took into consideration relevant case law, prevailing paralegal rates in the community, and the fact that plaintiffs provided background information about the paralegals whose work was billed for. <u>Compare id</u>. with <u>Robinson v. City of New York</u>, 05 CIV. 9545 (GEL), 2009 WL 3109846 at *5 (S.D.N.Y. Sept. 29, 2009) (awarding paralegal hourly rate at lower end of market range, $100, since plaintiffs did not provide information regarding paralegals' experience) and <u>Torres v. City of New York</u>, 07 CIV. 3473 (GEL), 2008 WL 419306 at*2 (S.D.N.Y. Feb. 14, 2008) (awarding $80 per hour for paralegals, towards the lower end of range, since plaintiff failed to meet his burden in that s/he "present[ed] no evidence regarding the skills, qualifications, or experience of the paralegal"). In <u>LV</u>, the Court distinguished the foregoing cases, and awarded the rates requested by the plaintiffs, explaining that they "ha[d] provided biographical information about each of AFC's paralegals and have stated that each Milbank paralegal has a four-year college degree." <u>Id</u>. at 523-24. Combined with prevailing rates of paralegals in the SDNY, plaintiffs established the reasonableness of each of their requested rates. <u>Id</u>. at 524.

It is notable that in March 2013, this Court approved a requested paralegal rate of $140, simply noting that such rate was reasonable, without mention of the paralegal's credentials. <u>Lucerne Textiles, Inc. v. H.C.T. Textiles Co., Ltd.</u>, 12 CIV. 5456 KMW AJP, 2013 WL 174226

at *6 (S.D.N.Y. Jan. 17, 2013) <u>report and recommendation adopted,</u> 12 CV 5456 KMW AJP,

2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013).  In the same decision, several cases were cited to

as support for the requested paralegal rate of $140.  <u>Id.</u>

 In the instant action, M.C. has not only provided biographical information about each law

student intern and noting that each, at a minimum, has a four-year college degree, but has

annexed hereto a resume for each, Exhs. A-E, outlined above, which explicitly details each

student's law school education, at least one full year of which had been completed by the time

s/he enrolled in the FAC, in addition to substantive experience had by each up until that point in

time.  If in 2010, this Court awarded the requested rates of $125 and $150 for paralegals, as a

result of consideration of market rates combined with either biographical information or a

statement about four-year college degrees, it follows that M.C.'s requested rate of $150 is

reasonable for the law student interns in 2013.[1]

 This is especially so in light of the law student interns' legal education and comparatively

more substantive experience.  Additionally, small firms in the SDNY, which focus on special

education law, regularly bill paralegal work within the range of $125 to $200 per hour.  <u>See</u> Exh.

K at 15, 18; Exh. I at 2.  Given that extensive background information revealing each law student

intern's relevant experience and qualifications is being submitted to this Court, a rate on the

higher end of the range for paralegals is warranted.  Notably, the requested rate is in the middle

of that range, at $150 per hour.

---

[1] The Second Circuit has made clear that attorneys' fee awards "should be based on prevailing

market rates, and current rates, rather than historical rates," so as "to compensate for the delay in

payment."  <u>A.R.,</u> 407 F.3d at 83 (internal quotation marks and citations omitted).

Even if plaintiff had failed to set forth the qualifications and experience of the law student interns, this Court has explicitly stated that "there is ample support for $150 per hour as a reasonable rate for paralegals in this District," and accordingly applied such rate in the case at hand. Hnot v. Willis Group Holdings Ltd., 01 CIV. 6558 GEL, 2008 WL 1166309 at *3 (S.D.N.Y. Apr. 7, 2008). This Court in Hnot applied such rate without engaging in analysis of the paralegals' credentials.

Furthermore, given that each law student intern began work in the FAC having had at least one year of law school and substantive experience, a strong argument can be made that they are more comparable to summer associates than paralegals. In 2007, this Court approved a rate of $185 for a summer associate with mention only of her name, not her prior experience or qualifications. U.S. ex rel. ATC Distribution Group, Inc. v. Ready-Built Transmissions, Inc., 03 CIV2150GWG, 2007 WL 2522638 at *8 (S.D.N.Y. Sept. 7, 2007).

It is also critical to reiterate that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." E.S., 796 F. Supp. 2d. at 428-29 (quoting Arbor Hill, 522 F.3d at 190). In the instant action, M.C. was clearly the prevailing party at the impartial hearing. Accordingly, the case was litigated effectively. A reasonable paying client would undoubtedly prefer to spend $150 per hour for well-supervised, competent, and educated law student interns to litigate a case effectively, rather than $400 per hour to have the very experienced litigator, Professor Hill, litigate the case herself. Assuming Professor Hill would have produced the same positive outcome if she litigated the case herself, she certainly could not have done so in a mere 13.58 hours, which is all she has charged for in this action.

E.      **Costs and Fees Incurred in Maintaining This Action**

The motion schedule in this case anticipates briefing that may continue into May 2013. M.C., therefore, respectfully requests that she be permitted, at the time her reply papers are due, to submit a supplementary affidavit supporting a request for reasonable costs and fees incident to this district court action.

For its work in this district court action, M.C. will request approval of its current hourly rates applicable to the law student interns performing services in this case.  M.C. will not seek to recover fees for the attorney time spent with respect to this district court action.

## CONCLUSION

By reason of the foregoing, M.C. respectfully requests the Court to award attorneys' fees and costs in the total amount of $56,945[2] for work done in connection with plaintiff's Impartial Hearing, and such fees and costs incident to this District Court action as the Court may find reasonable.

Dated: New York, New York
April 18, 2013

Respectfully submitted,

LEAH A. HILL, Esq.
LINCOLN SQUARE LEGAL SERVICES
33 West 60th Street, 3rd Floor
New York, NY 10023
212-636-6934
Fax (212) 636-6923
lhill@lsls.fordham.edu

---

[2] M.C. erroneously charged for one hour of attorney time for attendance at a Resolution Meeting on December 8, 2009. Accordingly, M.C. reduces her claim by $400.00 to reflect a credit of this one hour.