# EXHIBIT A

# REDACTED

---

## EDUCATION

**FORDHAM UNIVERSITY SCHOOL OF LAW**                                              New York, NY
Juris Doctor, May 2010
Honors: Fordham Public Service Fellowship: Safe Horizon, 2010-11, Archibald R. Murray Public Service
Award, Environmental Law Review, Family Advocacy Clinic, Fordham Law Mediation Clinic
Activities: JLSA (Jewish Law Student Association), HCC (Housing Conservation Coordinators)

**HAMILTON COLLEGE**                                                                 Clinton, NY
B.A., Sociology and Government, May 2007
Activities: Mock Trial (Captain, National Competition), Sailing Team (President), Stryker Fraternity
(President), Hillel (President)
Academics: Senior Theses in Government and Sociology (NYRI Power Lines), Study Abroad Temple
University Rome Program (Spring 2006)

## EXPERIENCE

**PUBLIC SERVICE FELLOWSHIP SAFE HORIZON**                                        New York, NY
*Fellow (November 2010- Present)*
Intern to General Counsel. Drafted and reviewed documents including, corporate policies, software licenses,
program licenses, content acquisition agreements, contracts, and MOU's. Conducted legal research.
Reviewed and re-drafted real estate leases. Managed and helped file a DHCR housing case.  Reviewed and
approved document requests and responded to subpoena duces tecum. Participated in program review
meetings and trainings of staff.

**FORDHAM LAW FAMILY ADVOCACY CLINIC**                                           New York, NY
*Law Clerk (Fall Semester 2009)*
Helped secure appropriate educational services for a child with disabilities; conducted client meetings; led
mediation session with Department of Education; drafted formal complaints; petitioned court to appoint a
guardian for a child seeking Special Juvenile Immigrant Status; drafted related petition, and appeared on
record where petition was ultimately granted.

**EUSTACE & MARQUEZ**                                                          White Plains, NY
*Fall/Summer Law Clerk* (November 2008- August 2009)
Law Clerk for In House Counsel to Chubb Insurance Westchester Branch.  Performed research and prepared
memoranda on various issues in civil law, including insurance defense, worker's compensation, and personal
injury cases. In addition, drafted trial pleadings, motions, and filed motions in court. Observed and
participated in legal proceedings including appellate hearings and depositions.

**THE HONORABLE JUSTICE NORMA RUIZ**
**BRONX SUPREME COURT**                                                          New York, NY
*Judicial Intern (February 2008-August 2008)*
Assisted in courtroom proceedings, primarily accident liability, foreclosures and medical malpractice suits
and bench conferences for civil court. Helped prepare CLE class on defenses to mortgage foreclosures.
Attended pretrial conferences, settlement negotiations, and evidentiary hearings. Researched case law and
drafted memorandum regarding negligence in landlord tenant matters.

## LANGUAGES AND INTERESTS

Intermediate Italian, basic French, sailing, foreign travel, tennis.

# EXHIBIT B

# REDACTED

## EDUCATION

**Fordham University School of Law**, New York, NY
J.D. Candidate, May 2011
Honors:          *Fordham Environmental Law Journal*

**University College Dublin/Queen's University Belfast** Dublin/Belfast, Ireland
Study Abroad program (Summer 2009)

**Fordham University**, Bronx, NY
B.A., May 2006
Major:          Economics/Mathematics                    Minor: French Literature
Honors:          Dean's List (2002-2004); Pi Delta Phi (French National Honor Society)

## EXPERIENCE

**The Honorable Laura Visitacion-Lewis, Supreme Court, Civil Branch**      New York, NY
Judicial Intern (Spring 2011)
- Analyzed Guardians' annual reports for incapacitated persons.
- Observed Mental Hygiene Law Article 81 proceedings.

**Law Offices of Philip Hersh**                                          Peekskill, NY
Legal Intern (Summer 2010)
- Attended marital conferences and assisted in the preparation of a custody trial.
- Conducted research on family and criminal law matters.
- Interviewed clients and witnesses.

**The Honorable James Reitz, Putnam County Court**                       Carmel, NY
Judicial Intern (Summer 2010)
- Drafted memoranda, opinions, and surrogate's court wrongful death documents.
- Researched case and statutory law and discussed findings with the judge and law clerk.
- Observed conferences, a jury trial, and cross-examinations of witnesses during trials.

**Fordham Family Advocacy Clinic**                                       New York, NY
Legal Intern (Spring 2010)
- Conducted research and engaged in vast discovery in collaboration with a social worker.
- Wrote legal memoranda and opening statement for client hearing.

**Dr. Rebecca Shahmoon Shanok**                                          New York, NY
Bookkeeper/Assistant (August 2008-July 2009)
- Billed patients on a regular monthly basis and managed income, finances, and bills.
- Created/edited PowerPoints and various documents for psychology conferences.

**Ipreo**                                                                New York, NY
Research Analyst (July 2006-August 2008)
- Researched and tracked both U.S. and international IPOs and follow-on deals.
- Wrote profiles describing managers' investment styles for mutual funds.
- Translated French prospectuses and press releases for various company teams.

## LANGUAGE SKILLS

Proficient in French.

# EXHIBIT C

# REDACTED

**EDUCATION**

**Fordham University School of Law**, New York, New York
J.D. Candidate, May 2011

| | |
|---|---|
| Honors: | *Fordham International Law Journal*, Associate Editor |
| Comment: | *Awaking the Sleeping Dragon: The Evolving Chinese Patent Law and its Implications for Pharmaceutical Patents*, published in 34 *Fordham Int'l L. J.* 549 (2011) |
| Activities: | Treasurer, Phi Alpha Delta International Law Fraternity, Wormser Chapter |
| | Asian Pacific American Law Students Association |
| | Fordham Law Women |

**Rutgers University**, Piscataway, New Jersey
M.S., Pharmaceutical Sciences, October 2008

| | |
|---|---|
| Activities: | American Association of Pharmaceutical Scientists |

**The College of New Jersey**, Ewing, New Jersey
B.S., *magna cum laude*, Biology, May 2006
Minors: Chemistry, Comparative Literature

| | |
|---|---|
| Honors: | Dean's List |
| | Tribeta Biology Honor Society |
| | Sigma Tau Delta English Honor Society |
| | Golden Key National Honor Society |
| Activities: | Chinese Club, Founder and President |
| | Circle K, Community Service Club |

**EXPERIENCE**

**Shelowitz and Associates, LLC**, New York, New York
*Legal Intern*, January 2011-April 2011
Conducted legal research. Drafted memorandums. Complied documents for appellate briefs. Developed and crafted arguments. Assisted partner and associate in formulating persuasive claims.

**The Najdovski Law Firm, PLLC**, New York, New York
*Legal Assistant*, August 2010-November 2010
Drafted motions, affidavits, and affirmations. Evaluated the strength of potential claims. Found supporting case law for claims. Prepared court documents. Wrote letters to judges and clients.

**The Children's Law Center**, Brooklyn, New York
*Legal Intern*, June 2010-August 2010
Performed document review. Interviewed clients. Prepared documents for court trials. Prepared questions for witness. Conducted legal research. Developed case theory. Summarized forensics records. Found supporting evidence for case theory.

**Lincoln Square Legal Services**, New York, New York
*Legal Intern*, Family Advocacy, January 2010-June 2010
Interviewed client. Conducted legal research. Amended formal complaint. Drafted mediation request. Negotiated partial agreements with opposing side. Participated in impartial hearings.

**Bernstein Liebhard, LLP**, New York, New York
*Summer Associate*, Mass Torts Group, May 2009-August 2009
Compiled expert witness list. Reviewed medical records of potential clients. Evaluated the strengths of potential cases. Reviewed deposition for pending lawsuits with partner and associate. Content writing for law firm's website, focusing on pharmaceutical liability.

**SKILLS**          Proficient in Mandarin Chinese

# EXHIBIT D

# REDACTED

## EDUCATION

**FORDHAM UNIVERSITY SCHOOL OF LAW**                                                    NEW YORK
*Candidate for Juris Doctor*                      GPA: 3.26                              May 2012
  - Honors:        *Fordham Intellectual Property, Media and Entertainment Law Journal*
  - Activities:    Legal Education and Advocacy Project – Board Member and CASES Student Teacher
                   Domestic Violence Action Center – Courtroom Advocates Project
                   Rikers Island Juvenile Inmate Workshop Participant

**JOHN JAY COLLEGE OF CRIMINAL JUSTICE/CUNY**                                           NEW YORK
*Masters of Public Administration*                                                      June 2006
  - Concentration:  Court Administration       GPA: 3.71
  - Honors:         Continual Dean's List recipient; *Chancellor's List* award
  - Activities:     Disabled Student Services Note Taker; Freshman Peer Mentor
*Bachelor of Arts*                                                                      June 2006
  - Major:          Government                 GPA: 3.64
  - Honors:         Continual Dean's List recipient; CUNY Merit Scholarship
                    *Who's Who Among Students in American Universities and Colleges* award
  - Activities:     *Phi Eta Sigma* National Honor Society – Secretary of John Jay's Chapter
                    Student Election Review Committee – Appointed by College President
                    John Jay College Law Society – Event Coordinator

## EXPERIENCE

**LINCOLN SQUARE LEGAL SERVICES, INC. – FORDHAM LAW FAMILY ADVOCACY CLINIC**            NEW YORK
*Legal Intern*                                                                          08/10 – 12/10
  - Advocated for disabled children in conjunction with social work students from Fordham's Graduate School.
  - Interviewed clients, investigated claims, reviewed and assessed medical, mental health, and educational records.
  - Prepared physicians, psychologists, and education experts to serve as witnesses at hearings.
  - Represented client at impartial hearings to secure appropriate education services.

**THE HONORABLE VINCENT M. DEL GIUDICE, KINGS COUNTY SUPREME COURT**                    NEW YORK
*Judicial Intern*                                                                       06/10 – 08/10
  - Drafted fact portions of opinions and memorandum.
  - Observed conferences, motion hearings, and trials.  Discussed proceedings with Judge and Law Clerk.
  - Attended judicial intern workshops throughout the courts of Kings County.

**SAMUELSON-GLUSHKO INTELLECTUAL PROPERTY & INFORMATION LAW CLINIC – FORDHAM LAW**      NEW YORK
*Research Assistant*                                                                    06/10 – 08/10
  - Composed arguments and prepared sections of briefs to be filed with the courts.
  - Conducted legal research on various topics ranging from copyright law to evidence admissibility.
  - Attended client meetings and engaged in discussions regarding status of cases.

**CRAVATH, SWAINE & MOORE LLP**                                                         NEW YORK
*Litigation Case Manager*                                                               04/10 – 07/10
  - Returned to firm at Partner's request to assist with copyright infringement and antitrust case.
*Litigation Case Manager*                                                               03/08 – 08/09
  - Lead legal assistant in major copyright infringement and antitrust case.
  - Managed all administrative and document related aspects to litigation and merger clearance matters
    assigned to supervising Partner.
  - Supervised various projects ranging from document reviews to deposition preparation.
  - Directed document production of millions of electronic and hard copy pages.
  - Oversaw filings of complaints, reply briefs, and summary judgment motions.
*Litigation Legal Assistant*                                                            09/06 – 03/08
  - Provided paralegal support to a team of two Partners and multiple Associates.
  - Conducted market and industry research for antitrust clearance matters.
  - Organized voluminous case files of correspondence and work product for both antitrust and litigation matters.

**TREYVUS & KONOSKI P.C.**                                                              NEW YORK
*Legal Assistant*                                                                       05/05 - 05/06

**UNITED STATES ATTORNEY'S OFFICE, EASTERN DISTRICT OF NEW YORK**                       NEW YORK
*Intern, Financial Litigation Unit*                                                     02/04 - 05/04

# EXHIBIT E

# REDACTED

## EDUCATION
**Fordham University School of Law**                                                                New York, NY
J.D. Candidate, May 2011
<u>Activities</u>: Lincoln Square Neighborhood Children's Law Project; Black Law Students Association;
      Fordham Health Education Advocacy Law Society; Intramural Basketball
<u>Honors:</u> Willem C. Vis International Arbitration Moot, competitor, Hong Kong (team finished 11th out of 75
      in the world); The Thurgood Marshall Committee, NYC Bar Association, Law student member

**Boston College,** Lynch School of Education                                                        Chestnut Hill, MA
B.A., Developmental Psychology, May 2007, G.P.A. 3.53
Minor: French Language and Literature;
<u>Honors:</u> Dean's List (2006 & 2007), Member of Pi Delta Phi-National French Honor Society

Study Abroad: **Institut Catholique de Paris**                                                       Paris, France
Sociology and Political Science coursework with native French students                                *Fall Semester 2005*
Recruited to play on a local Parisian basketball team

## EXPERIENCE
**Lincoln Square Legal Services, Inc.** (Family Advocacy Clinic)-*Legal intern*                      New York, NY
- Represent clients in impartial administrative hearings to secure appropriate educational           *August 2010-Present*
  services for children with learning disabilities
- Interview clients and investigate claims, review and assess medical, mental health and
  educational records
- Prepare physicians, psychologists and education experts to serve as witnesses for trial, and develop
  interdisciplinary case strategies to advance the client's goals.

**City Bar Justice Center**- *Intern*                                                               New York, NY
- Coordinated a Temporary Protected Status (TPS) hotline for Haitian immigrants                       *May 2010-August 2010*
  by conducting outreach in the Haitian community and recruiting attorneys
- Met with victims of immigration fraud to fill out complaint forms in order to join NYS settlement
- Prepared documents for Haitian immigrants seeking TPS from the U.S. Citizen and Immigration Service

**New York City Bar Association**- *Michael Saperstein Fellow (Fordham Law School competitive fellowship)*    New York, NY
- Coordinated the Thurgood Marshall Summer Law Internship Program; which matches                      *March 2009- December 2010*
  high-achieving inner-city high school students with legal internships for the summer
- Worked directly with the Student Legal Education Opportunity Program (SLEOP) director to
  organize a Constitutional Law Symposium for 300 high school students by researching pertinent
  cases and drafting case summaries for attendees
- Pioneered an LSAT/Law School Prep Series for college students interested in applying to law school
- Assisted with the launch of the first NYC Bar Association Mentor Program by recruiting law
  student mentors and pairing them with college students to create networking opportunities for mentees

**Jamaican Council for Human Rights**- *Intern*                                                      Kingston, Jamaica
- Interviewed prisoners in two area penitentiaries to discuss their options on appeal                 *Spring Break 2009*
- Attended trainings and speeches at Norman Manley Law School on the Jamaican justice system
- Wrote petitions to prison superintendents on behalf of prisoners regarding their prison conditions

## SKILLS
Native French speaker, proficient in Spanish

# EXHIBIT F

**LEAH AILEEN HILL**
33 West 60th St. Third Floor
New York, NY  10023
(212)636-6934
lhill@law.fordham.edu

## TEACHING EXPERIENCE

### FULBRIGHT SCHOLAR UNIVERSITY OF THE WEST INDIES, CAVE HILL, BARBADOS
*Spring 2012*
- Developed and taught legal methods course
- Designed training and served as judge for international moot court team
- Provided training and workshops to local NGOs

### FORDHAM UNIVERSITY SCHOOL OF LAW
*Associate Clinical Professor, Supervising Attorney, Family Advocacy Clinic*
*August 1996-Present*
- Design and teach in-house clinic focused on interdisciplinary approaches to family and education law
- Teach litigation skills through simulation exercises, supervision and weekly seminar
- Supervise student litigation in state and federal court and administrative forum, including due process proceedings pursuant to *IDEIA*

*Interdisciplinary Center for Family and Child Advocacy*
*Steering Committee Member 1996-2008*
*Co-Director, 2010-1012*
- Collaborate with faculty of Fordham University's Graduate School of Social Service to develop interdisciplinary educational, research and practice initiatives
- Conceptualized and presented colloquia and conferences by developing content, soliciting speakers, managing presentations and working with the Fordham Law School Office of Public Programming to book facility

*Other Courses:* Family Law I; Domestic Violence: Law and Social Work; Domestic Violence Clinic; Interdisciplinary Approaches to Child Abuse and Neglect

### NEW YORK UNIVERSITY SCHOOL OF LAW
*Acting Assistant Clinical Professor- Supervising Attorney, Family Defense Clinic*
*August 1995-August 1996*
- Taught in-house interdisciplinary clinic focused on family law
- Designed and taught seminar focused on foster care, parents' rights and ethics
- Supervised law student litigation in family court

1

## OTHER EXPERIENCE

THE LEGAL AID SOCIETY, CIVIL DIVISION
HARLEM NEIGHBORHOOD OFFICE/ BROOKLYN NEIGHBORHOOD OFFICE
*Staff Attorney, 1990-1995*
Directed and coordinated family law practice
Represented individual clients in broad range of family law matters
Conducted trial skills and substantive law training for new lawyers

CIVIL APPEALS AND LAW REFORM UNIT
*Staff Attorney, Jan. 1992-Sept. 1993*
Identified, coordinated and supervised complex litigation in federal and state court

LEGAL SERVICES FOR NEW YORK CITY
BROOKLYN CORPORATION A; BROOKLYN CORPORATION B
*Staff Attorney, 1986-1990*
Conducted family law litigation in federal and state court
Drafted legislation and conducted lobbying
Provided transactional legal services for community organizations

HARLEM LEGAL SERVICES, INC.
*Reginald Heber Smith Fellow, 1985-1986*

## EDUCATION

RUTGERS UNIVERSITY SCHOOL OF LAW, NEWARK CAMPUS
*J.D. 1985*
Reginald Heber Smith Fellowship (1985-1986)
Law Student's Civil Rights Research Council Grant (Summer 1984)
Women's Rights Law Reporter, *Staff*

CUNY, BROOKLYN COLLEGE
*B.A., Sociology 1982*

## BAR ADMISSIONS

UNITED STATES SUPREME COURT
UNITED STATES DISTRICT COURT, SOUTHERN AND EASTERN DISTRICTS OF NEW YORK
NEW YORK STATE

## PROFESSIONAL AFFILIATIONS

AMERICAN BAR ASSOCIATION COMMISSION ON DOMESTIC VIOLENCE
Appointed to Commission 2010-2012
THE CITY OF NEW YORK MAYOR'S ADVISORY COMMITTEE ON THE JUDICIARY
Appointed 2004-2005
ADVISORY BOARD FOR THE MAYOR'S OFFICE TO COMBAT DOMESTIC VIOLENCE
Member 2003-2009

2

**ADVISORY BOARD FOR THE VIOLENT CRIMES AGAINST WOMEN ON CAMPUSES, TECHNICAL ASSISTANCE PROGRAM**
Member 1999-2004
**AMERICAN BAR ASSOCIATION**
Member Since 1996
Legal Education and Family Law Sections
**ASSOCIATION OF AMERICAN LAW SCHOOLS**
Member Since 1996
Sections on Clinical Legal Education and Family Law
**ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK**
Committee on Family Court and Family Law 1996-1999
Committee on the Judiciary 2000-2002

3

**PUBLICATIONS**

*Do You See What I See?  Reflections on How Bias Infiltrates New York City Family Court—the Case of the Court Ordered Investigation,* 40 Columbia Journal of Law and Social Problems 527

 *Professional Mandate for the Use of "Strategic Collaborations" by Lawyers and Social Workers In Child Maltreatment/ Intimate Partner Violence,* with Virgina Strand, Ann Moynihan and Mary Ann Forgey Social Work in the Era of Devolution: Toward a Just Practice, Fordham University Press, New York 2001 (book chapter)

**COLLOQUIA**

October 2010
Co-Chair, Conference Planning Committee
*Creating a Pipeline to Success: Eliminating Barriers and Improving Access for Young Mothers*
Fordham University School of Law

October 2006
Member, Conference Planning Committee
Working Group Facilitator
*Family Court in New York City in the 21st Century: What Are Its Roles and Responsibilities?*
New York County Lawyer's Association

April 2006
Conference Co-chair and Co-editor, Conference Report with Professor Dorothy Roberts, Kirkland and Ellis Professor of Law, Northwestern University School of Law
*The Racial Geography of the Child Welfare System: Community Impact and Response*
Fordham University School of Law

April 2001
Workshop Facilitator/ Conference Planning Committee
*Achieving Justice: Parents and the Child Welfare System*
Fordham University School of Law's Interdisciplinary Center for Family and Child Advocacy

**PUBLIC SPEAKING ENGAGEMENTS (BY INVITATION)**

March 2013
Moderator
Lawyer's Committee Against Domestic Violence, Annual Domestic violence Conference
Book Discussion: *A Troubled Marriage: Domestic Violence and the Legal System*

March 2011
Panelist
Lawyer's Committee Against Domestic Violence, Annual Domestic Violence Conference
*Navigating The Intersections Between Child Custody, Domestic Violence and Child Abuse*

4

November 2010
Moderator
Fordham University School of Law
*Culture of Violence: Overcoming Society's Stereotypes of Domestic Violence*

September 2010
Panelist
Interdisciplinary Collaborative Education Conference at Georgia State University
Panel on Research and Scholarship
*Pedagogical Models For Challenging Students' Implicit Attitudes And Cultural Biases*

August 2010
Panelist
Practicing Law Institute
*Thirteenth Annual Children's Law Institute*

May 2010
Small Group Facilitator
AALS Conference on Clinical Legal Education
Baltimore, Maryland

April 2009
Panelist
Albany Law School's Justice Robert H. Jackson Symposium "Our Changing Families:"
Dedicated to the Honorable Judith Kaye, Former Chief Justice of the New York Court Of
Appeals
*Attorney for the Child: The New Paradigm*

March 2009
Panelist
Fordham Institute for Women & Girls, Fifth Annual Symposium,
Violence Against Immigrant Women
*"Cultural Humility": Respectful Engagement of Clients Across Cultural Boundaries*

November 2007
Lecturer
*Cross Cultural Issues in Child Welfare*
Louis Stein Center for Law and Ethics, Stein Scholars Program
Fordham Law School

July 2007
Lecturer
NYU Steinhart School of Education, Metropolitan Center for Urban Education, Summer
Institute
*Parent's Rights in the Special Education System*

March 2007
Live Testimony
Public Forum: *A Lasting Blueprint for Judicial Diversity*, Fordham University School of
Law, March 1, 2007
Fordham Law School

May 2006
Presenter
AALS Conference on Clinical Legal Education
*The Impact of Interdisciplinary Collaboration on Student Learning*
New York, NY

May 2005
Presenter
*Mandatory Arrest Policy: The Impact on Communities of Color*
Columbia University School of Law
New York, New York

March 2003
Faculty
*The Foster Care System: Strategies for Litigating Family Court Article 1028 Proceedings*
Practicing Law Institute

September 2002
Lecturer
*Domestic Violence Policy in the US*
International Congress on Family Law
Havana, Cuba

November 2001
Participant
Pace University School of Law
*Domestic Violence Symposium Think Tank*

April 2001
Panelist
*The Court's Response to Victims of Domestic Violence*
15th Anniversary Celebration of the New York Judicial Commission on Women and the
Courts Report

June 2000
Lecturer
*Partnering for Safe Communities: From Tradition to Tomorrow*
*Private Matters, Public Consequences: Domestic Violence in the Workplace*
New York State Office of the Attorney General, Crime Prevention Conference

**OTHER ENGAGEMENTS**

July 2008
Presenter
*Practicing in Slow Motion: Interdisciplinary Education for Interdisciplinary Practice*
Third International Conference on Interdisciplinary Social Sciences
Monash University Centre, Prato, Tuscany, Italy

May 2007
Presenter
*Identifying and Challenging Assumptions That Impact the Development of Professional Judgments about Families*
Concurrent Session at the Association of American Law Schools Annual Conference on Clinical Legal Education
New Orleans, LA

Summer 2006-2011
Trainer
*Summer Associates Trial Skills Program*
Ropes and Gray, LLP

June 2004
Faculty
*Summer Associates Trial Skills Training*
Shearman & Sterling
New York, New York

May 2004
Presenter
*Directive vs. Non-Directive Supervision in Clinical Legal Education*
Association of American Law Schools Conference on Clinical Legal Education
San Diego, California

May 2003
Panelist
*The Unanticipated Benefits of Interdisciplinary Collaboration*
AALS Workshop on Clinical Legal Education
Vancouver, British Columbia

March 2000
Peer Reviewer
Department of Justice, Violence Against Women Act (VAWA) Grants Office

January 2000
Presenter
*Program on Clinical Legal Education: Student Supervision in an Interdisciplinary Setting*
AALS Annual Meeting 2000

**MEDIA APPEARANCES**

November 2011
Commentator
New York Times
*New York Family Court Says Keep Out Despite Order*
Quoted again in *Thomson Reuters News and Insight*
*The Unwelcome Mats at N.Y. Family Courts*

February 2010
Commentator
New York Times
*Experts Assail Call as Claimed Between Paterson and Aide's Accuser*

December 2009
Commentator
ABC News
Good Morning America
*Father Wins Brazilian Child Custody Battle*

March 2002
Guest Commentator
*The Andrea Yates Tragedy*
WABC News

February 2002
Guest Commentator
Trial Heat with Nancy Grace, True TV (*formerly,* Court TV)
*Kanteras v. Kanteras*

# EXHIBIT G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------

E.F. and D.R., on behalf of their daughter, N.R.,

*Plaintiffs,*

against-

New York City Department of Education,

*Defendant.*

-------------------------------------------------------------

Affidavit in Support of Motion for
Attorney Fees and Costs

Case No. 11- CV- 5243 (GBD)(FM)

Neal H. Rosenberg, an attorney licensed to practice in the State of New York, affirms under penalty of perjury:

1. I am an attorney duly admitted to the bars of the State of New York, and the bars of the United States District Courts of the Southern District and the Eastern District of New York.

2. I was admitted to practice in New York State in 1975.

3. I am a 1972 graduate of the Rutger's Law School.

4. I have been practicing special education law since 1975, representing parents of students with disabilities with regard to obtaining a free, appropriate public education in the least restrictive environment.

5. My practice involves assisting parents in advocating for their children's needs at meetings of their school districts' Committee on Special Education and pursuing due process through impartial hearings and all subsequent appeals. I have represented parents in the geographic areas covered by the Southern District of New York and the Eastern District of New York.

6. I also hold the following additional degrees and certifications: Masters Degree in Education.

7. My hourly rate is currently $550.00 per hour, which I believe accurately, reflects rates within the Southern District of New York for attorneys of similar skills and experience practicing in this area of law.

Dated: April 6, 2011
New York, New York

NEAL HOWARD ROSENBERG
9 Murray Street
New York, New York 10007

# EXHIBIT H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

E.F. and D.R., on behalf of their daughter, N.R.,                    **Affirmation**

      v.

New York City Department of Education,                    **Case No.** 11- CV- 5243 (GBD)(FM)

BARBARA J. EBENSTEIN, an attorney duly licensed to practice in the Courts of the State of New York, affirms under penalty of perjury:

1. I am an attorney duly admitted to the bars of the State of New York, the State of Connecticut, and to the bars of the United States District Courts of the Southern District and the Northern District of New York.

2. I was admitted to practice in New York State and in Connecticut in December, 1990.

3. I am a 1990 graduate of the Pace Law School. I have a B.A. from Boston University and a M.A. in education from Teachers College of Columbia University.

4. I have been practicing special education law for twenty years and representing the parents of students with disabilities.

5. My practice involves assisting parents in advocating for the educational rights of their children in school meetings, due process impartial hearings, and their subsequent appeals. I have represented parents in the geographic areas covered by the Southern District of New York and the Northern District of New York.

6. I am an adjunct associate professor at New York University where I teach the graduate courses in education law. I also serve as an impartial hearing officer in New York City and in Long Island. I have extensive experience conducting CLE for attorneys and trainings for parents, advocates, and other professionals. I have written a number of articles regarding special education law for various publications.

7. My hourly rate is currently $500. per hour, which I believe accurately reflects rates within the Southern District of New York for attorneys of similar skills and experience practicing in this area of law.
Dated: April 6, 2011
New Rochelle, New York

                          *Barbara J. Ebenstein*
                          Barbara J. Ebenstein
                          53 Pengilly Drive
                          New Rochelle, New York 10804
                          Voice: (914) 409-5761
                          Fax: (914) 355-5946
                          bjeslaw@aol.com
                          www.barbaraebenstein.com

# EXHIBIT I

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
E.F. and D.R., on behalf of their daughter, N.R.,

                                        Plaintiffs,              11- CV- 5243 (GBD)(FM)

        - against -
New York City Department of Education,                          **DECLARATION OF**
                                                               **ANDREW K. CUDDY**

                                        Defendant.

-------------------------------------------------------------------

ANDREW K. CUDDY, declares and states as follows:

    1.      I am the principal attorney at the Law Office of Andrew K. Cuddy and I submit this

declaration in support of the applications for fees and costs being submitted by Mr. Mayerson.

    2.      Reported judicial decisions: *Bd. of Educ. v. Munoz*, 16 A.D.3d 1142 (4th Dep't 2005);

*M.F. v. Irvington Union Free Sch. Dist.*, 719 F. Supp. 2d 302 (S.D.N.Y. 2010); *Springville-*

*Griffith Institute Central Sch. Dist.*, 2005 WL 711886 (W.D.N.Y. 2005); *Winkelman v. Parma*

*City Sch. Dist.*, 2009 WL 4456297 (N.D.Ohio 2009); *Winkelman v. Parma City Sch. Dist.*, 2009

WL 1444441 (N.D.Ohio 2009); *Winkelman v. Ohio Dep't of Educ.*, 616 F. Supp. 2d 714

(N.D.Ohio 2008).

    3.      My office has approximately 56 New York State Review Officer decisions, including

Appeal Nos. 01-063; 01-081; 02-021; 02-030; 02-063; 02-043; 02-047; 02-058; 02-070; 02-072;

02-109; 02-110; 02-112; 03-008; 03-011; 03-049; 03-050; 03-072; 03-081; 03-086; 04-001; 04-

007; 04-041; 04-042; 04-076; 04-083; 05-001; 05-007; 05-017; 05-030; 05-053; 06-010; 06-023;

06-036; 06-044; 06-074; 06-092; 06-098; 06-109; 07-002; 07-028; 07-139; 08-026; 08-074; 09-

002; 09-022; 09-037; 09-072; 09-107; 09-113; 09-145; 10-003; 10-049; and 10-072.

4.    I attended the State University of New York at Buffalo. I was admitted to practice in New York in 1996. I am a member of the New York State Bar Association. I am also admitted in the United States District Court for all four districts in New York State, as well as the Northern District of Ohio.

5.    I have represented parents in roughly four hundred due process hearings in over seventy-five different school districts.

6.    I authored the book, *The Special Education Battlefield: A Parent's Guide to the Impartial Due Process Hearing*, released by Ithaca Press, Inc., in 2007

7.    My area of practice is special education law.

8.    I currently bill $475 per hour, which was the rate established by me in January 20011 for work in the Southern District of New York. Prior to January 2011, my rate in the Southern District of New York was $450.

9.    There are three other attorneys in my office and their rates are also $475 per hour. They include Philip B. Abramowitz, admitted in 1969; Michael J. Cuddy, admitted in 1989; and Jason H. Sterne, admitted in 1998.

10.    Two paralegals work in my office. The hourly rate billed for these paralegals in the Southern District of New York is $200 per hour.

11.    The special education bar representing parents is relatively small and most of the attorneys know each other. Mayerson & Associates is well known for its quality work in this field and its unique focus on representing parents of children with autism spectrum disorders and similar developmental disabilities. Mr. Mayerson's unique focus of practice and his extensive experience commands the highest hourly rates in the special education community.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on April 15, 2011.

/s/ Andrew K. Cuddy

Andrew K. Cuddy, Esq.
145 East Genesee Street
Auburn, New York 13021
(716) 868-9103
Akcuddy132@aol.com

# EXHIBIT J

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

E.F. and D.R. on behalf of their daughter, N.R.,

                                        Plaintiff(s),          11-CV- 5243(GBD)

                                                              Affirmation in Support of Fee
                                                              Claim

              - against -

New York City Department of Education,

                                        Defendant.

-----------------------------------------------------------------

Jesse Cutler, an attorney admitted to practice law within this District, being duly sworn,
declare under penalty of perjury that:

1. I am an attorney duly admitted to the bar of the State of New York, and to the
   bars of the United States Supreme Court, the United States Court of Appeals for
   the Second Circuit, the United States District Court for the Southern District of
   New York and the United States District Court for the Eastern District of New
   York.

2. I was admitted to practice law in New York State in 2003.

3. I am a 2002 graduate of Brooklyn Law School.

4. I have been practicing special education law since 2003, representing parents of
   students with disabilities with regard to obtaining a free appropriate public
   education in the least restrictive environment.

5. My practice involves assisting parents in advocating for their children's needs at
   meetings of their school districts' Committee on Special Education and pursuing
   due process through impartial hearings and all subsequent appeals. I have
   represented parents in the geographic areas covered by the Southern District of
   New York and the Eastern District of New York geographic areas.

6. I am a partner of, and serve as Supervising Attorney for, the Law Offices of
   Regina Skyer and Associates, L.L.P., and in this capacity review the work product
   and billings of eight attorneys who practice in the same area of law.

7. My hourly rate is currently $450.00 per hour, which I believe accurately reflects rates within the Southern District of New York for attorneys with similar skills and experience practicing in this area of law.

8. The special education bar, even in New York City, is a relatively small group of lawyers. I am familiar with the majority of the attorneys who practice in this area, including those in firms representing parents, those in firms representing school districts other than the New York City Department of Education, and those in firms of a more general practice nature, which represent parents on a *pro-bono* basis[1]. I maintain such relationships for personal and professional reasons, and frequently speak at regional and national conferences with attorneys from both sides of the bar.

9. I follow the decisions of the District Courts within this Circuit in all special education matters that are decided, and frequently review the pleadings and underlying records of these matters to remain current in the field and to keep abreast of developments in litigation strategies and positions.

10. I am often retained to review the administrative records and decisions of special education matters that were handled by other attorneys and/or with an eye toward making recommendations regarding the appeal of such matters to the District Courts and recognize that the length and complexity of due process hearings has significantly increased due to the influx of cases being appealed to the Office of State Review and to the District Courts.

11. The increasingly complex nature of special education litigation is often recognized by Judges within this District, whether when referring to the highly specialized vocabulary used by the educators charged with offering students an appropriate educational plan in the first instance, when deferring to the "educational expertise" of the administrative finders of fact, or when issuing extremely lengthy decisions examining and parsing out the numerous allegations and defenses raised by both parties. Within the past 12-months, I have received two decisions from District Court Judges that have exceeded 85 pages each.

12. Even as the population of students with autism has skyrocketed, and research has continued to demonstrate the appropriateness of certain educational methodologies, the New York City Department of Education has failed to develop appropriate programs for a number of these students as they enter school-age programs[2]. Given the lack of appropriate public options, private schools have

---

[1] . It is my understanding that the IDEA permits these firms to bill school districts for their time should their clients obtain prevailing party status.

[2] According to a December 28, 2011, article in the NY Times, the NYC Department of Education has failed to even file claims for tens of millions of dollars in Federal aid for the provision of special education services in recent years, and has agreed to return $432 million dollars to the State and Federal government due to irregularities in claim submission. See http://www.nytimes.com/2011/12/29/nyregion/new-york-schools-fail-to-get-medicaid-money-for-special-needs-services.html?pagewanted=all

begun to open in the New York City area to address the need for appropriate
educational programs for students with significant autism spectrum diagnoses.
The cost of these programs, when provided by a private school or by private
providers, can easily exceed $100,000 for a 35 hour school week. Further, as
autism is a pervasive disorder, impacting on all aspects of a students life, it is not
unusual for a student with an autism spectrum disorder to require additional
educational and therapeutic supports to allow him to generalize and carry over
those skills taught during the school day into a more natural environment.

13. Parents who unilaterally place their children in such programs and subsequently
seek reimbursement tend to retain attorneys who possess significant clinical and
legal knowledge regarding students with such needs as opposed to using attorneys
with generalized knowledge and litigation experience.

14. The firm of Mayerson & Associates, located in Manhattan, is very highly
regarded and, in my opinion, commands high hourly rates because of that firm's
significant experience and expertise in "autism" matters, and its successful track
record at the administrative and federal levels. Success in autism cases often will
turn on substantive factors relating to the student's unique needs that far transcend
merely being familiar with the controlling decisional law.

15. Gary Mayerson, the founder of Mayerson & Associates, has developed a
reputation for success in litigating autism cases involving severely autistic
students who present with serious or dangerous behaviors. Due process cases
involving students at this severity level can sometimes involve claims not only for
an expensive school-based program, but also significant after school services that,
in some instances, may actually cost *more* than the underlying school placement.[3]

16. It is challenging, to say the least, to persuade a hearing officer or court that the
student actually *needs* such an intensive and costly program. To do so, the
attorney must have a great deal of autism expertise and knowledge, and must also
be able to efficiently and persuasively "tease out" the particulars of the student's
needs via live testimony and expert reports. Gary Mayerson has those skill sets
and that experience, and undoubtedly, that is why he and his firm command the
higher end of the hourly rates that they charge as part of the range of market rates
being charged in the New York metropolitan area.

17. I am advised the instant fee application involves a severely autistic student with
dangerous behaviors who was seeking relief for a combination educational
program, where the amount of reimbursement recovered for the family was in
excess of $280,000. I also am advised that Mr. Mayerson prevailed following a 14
day trial and two unsuccessful appeals brought by the New York City Department
of Education. Whether at $650 (Mr. Mayerson's current hourly rate) or at $600

---

[3] At this level of severity, the only other viable option may well be a far more restrictive and costly
residential placement and program. Some of these residential options, depending on the level of behavioral
support services, may charge upwards of $350,000 per year.

(Mr. Mayerson's rate for the preceding three years), my personal opinion is that Mr. Mayerson's rate is appropriate and warranted, and that this family was well served by Mr. Mayerson's efforts.

18. Having reviewed the decisions of the State Review Officer in this matter, one of which explores the Department of Education's allegations on appeal over 30 single-spaced pages, it is clear that the record was sufficiently developed to permit the parents to prevail at both administrative levels on the educational issues as was necessary and appropriate in accordance with the decisions of this Circuit.

January 30, 2012
New York, NY

Jesse Cole Cutler
Skyer & Associates, L.L.P.
276 5th Avenue, Suite 402
New York, NY 10001
(212) 532-9736

# EXHIBIT K

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------

E.F. and D.R., on behalf of their daughter, N.R.,

                                   Plaintiff(s),                    11- CV- 5243 (GBD)(FM)

             - against -                            **AFFIDAVIT OF**
                                                          **GARY S. MAYERSON**

New York City Department of Education,

                                  Defendant.

-----------------------------------------------------------------

STATE OF NEW YORK         }
                              } ss.
COUNTY OF NEW YORK     }

GARY S. MAYERSON, being duly sworn, deposes and says:

1.     My law firm, Mayerson & Associates, represents N.R. and her parents in this IDEIA-based action. *See* 20 U.S.C. 1400, *et seq.* Mayerson & Associates also represented N.R. and her parents in the underlying 14-day trial and in the context of defendant's successive, but unsuccessful, appeals to the Office of State Review.[1] Plaintiffs commenced this action on July 27, 2011 inasmuch as they have acquired status as a "prevailing party" to seek attorneys' fees and other recoverable costs. As lead counsel for plaintiffs at each and every stage, I am personally familiar with the facts set forth below.

2.     In the underlying administrative proceedings, we won and actually recovered **$286,062.50** of reimbursement relief to sustain N.R.'s educational program for the 2010-2011 school year. This affidavit, the supporting sworn declarations of Jesse Cutler, Esq., Neal Rosenberg, Esq., Barbara Ebenstein, Esq., and Andrew Cuddy, Esq., and the accompanying

---

[1] N.R., the real party in interest, is a severely autistic young girl who presents with serious and *dangerous* behaviors who would easily qualify for a more restrictive and costly *residential* placement. We have represented N.R. and her parents for many years.

memorandum of law, are respectfully submitted pursuant to the Act's express fee-shifting provisions, 20 U.S.C. § 1415(i)(3), in support of plaintiffs' motion to fix and award attorneys' fees and other recoverable costs, to be allocated as follows as against the four distinct stages of this litigation:

      a.      $112,717.32 in recorded fees and costs at the IHO administrative level, pertaining to fourteen (14) days of trial and the submission of post-hearing memoranda;

      b.      $17,697.10 in recorded fees and costs incurred during defendant's initial appeal to the SRO regarding N.R.'s statutory "pendency" entitlements;

      c.      $24,256.12 in recorded fees and costs incurred by defendant's second appeal at the SRO appellate level, directed to the merits of the IHO's $286,062.50 award in N.R.'s favor);

      d.      $8,794.23 in recorded fees and costs (so far) in this action.[2]

**Defendant Could Have Settled the 2010-2011 Case and Avoided Its Exposure for Any Attorneys' Fees**

      3.      It is significant to note at the outset that in those instances where the "local educational agency" (here, defendant) agrees to "settle," there is absolutely <u>no</u> entitlement to an award of attorneys' fees in the context of the IDEIA statute. *See Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598 (2001). Without "prevailing party" status, there is simply no standing under IDEIA to seek the recovery of attorneys' fees and other recoverable costs. Thus, under the Act, school districts are given a tremendous financial incentive and opportunity to resolve cases *before* they have to be adjudicated. Here, sadly, defendant missed that opportunity.

---

[2] We intend to submit the supplemental time charges of this motion at the time that our reply papers are filed.

4.        As discussed below, the overwhelming bulk of our clients are *severely* autistic –a very needy population to be sure.  We estimate that the defendant DOE settled fully 80% of our 2010-2011 due process filings with defendant, the New York City Department of Education ("DOE").  N.R.'s case was not among them.  Had the DOE only settled N.R.'s 2010-2011 proceeding at the outset, the DOE would have *obviated any exposure* or liability to pay out <u>any</u> attorneys' fees.   The DOE also could have reduced its exposure to pay the $286,062.50 reimbursement award that the IHO rendered in N.R.'s favor.  Unfortunately, defendant charted its own course and elected to proceed on a path of defending the indefensible, forcing plaintiffs to slog through a 14-day trial. Defendant, after losing that 14-day trial, then took *multiple* unsuccessful appeals, which defendant also lost.[3]  As such, to the extent that defendant is now facing a very hefty attorneys' fees bill that continues to grow, defendant has only itself to blame.

**The Outcome and Lesson of The**
**2007-2008 School Year Case**

5.        When defendant and its counsel made the judgment call to defend (and not settle) the 2010-2011 school year case, defendant apparently forgot the debacle that it "achieved" by way of an outcome in its 2007-2008 school year case.  Defendant litigated its 2007-2008 school year case for eighteen (18) days of trial, only to lose in a detailed, 49-page decision. (Exhibit A). In the 2007-2008 case, just like this one, defendant also lost *two* successive appeals to the State Review Officer. When the dust settled from the 2007-2008 school year case, defendant had to pay out $258,132.00 in "reimbursement" relief.  As against $178,965.59 in attorneys' fees billing, defendant paid out $162,674.29 (i.e. more than 90% of the fee bill.)  Accordingly the

---

[3] The State Review Officer refused to disturb the hearing officer's order directing defendant to maintain N.R.'s "pendency" entitlements.  The SRO also refused to disturb the hearing officer's decision on the merits.  To say the least, N.R. and her parents have emerged from all stages as a "prevailing party."

2007-2008 case cost defendant a grand total of $420,806.29.  Ostensibly, that result should have

served as a painful lesson.

### The 2008-2009 and 2009-2010
### Cases Were Quickly Settled

6.       N.R.'s 2008-2009 and 2009-2010 school year cases, following on the heels of the

disastrous 2007-2008 outcome, were quickly settled, with the result of significant cost savings

for defendant, not to mention the elimination of nearly all of its attorneys' fees exposure.

Thereafter, however, defendant apparently then "forgot" what had happened in the 2007-2008

case.[4]

### The 2010-2011 School Year
### Case at Issue Here

7.       N.R.'s 2010-2011 case was filed by hearing request dated June 30, 2010. (Exhibit

B).[5]  At issue was N.R.'s $107,950.00 tuition at the not-for-profit Manhattan Children's Center

("MCC") and the cost of N.R.'s significant after-school services and behavioral supports,

aggregating roughly $300,000.[6]

8.       As the accompanying Cutler Affidavit demonstrates at paragraphs 14, 15 and 16.

it is one thing to establish a student's need for an intensive and private school-based program.  It

is quite another thing to establish the student's need for the costly school program *and* an after-

school program that actually costs *more* than the school program.  To seek and obtain relief in

---

[4] Ralph Waldo Emerson once remarked "we learn geology the day after the earthquake."  Perhaps, but here, defendant quickly forgot whatever it may have learned.
[5] This Court will note the extensive and detailed claims asserted in N.R.'s hearing request (Exhibit B).  That is due, in part, to ultra-stringent pleading requirements from the State Education Department that flatly *preclude* pleading amendments unless they are proffered at least five days before the first hearing date.  If a claim is not fairly pleaded or otherwise raised by the parties, it cannot be considered by the hearing officer.  Ironically, pleading requests at the administrative level are akin to the "Field Code" and are far more problematic than in state court or federal court, where amendments to conform pleadings to the evidence are *freely* given.
[6] By reason of her severe and dangerous behaviors, N.R. easily would be a candidate for a far more restrictive and costly *residential* placement.  (Exhibit C) Those kinds of placements can cost upwards of $400,000 per year.  N.R.'s parents' preference, however, is to maintain N.R. in her "least restrictive environment," i.e. in her home and in the surrounding community.

that magnitude, the student generally must present as severely autistic and display significant interfering behaviors. At the trial, the objective is to inform the record as to all these distinguishing factors so that the hearing officer and any reviewing court will see that such a case is different from the "garden variety" type of reimbursement case, where typically only the school tuition is at issue. It also is necessary to justify the private placement as being in alignment with Congress' "least restrictive environment" mandate.

9.       As the record will reflect, N.R.'s severity and dangerous behaviors fairly cried out for a settlement from defendant as to N.R.'s 2010-2011 school year claims. Had defendant timely settled the 2010-2011 case (as it had settled the 2008-2009 and 2009-2010 school year cases), there would have been no attorneys' fees exposure for defendant to contend with. Plaintiffs' June 30, 2010 request for hearing (for the 2010-2011 school year) contained a request for a "resolution meeting,"[7] but defendant failed to take advantage of the opportunity to settle N.R.'s 2010-2011 case. As such, N.R.'s 2010-2011 case was noticed for trial, and that trial then proceeded for 14 days to its ultimate conclusion-- yet another expensive loss for defendant. Defendant then dug itself into even a deeper "hole" with its successive (but unsuccessful) appeals to the SRO. Defendant then just kept going in this action, with its truly onerous and "over the top" discovery demands seeking irrelevant billing detail as to other families and other law firms.

## PROCEDURAL HISTORY

10.       On June 30, 2010, for purposes of the 2010-2011 school year, plaintiffs commenced the underlying due process hearing under the IDEIA statute. 20 U.S.C. § 1415 et seq. By Decision dated September 28, 2010 (Exhibit D), the Impartial Hearing Officer, on motion,

---

[7] Under 20 U.S.C. § 1415(c)(2)(E), Congress offered the nation's school districts a final opportunity to resolve claims and avoid further expense. Defendant failed to take advantage of that opportunity, and is now facing the consequences of that fateful decision.

adjudicated N.R.'s pendency ("stay-put") entitlements. Defendant took an interim appeal to the SRO, which defendant then *lost* by decision dated December 23, 2010. (Exhibit E)

11.     Thereafter, the 2010-2011 hearing, on the merits, took place over the course of *fourteen* days on August 9, 2010, September 7, 2010, October 7, 2010, October 13, 2010, October 21, 2010, October 25, 2010, October 27, 2010, November 12, 2010, November 22, 2010, December 7, 2010, January 19, 2011, January 21, 2011, January 24, 2011 and February 14, 2011. There was extensive fact and expert testimony taken on a variety of unique and sophisticated issues.

12.     Following the trial, in April 2011, counsel exchanged detailed Post-Hearing Briefs. (Exhibit F). On or about April 12, 2011, the IHO rendered a detailed, 68-page decision (Exhibit G) awarding the following relief to N.R. and her parents:

- Reimbursement for the $107,950.00 tuition at the Manhattan Children's Center ("MCC")

- Reimbursement for up to 20 hours per week of ABA therapy

- Reimbursement for up to 3 hours per month of "parent training"

- Reimbursement for up to 3 hours per week of speech and language therapy

13.     As noted above, the reimbursement value of the IHO's award amounted to a total of $286,062.50, and such award has been paid in full by defendant.

14.     The IHO's April 12, 2011 decision on the merits did not immediately then become final because, at the time, defendant took yet *another* appeal to the SRO. This triggered yet another unhelpful and costly phase of the litigation. By decision dated July 13, 2011 (Exhibit H), the SRO refused to disturb the hearing officer's findings. Accordingly, even before the commencement of this action, plaintiffs emerged from three levels of litigation as a "prevailing

party." Unfortunately, however, even in this action, defendant has *continued* to persist with its obstructionist and dilatory tactics, adding even more layers of expense and thus, only increasing defendant's ultimate exposure.[8]

15.     This action was commenced on July 27, 2011, seeking (at that time) $160,174.78, broken down as follows:

a.     $112,717.32 in recorded fees and costs at the IHO administrative level, pertaining to fourteen (14) days of trial and the submission of post-hearing memorandum;

b.     $17,697.10 in recorded fees and costs incurred during defendant's initial appeal to the SRO regarding N.R.'s "pendency" entitlements;

c.     $24,256.12 in recorded fees and costs incurred by defendant's *second* (unsuccessful) appeal at the SRO appellate level;

d.     $5,503.85 in recorded fees and costs in this action.[9]

**Plaintiffs   Provided   All   the Pertinent   Supporting   Fee Documentation   to   Defendant even *Prior* to Any Discovery Requests**

16.     Prior to any discovery requests, on November 7, 2011, plaintiffs' counsel provided defendant's counsel with copies of plaintiffs' signed engagement letter for the 10-11 school year, billing letters sent to the client, billing detail from Timeslips® and copies of all checks that plaintiffs had paid towards that billing (Exhibit I). Rather than fairly resolve this action, defendant's tactic was to (again) go on the offensive.  Defendant served document

---

[8] The February 1, 2012 IHO decision from N.R.'s most recent 2011-2012 school year case (Exhibit C) underscores the level of N.R.'s severity and risk for a far more expensive residential program, and also shows what happens to defendant's attorneys' fees exposure when defendant forthrightly admits the FAPE deprivation and does not take outlandish appeals.  In contrast to the 2010-2011 case, which entailed fourteen days of trial and multiple unsuccessful appeals by defendant, N.R.'s 2011-2012 case only involved five days of trial. Under the Act, there is little, if any, financial incentive for a school district to defend the indefensible. Unfortunately, however, that is precisely what happened in the 2010-2011 case at issue in this action.
[9] This last item has now increased, "thanks" to defendant.

demands and multiple deposition subpoenas and notices.  (Exhibit J).  <u>Defendant sought to perform a financial audit not only as to N.R.'s billing records, but as to all of our other clients' billing records.  Worse, defendant was harassing the various attorneys who were kind enough to provide supporting affidavits.</u>

17.     On January 11, 2012, the parties appeared before this Court (Daniels, J.) at a case management conference (Exhibit K).  Judge Daniels noted, *inter alia,* that plaintiffs were free to make this fee application motion on February 1, 2012, as scheduled, and that any additional discovery requests being made by defendant would be dealt with by Magistrate Judge Maas.  Following a telephone conference call with Judge Maas and an exchange of written communications, we have since moved for a protective order.

18.     Defendant's counsel had complained in correspondence to the Court that my hourly rate was somehow not "real" because plaintiffs had then "only" paid $120,000 out of our then $160,000 bill.  On January 25, 2012, we showed defendant's counsel that plaintiffs had paid, in full, the relatively small balance then due and owing, such that plaintiffs have now paid all their fee bills in full.  Accordingly, while we urge that plaintiffs would have standing to sue for fees as a prevailing party even if they had not paid any money to my firm, the fact of the matter is that plaintiffs are "paid in full."[10]

## EXPERIENCE AND QUALIFICATIONS

19.     A copy of my curriculum vitae is submitted as Exhibit L, as are the resumes of the other attorneys, law clerks, and paralegals in my firm who worked on N.R.'s matter.

20.     I graduated from the Georgetown University Law Center in 1979 and immediately commenced employment as a litigation associate in New York.  In 1987, I became a commercial

---

[10] To rule otherwise would be to embrace the offensive notion that only families with financial resources "need apply" as plaintiffs in civil rights matters.  Congress clearly thought otherwise.

litigation partner with the Manhattan law firm then known as Graubard Mollen & Miller (the "Mollen Firm"). I credit the Honorable Milton Mollen[11] and his son, Scott Mollen, as being my primary "mentors." By the time I became a partner at the Mollen Firm (1987), I already was doing much of the firm's jury and non-jury trial work in state and federal court. Most of those cases had highly successful outcomes, and a few of them were "high profile" cases.

21.     I enjoyed my work as a highly compensated commercial litigation partner with access to an interesting caseload. I likely would have continued down that path but for an unexpected personal event: our youngest child's diagnosis with autism, and the struggle my wife and I had to secure appropriate educational programming for him.[12] It is because of that struggle in the late 1990's that that I began to give serious thought to starting a civil rights oriented law firm that would be dedicated to the representation of children and adolescents with autism spectrum disorders and related developmental disabilities. I also hoped to encourage other lawyers to follow in that path.

22.     In 2000, when my hourly rate was $395.00, I withdrew from the Mollen Firm to form Mayerson & Associates as the very first law practice in the nation dedicated to the representation of children and adolescents diagnosed with autism spectrum disorders and related developmental disabilities.[13] The American Bar Association does not yet recognize a practice "specialty" in representing children with special needs. Yet, that concentration is the very nature of our law practice. We address autism in all its many forms, and we do not shrink from representing

---

[11] Former Presiding Justice of the Appellate Division, Second Department, and former Deputy Mayor and Chairman of the "Mollen Commission." In 2001, the year *after* I withdrew as a partner, the Mollen Firm *dissolved*, with Milton Mollen, Scott Mollen and several other partners joining Herrick Feinstein.

[12] My wife and I were fortunate enough to have the financial resources to secure appropriate services and programming for our son. We were even more fortunate with the outcome of all that treatment. Today, after years of intensive intervention and support, our son is successfully attending a mainstream, *public* high school.

[13] Our practice focuses on educational rights and disputes. For example, we have not been at all involved in any "vaccine" related litigation.

severely autistic students with extreme and dangerous behaviors. Indeed, if there is anything we are known for, it is successfully representing severely autistic students.

23.    As shown below, I was responsible for the very first "autism" case to reach the U.S. Supreme Court and, given the facts of this case, it is ironic that I am the author of the well received book, "How To Compromise With Your School District Without Compromising Your Child" (DRL Books 2004.)[14]  Most recently, I was tapped by the Director of the Yale Child Study Center, Fred Volkmar, M.D., to write and provide the "Autism And The Law" chapter to be included in the upcoming 4th edition of Dr. Volkmar's seminal work, "Handbook of Autism and Pervasive Developmental Disorders" (Wiley and Sons, 2012).  I also was lead counsel for plaintiffs on the landmark "bullying" case decided last year by Senior District Court Judge Jack B. Weinstein, *T.K. v. New York City Dep't of Educ.*, 779 F.2d 289 (E.D.N.Y. 2011).

24.    The supporting affidavit of Jesse Cutler, Esq., a relatively experienced Manhattan Special Education Attorney, explains why my special expertise was well suited to represent N.R.:

> "14. The firm of Mayerson & Associates, located in Manhattan, is very highly regarded and, in my opinion, commands high hourly rates because of that firm's significant experience and expertise in "autism" matters, and its successful track record at the administrative and federal levels. Success in autism cases often will turn on substantive factors relating to the student's unique needs that far transcend merely being familiar with the controlling decisional law.
>
> 15. Gary Mayerson, the founder of Mayerson & Associates, has developed a reputation for success in litigating autism cases involving severely autistic students who present with serious or dangerous behaviors. Due process cases involving students at this severity level can sometimes involve claims not only for an expensive school-based program, but also significant after school services that, in some instances, may actually cost *more* than the underlying school placement.

---

[14] In 2005, I was profiled with my book on the *NBC Today Show*.

> 16. It is challenging, to say the least, to persuade a hearing officer or court that the student actually *needs* such an intensive and costly program. To do so, the attorney must have a great deal of autism expertise and knowledge, and must also be able to efficiently and persuasively "tease out" the particulars of the student's needs via live testimony and expert reports. Gary Mayerson has those skill sets and that experience, and undoubtedly, that is why he and his firm command the higher end of the hourly rates that they charge as part of the range of market rates being charged in the New York metropolitan area."[15]

25.     Unfortunately, our services are in very high demand.   To date, Mayerson & Associates has assisted many *hundreds* of families in more than thirty states, as far away as Alaska.   While most of our client families are "paying" clients, we represent more than our fair share of clients on a *pro bono* (contingency) basis.   On a *pro bono* basis, we also have helped military families navigate the unique "standing" issues related to educational disputes as a result of being stationed apart from their families.   Our reported cases include, but are not limited to:

a.     "Memorandum and Order" of District Judge Jack B. Weinstein in *T.K. and S.K., individually and on behalf of L.K. v. N.Y. City Dep't of Educ.*, No. 10 CV 752 (JBW) (ALC) (E.D.N.Y. Apr. 25, 2011)[16];

b.     *R.R. v. Scarsdale Union Free Sch. Dist.*, 366 Fed. Appx. 239 (2d Cir. 2010);

c.     *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412 (2d Cir. 2009), *cert. denied*, 2010 U.S. LEXIS 3994 (U.S., May 17, 2010);

d.     *T.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247 (2d Cir. 2009);

e.     *A.C. ex rel. M.C. v. Bd. of Educ.*, 553 F.3d 165 (2d Cir. 2009);

f.     *D.F. v. Ramapo Cent. Sch. Dist.*, 430 F.3d 595 (2d Cir. 2005);

---

[15] Mr. Cutler, who has more than 20 <u>fewer</u> years of experience than I have, has a $450 per hour billing rate, and he clearly is worth every penny.
[16] The *T.K.* decision is being recognized nationally as a landmark decision on the subject of "bullying" and the duty of the public school system to properly investigate and address such concerns.

     g.     *A.R. v. N.Y. City Dep't of Educ.*, 407 F.3d 65 (2d Cir. 2005);

     h.     *Bucks County Dep't of Mental Health/Mental Retardation v. Pennsylvania*, 379 F.3d 61 (3d Cir. 2004);

     i.     *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840 (6th Cir. 2004), *r'hrg en banc denied*, 2005 U.S. App. LEXIS 5631 (6th Cir., Apr. 1, 2005), *cert. denied*, *Hamilton County Dep't of Educ. v. Deal*, 546 U.S. 936 (2005);

     j.     *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588 (7th Cir. 2006);

     k.     *L.B. v. Nebo Sch. Dist.*, 379 F.3d 966 (10th Cir. 2004);

     l.     *R.K. v. New York City Dep't of Educ.*, 09 CV 4478 (KAM) (RLM), 2011 U.S. Dist. LEXIS 32235 (E.D.N.Y. Mar. 28, 2011);

     m.     "Report & Recommendation" of Chief Magistrate Judge Steven M. Gold in *S.K., by her parents T.K. and P.K. v. N.Y. City Dep't of Educ.*, No. 09 CV 1472 (SJ) (SMG) (E.D.N.Y. Mar. 15, 2011)

     n.     "Order Adopting Report and Recommendation" of Senior District Judge Sterling Johnson in *S.K., by her parents T.K. and P.K. v. N.Y. City Dep't of Educ.*, No. 09 CV 1472 (SJ) (SMG) (E.D.N.Y. August 11, 2011).

     o.     *C.B. ex rel. W.B. v. N.Y. City Dep't of Educ.*, 02 CV 4620 (CLP), 2006 U.S. Dist. LEXIS 68649 (E.D.N.Y. Sep. 25, 2006);

     p.     *R.E. & M.E. v. N.Y. City Dep't of Educ.*, 10 CV 3176 (RWS), 2011 U.S. Dist. LEXIS 26537 (S.D.N.Y Mar. 15, 2011);

     q.     *N.G. v. Kiryas Joel Union Free Sch. Dist.*, 08 CV 6395 (WGY), 2011 U.S. Dist. LEXIS 41188 (S.D.N.Y. Mar. 31, 2011);

     r.     *M.M. v. N.Y. City Dep't of Educ.*, 583 F. Supp. 2d 498 (S.D.N.Y. 2008);

s.   *T.R. v. St. Johns County Sch. Dist.*, 07 CV 913 (MCR) (M.D. Fla., Apr. 22, 2008);

t.   *T.H. v. Bd. of Educ.*, 55 F. Supp. 2d 830 (D.Ill. 1999);

u.   *S.K. v. Parsippany-Troy Hills Bd. of Educ.*, 07 CV 4631 (SRC), 2008 U.S. Dist. LEXIS 80616 (D.N.J. Oct. 9, 2008);

v.   *D.L. v. Springfield Bd. of Educ.*, 536 F. Supp. 2d 534 (D.N.J. 2008);

w.   *L.G. v. Wissahickon Sch. Dist.*, No. 06 CV 333 & NO. 06-3816 consolidated, 2011 U.S. Dist. LEXIS 476 (E.D.Pa. Jan. 4, 2011);

x.   *Sackets Harbor Cent. Sch. Dist. v. Munoz*, 283 A.D.2d 756 (N.Y. App. Div. 3d Dep't 2001); and

y.   *New York City Dep't of Educ., v. V.S. and D.S.*, No. 10 CV 5120 (JG) (JO) (E.D.N.Y. July 29, 2011).

26.   In addition, I also serve as the National Director of the Autism Speaks Federal Legal Appeals Project ("FLAP"), a *pro bono* initiative at the federal level.   Reported FLAP cases I have been involved with to date include:

a.   *Forest Grove Sch. Dist. v. T.A.*, 129 S. Ct. 2484 (2009);

b.   *Bd. of Educ. v. Tom F.*, 552 U.S. 1 (2007)[17];

c.   *Hjortness v. Neenah Joint Sch. Dist.*, 507 F.3d 1060 (7th Cir. 2007), *cert. denied*, 554 U.S. 930 (2008);

d.   *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900 (9th Cir. 2009); *cert. denied*, 130 S. Ct. 90 (2009);

e.   *Thompson R2-J Sch. Dist. v. Luke P.*, 540 F.3d 1143 (10th Cir. 2008), *cert. denied*, 2009 U.S. LEXIS 1589 (U.S., Feb. 23, 2009);

---

[17] We note that this Court (Daniels, J.) rendered the underlying district court decision in *Tom F.* On this point, this Court should be aware that in *contrast* to the student in *Tom. F.*, who apparently had *never* tried out the public schools IEP offering, N.R. had <u>tried</u> and <u>failed</u> in the DOE's recommended IEP school placement.

     f.     *D.P. v. Sch. Bd.*, 360 F. Supp. 2d 1294 (S.D. Fla. 2005), *aff'd D.P. ex rel. E.P. v.*

*Sch. Bd.*, 2007 U.S. App. LEXIS 7618 (11th Cir., Apr. 3, 2007);

     g.     *Student X v. N.Y. City Dep't of Educ.*, 07 CV 2316 (NGG) (RER), 2008 U.S. Dist.

LEXIS 88163 (E.D.N.Y. Oct. 30, 2008); and

     h.     *T.W. v. Seminole County*, 07 CV 155 (GJK), 2009 U.S. Dist. LEXIS 82639 (M.D.

Fla. Aug. 19, 2009).

    27.     I have testified before Congress, specifically the House Committee on Governmental

Reform, on the subject of the IDEIA and the struggles that families face.  In that role, I also have

advocated for greater federal funding to states and local municipalities.  Hopefully, I have helped

to make a dent in what is a serious fiscal problem.  Most recently, I have been working closely

with the office of New York City's Public Advocate, Bill De Blasio, to promote much needed

education reform in New York City.   I am determined to promote change and to make a

difference.

    28.     I have been profiled on the NBC Today Show and on CNN with my book, *How to*

*Compromise with Your School District Without Compromising Your Child* (DRL Books 2004).[18]

In addition, I have been interviewed for a number of articles published in the New York Times

and the Wall Street Journal.   While a portion of our firm's cases are accepted on a pro

bono/contingency basis, N.R.'s case is not among them.  N.R.'s parents, like *most* of our client

families, are "paying" clients.

    29.     I have served for nearly seven years as a member of the Board of Directors for

Autism Speaks, and as noted above, I head up its national *pro bono* litigation program.[19]  In that

---

[18] We will always try to seek an appropriate compromise.
[19] This is an unpaid position for which I and my support staff provide *pro bono* hours.

role, which is limited to federal cases, I have been able to secure the *pro bono* efforts of some of the finest law firms in the nation.

30.    As my curriculum vitae reflects (Exhibit L), I am regularly invited to speak at major colleges and universities, and at education-based conferences.   I also have presented at Continuing Legal Education (CLE) seminars.

**Our Written Fee Agreements
with N.R.'s Parents Support
the Rates Being Sought**

31.    We have, for years, represented N.R. and her parents.   N.R. is severely autistic and presents with extreme, and indeed, *dangerous* behaviors.   We are proud that, with the support of N.R.'s highly motivated and dedicated parents, we have been able to *maintain* N.R. in the local community, rather than having to consign N.R. to a far more expensive and costly residential facility.

32.    By engagement letter dated March 11, 2010 (Exhibit M), N.R.'s parents engaged Mayerson & Associates to represent N.R. for purposes of N.R.'s 2010-2011 due process proceeding.   As this Court will note, the agreed compensation arrangements entail an initial "flat" engagement fee of $10,000.00 for all work performed through the first hearing date, and hourly billing thereafter.   Page 3 of the engagement letter sets forth the hourly rates that N.R.'s parents then agreed to pay; as follows

> "Gary Mayerson's hourly rate for direct or supervisory services is $600/hour.   Associate attorney rates will range from $285/hour to $450/hr.   Paralegal time is billed at $125/hour."[20]

---

[20] My hourly rate remained at $600 for three years and finally increased to $650 in June, 2011.   As the Second Circuit instructed in *A.R. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 84 (2d Cir. 2005), to account for the delay factor, it would be entirely appropriate for this court to <u>recompute</u> plaintiffs' entire billing at <u>currently</u> prevailing rates, rather than "historical" rates.   N.R.'s engagement letter for the 2011-2012 school year (Exhibit O) reflects our somewhat higher *current* rates.

33.     Our billing detail and billing to N.R.'s parents regarding the 2010-2011 school year is annexed as Exhibit N. As this Court will note, as against $163,355.39 in billing through January, 2012,[21] plaintiffs actually paid $163,355.39, i.e. 100%.   Accordingly, to the extent that defendant's counsel has previously protested to this Court that my hourly rates somehow are not "real" because plaintiffs did not pay their bills "in full" (i.e. they had then "only" paid $120,000 out of $160,000), defendant is plainly wrong on the facts.   Moreover, it is our position that even if we were representing N.R. on a *pro bono*/contingency basis (which we are not), the *agreed* rate in our engagement letter should be accepted as the applicable "market" rate.

34.     In *A.R. v. N.Y. City Dep't of Educ.*, 407 F.3d 65 (2d Cir. 2005), the New York City Department of Education appealed the 2003 decision and fee award of the district court that had found that my then-current hourly rate ($350-375 per hour) for work done between 2000 and 2002 (*i.e.*, 10-12 years ago) was reasonable and within the range of market rates.   The Second Circuit affirmed the district court's findings and even then, expressly recognized my expertise in special education litigation.   The additional authorities discussed in the accompanying Memorandum of Law demonstrate that the agreed hourly rates in N.R.'s case are proper rates that this Court should apply to the recorded time and the *A.R.* decision authorizes this Court to apply the current prevailing rates. *Id.* at 84.

35.     My managing attorney and partner, Tracey Spencer Walsh, an experienced trial lawyer who has been a litigator since 1994 and has been working at Mayerson & Associates since 2008, is currently billed at $475 per hour. Ms. Walsh is admitted to practice in New York and Connecticut and is a member of the bars of the U.S. District Courts for the Southern and

---

[21] Plaintiffs will be billed, and we thus expect payment, for any additional time and expenses in this matter. Defendant largely has control over the magnitude of such additional billing.

Eastern Districts of New York, the Second Circuit Court of Appeals, and the U.S. Supreme Court.

36.     Ms. Walsh speaks at national and local conferences on legal issues related to students with autism and other developmental disabilities, and is a regular speaker at schools that educate children with autism.  In November 2009, Ms. Walsh was a featured speaker at the Oklahoma Statewide Autism Conference in Norman, Oklahoma.  In July 2010, Ms. Walsh spoke at The National Legal Aid & Defender Association (NLADA) Substantive Law and Litigation and Advocacy Directors Conference in Chicago, Illinois.  Most recently, Ms. Walsh was a featured speaker at the 13th Annual National COPAA (Council of Parent Attorneys and Advocates) conference in San Antonio, Texas held in March 2011.  Ms. Walsh also has published in the nationally syndicated "Autism Spectrum News."

37.     Ms. Dotts began working at Mayerson & Associates in 2007, when she started as a legal intern, and was billed as an associate at the rate of $295 per hour.  Ms. McGinley, now an associate, started working at Mayerson & Associates in 2009 as a legal intern, and is currently billed at the rate of $270 per hour.

38.     Ms. Dotts is admitted to practice in New York since 2009, and is a member of the bars of the U.S. District Courts for the Southern and Eastern Districts of New York, and the Second Circuit Court of Appeals.  Prior to attending law school, Ms. Dotts served as a clerk for the Honorable Paul S. Waickowski in the First District Court of Eastern Worcester, Westborough Division.

39.     Ms. McGinley is admitted to practice in New York and New Jersey and is a member of the bars of the U.S. District Courts for the Southern District of New York, and New Jersey and the Second Circuit Court of Appeals.  Prior to attending law school, Ms. McGinley was a

New York City Teaching Fellow and earned her Master's Degree in Education from Fordham University. Ms. McGinley is dually certified in New York State as a special education and general education teacher. Most recently, Ms. McGinley, who is billed at $270 per hour, has published in the nationally syndicated "Autism Spectrum News."

40.     Ms. Wince, a licensed attorney, but generally a non-litigating attorney, serves as our Reimbursement Specialist and began working at Mayerson & Associates in 2008, when she started as a legal intern. Ms. Wince has been admitted to practice in New York since 2009. She is receiving her LLM in Taxation in February, 2012. For her non-litigating support role, Ms. Wince currently is billed at the rate of $250 per hour.

41.     Mary A. Cox, a licensed attorney, also provided some assistance in this fee application process. Ms. Cox graduated from Fordham Law School in 2009, and was admitted to the New York State Bar in 2010. Ms. Cox currently is billed at the rate of $250 per hour.

42.     I currently have three paralegals, Mauricio Bertone, Roselyn Disla, and Kseniya Shinkevich. Mr. Bertone's hourly rate is $150 by reason of his longstanding experience and his position as Chief Paralegal. All other paralegals are billed at $125 per hour. Mr. Bertone earned his Paralegal Certificate at New York University in 2002 and has been working with Mayerson & Associates since 2004. Ms. Disla earned her Paralegal Certificate at New York University in 2009 and has been working with Mayerson & Associates since 2010. Ms. Pebbles Quevedo is a former paralegal at our firm who was billed at $125 per hour. Ms. Quevedo is a former New York City Department of Education Case Manager, and worked with Mayerson & Associates from 2004 to 2011.

43.     In addition, I submit sworn declarations from other special education attorneys working in the field, including Jesse Cutler, Esq., Neal Rosenberg, Esq., Barbara Ebenstein,

Esq., and Andrew Cuddy, Esq. These attorneys all charge somewhat *less* than I do, but I respectfully submit that my extensive experience and success in "severe" autism cases compares favorably to theirs for purposes of a higher rate in a "severe autism" case such as this one (particularly given the significant reimbursement recovery), and I profoundly thank my colleagues in the field for saying such kind things about me and my firm.

44.     As Judge Sweet recently observed in *R.E. v. N.Y. City Dep't of Educ.*, No. 10-3176 (RWS), 2011 U.S. Dist. LEXIS 26537 (S.D.N.Y. Mar. 15, 2011), *appeal docketed*, No. 11-1266 (2d Cir. Apr. 1, 2011),[22] one of our other recent autism cases also involving a severely autistic student: "These issues are difficult, highly individualized and procedurally complicated."   I believe the rates at which my staff, attorneys and paralegals are billed reflects rates that are within the range of prevailing rates in the Southern District of New York for attorneys and law firms of similar skill, experience and reputation practicing in a sophisticated, "severe" autism cases such as this one, particularly given the very significant financial result ($286,062.50) that we achieved for N.R. and her parents.

Sworn to before me this
1st day of February, 2012

_____
Gary S. Mayerson (GM 8413)

_____
Notary Public

**Janna Carlene Wince**
**Notary Public - State of New York**
No. 02WI6211662
Qualified in Nassau County
Commission Expires: Sept. 21, 2013

---

[22] The appeal being docketed is the appeal of *defendant*, the New York City Department of Education. Here we go again.

# EXHIBIT L

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

M.C. o/b/o E.C., a minor,

                Plaintiff,

        v.

Department of Education of the City of
New York,

                Defendant.

--------------------------------------------------------------x

**COMPLAINT**

Case File No. 12 cv-09281-CM
Judge Collen McMahon
Magistrate Judge Andrew J. Peck
ECF CASE

## INTRODUCTION

1. This is an action to recover attorney's fees and costs incurred in the course of administrative

proceedings brought under the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §

1415 ("IDEIA").

2. Plaintiff and the minor student she represents are identified by initials in the caption of this action to

preserve their confidentiality, in accordance with the privacy provisions of the IDEIA, 20 U.S.C.

§1416(c), and the Family Education and Privacy Rights Act, 20 U.S.C. § 1232(g) ("FERPA").

## JURISDICTION AND VENUE

3. This Court has jurisdiction over Plaintiffs federal claims pursuant to 20 U.S.C. §1415(i)(3)(A)-(G), as

an action for an award of reasonable attorney's fees and costs to prevailing parties in administrative

proceedings under the IDEIA 20 U.S.C. §1400 et seq.; and under 28 U.S.C. §1331 as an action raising a

federal question.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) as the judicial district in which

Defendant has its principle offices.  Venue is also appropriate pursuant to 28 U.S.C. §1391(b)(2),

because it is the district in which a substantial part of the events or omissions giving rise to the claim occurred, as it is E.C.'s home district.

## PARTIES

5. Plaintiff M.C. is the parent and natural guardian of the identified minor student, who was a student with disabilities and resided in the New York at all relevant times herein.

6. Defendant Department of Education of the City of New York ("the DOE") is a corporate body, created by Article 52 of the New York State Education Law, §§ 2550 et seq. It manages and controls the educational affairs of the New York City public schools, and has its principal administrative offices at 52 Chambers Street, New York, New York. Defendant DOE at all times was responsible for providing a free appropriate public education to E.C.

## FACTS

7. Section 1415(b)(6)(A) of IDEIA provides procedural safeguards that enable parents and students to challenge the local educational agency's decisions, including the right to file a due process complaint requesting a hearing "with respect to any matter relating to the identification, evaluation, or placement of the child, or the provision of a free public education to such child."

8. On or about November 9, 2009, Plaintiff retained Lincoln Square Legal Services (LSLS) to represent her in seeking an Impartial Hearing pursuant to the IDEIA.

9. Lincoln Square Legal Services, Inc. (LSLS) is a charitable, not-for-profit organization established to implement Fordham University School of Law's "in-house" or live-client clinical program, an educational program of eligibility, training, supervision, duties and activities for law students who have completed at least two semesters of law school. LSLS is authorized by the Appellate Division of the

Supreme Court of the State of New York to provide legal services without fee to low-income families in civil and criminal legal matters. The case was handled by various law student interns, enrolled in the Family Advocacy Clinic at Fordham (FAC). The FAC employs an innovative, holistic, interdisciplinary approach to client representation whereby law students collaborate with graduate social work students to assist the clinic's low income clients in achieving their legal objectives.   Law students enrolled in the clinic practice under the supervision of Leah A. Hill, Esq., Associate Clinical Professor, Fordham University School of Law and Supervising Attorney, LSLS. Social work students are supervised by Kathy Ho, an M.S.W. employed by the law school.

10. On November 20, 2009, plaintiff filed a due process complaint under 20 U.S.C. §1415(f) with the DOE, Impartial Hearing Office Case No. 125343, which alleged that E.C. had been denied a free appropriate public education (FAPE). Plaintiff sought compensatory education services in the form of speech therapy to compensate for missed services; compensatory reading and writing instruction in the form of one on one tutoring; and, requested that the CSE reconvene to draft an appropriate IEP for placement in a nonpublic school (Exhibit A).

11. Impartial Hearing Officer (IHO) Ralph Pennington, Esq., was appointed to preside over the due process hearing pursuant to N. Y. Education Law §4401. The hearing was held on June 9, 2010 and September 21, 2010, before IHO Pennington, at the offices of the Department of Education Impartial Hearing Office at 131 Livingston Street, in Brooklyn, N.Y.

12. When the hearing concluded, IHO Pennington gave both parties the opportunity to submit written closing statements. He directed the parties' representatives to submit their closings within six weeks, on November 5, 2010. LSLS prepared a twenty-nine page closing brief which provided a detailed analysis

of E.C.'s voluminous educational records and the relevant law. The DOE representative did not submit a closing statement.

13. On January 4, 2011, IHO Pennington issued a decision in favor of the plaintiff on *all* of the claims she asserted. IHO Pennington also granted plaintiff all of the relief requested. Plaintiff was therefore the prevailing party on all issues in the Impartial Hearing within the meaning of IDEIA 20 U.S.C. § 1415(i)(3).   As prevailing party, Plaintiff is entitled to reasonable attorney's fees and costs.

14. This case was very complex because of E.C.'s extensive history with the DOE, the intractable nature of E.C.'s disability, the DOE's repeated procedural and substantive failures, the number of evaluations E.C. underwent and the lack of responsiveness and preparedness on the part of the DOE's representatives while the proceeding was pending.  As a result, during the fifteen month period of activity on this case, LSLS expended 978.3 hours to ensure a fair outcome for E.C.

15. When the hearing commenced, E.C. was a fourteen year old student attending public school in New York City who presented with multiple deficits in all academic areas, a long history of speech and language challenges and a collection of problem behaviors, all of which adversely affected his learning.

16. Complicating matters, the DOE representatives handling this matter were unresponsive and although they were not prepared for either hearing date and did not offer any testimony or evidence, they provided no advance notice to plaintiff of their plans and insisted on going forward with the case.

17. LSLS singlehandedly obtained, reviewed and submitted hundreds of pages of E.C.'s educational records dating back to 2003 in order to demonstrate the DOE's persistent failure to respond to E.C.'s problems (In re E.C. (2011)) ("Exhibit B").  The result was a scathing decision in favor of the plaintiff on all issues.

18. IHO Pennington determined that "a gross violation of FAPE was committed by the DOE for the 2008-2009 and 2009-2010 school years" (Exhibit B). He stated further "clearly…the student has been deprived of instruction over a substantial period of time" (Exhibit B). He found that "the student's classification changed numerous times…..the student has not been properly evaluated. Exhibits twelve, fourteen and fifteen improperly classify E.C. with the non-existent classification, "mentally deficient", a category that does not exist under the IDEIA or any applicable New York State provisions. The fact that such improper classification was repeated in more than one IEP is proof that the DOE failed to properly develop an appropriate IEP over a substantial period of time" (Exhibit B).

19. The complexity of the case is further demonstrated by IHO Pennington's acknowledgement of E.C.'s wide-ranging educational challenges. He stated that E.C. had "poor comprehension, spelling, reading and math skills …" and that he was "impulsive and has difficulty controlling his emotions" (Exhibit B) Further, he found that E.C. exhibited a lack of academic progress during the years in question, stating, "The parent's credible testimony along with exhibits nine, ten, twelve, fourteen and twenty-two establish the students delays and lack of progress. The decision goes on to cite several additional procedural and substantive violations" (Exhibit B)

20. The relief was similarly sweeping. He ordered "the Department to fund and/or provide the parent with a Related Services Authorization ("RSA") for 198 hours of speech therapy and 360 hours private tutoring at Board rate" (Exhibit B). He ordered the "CSE team to reconvene within two to three weeks and consider all evaluations, consider deferral to Central Based Support Team ("CBST") and consider proposed placement of School of Language and Communication Development; and to devise an appropriate IEP" (Exhibit B).

21. Subsequent to the Impartial Hearing Decision, LSLS made written demand upon Defendant for payment of reasonable attorney's fees in connection with LSLS's representation of Plaintiff at the Impartial Hearing.

22. The demand for attorney's fees was in writing and accompanied by, (1) a chronological log of contemporaneously maintained billing records, computed to one-tenth of an hour for each task performed, (2) the resume of each legal intern and attorney who provided the services (3) an affirmation by the supervising attorney attesting to the provision of the services identified in the request, (4) a copy of the retainer agreement between LSLS and the plaintiff, (5) a written authorization signed by the plaintiff for LSLS to demand and receive attorney's fees.

23. LSLS later informed the DOE that the in preparing the demand billing judgment was exercised to eliminate all excessive, unnecessary and redundant entries that are inherent in a law school clinic. Hence our demand reflected that we were proactive by making reductions as necessary to comply with governing case law. Although the demand submitted to the DOE did not include the activities for the hours we chose to remove, we have submitted a log with this application which includes all the hours we expended. The log demonstrates our billing judgment by indicating "no charge" next to the items we chose to remove from consideration. Please note that the name of the parent and minor child have been redacted from the log submitted with this complaint.

24. The hours expended by LSLS in connection with the Impartial Hearings were reasonable in relation to the services required and performed. The fees requested were based on prevailing hourly rates in the community for similar services provided by attorneys and law student interns with comparable professional experience. The fees we seek total $57,345.00, representing 978.3 hours at hourly rates of $150 for legal student interns and $400 for supervising attorney (Exhibit C).

25. Defendant has wrongfully neglected and refused to make payment of the fees and costs demanded.

26. Plaintiff has made reasonable efforts to resolve this dispute without resort to this federal court action.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the court:

Assume jurisdiction of this action;

Award Plaintiff reasonable attorney's fees and costs, in an amount to be determined at trial, incurred in connection with the successful prosecution of Plaintiff's claim as stated herein, as well as in connection with LSLS's efforts to recover reasonable attorney's fees and costs, including those incurred in the prosecution of this action; and

Award such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       December 5, 2012

Respectfully Submitted,

Leah Hill, Esq.
Lincoln Square Legal Services,
33 West 60th St
Third Floor
New York, New York 10023
212-636-6934

# EXHIBIT A

# LINCOLN SQUARE LEGAL SERVICES, INC.

**Executive Director**
Ian Weinstein

**Supervising Attorneys**
Cheryl G. Bader
James A. Cohen
Elizabeth B. Cooper
Romaine L. Gardner
Mercer Givhan
Brian Glick
Leah A. Hill
Ron Lazebnik

**Supervising Attorneys**
Elizabeth A. Maresca
Michael W. Martin
Paul Radvany
Martha Rayner
Beth G. Schwartz
Marcella Silverman
Gemma Solimene

**Supervising Social Workers**
Kathy Ho, M.S.W.
Lyn Kennedy Slater, C.S.W., Ph.D.

Committee on Special Education:
Chair: Marilyn Sprecher
388 W. 125th St.
New York, NY 10027
Phone: (212) 342-8300

Re: ▮▮▮▮▮▮▮▮▮
CSE Case #: 03-21841
Date of Birth: August 12, 2003
NYC ID: 275017994
Home District: 3
Service District: Region 3

Current Placement:
MS 247 Dual Language Middle School
32 W 92nd Street
New York, NY 10025

Parent:
▮▮▮▮▮▮▮▮▮
845 Columbus Avenue, Apt 8G
New York, NY 10025

Dear Ms. Sprecher:

   Lincoln Square Legal Services ("LSLS") represents ▮▮▮▮▮▮▮▮▮ ("▮▮▮▮▮▮"), on behalf of her son ("▮▮▮▮▮▮"), in her quest to ensure that ▮▮▮▮▮ receives a free and appropriate public education ("FAPE") that he is entitled to under the Individuals with Disabilities in Education Act (IDEA) and New York law.  Specifically, the CSE has:

   i.)   Failed to properly identify ▮▮▮▮▮▮ disability
   ii.)  Failed to properly classify ▮▮▮▮▮ in 2007, 2008 and 2009
   iii.) Failed to provide ▮▮▮▮▮ with an adequate evaluation in developing his IEP in 2007, 2008 and 2009
   iv.)  Failed to develop an adequate IEP for ▮▮▮▮▮
   v.)   Failed to provide ▮▮▮▮▮ with a Free and Appropriate Public Education; and,
   vi.)  Failed to properly implement ▮▮▮▮▮ 2008 and 2009 IEP.

## Failure to Provide Free and Appropriate Public Education

As per 20 USC § 1401(9), a school is required to provide each student with a free and appropriate public education that is, (A) provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the state education agency, (C) include an appropriate preschool, elementary school, or secondary school education in the state involved; and, (D) are provided in conformity with the individualized education program required under §1414(d) of this title.

The Supreme Court in Board of Education v. Rowley (458 US 176 at 188-189) determined that a FAPE consists of "educational instruction specifically designed to meet the unique needs of the handicapped child supported by such services as necessary to permit the child to benefit from the instruction." Moreover, the Court in Rowley (458 US 176 at 206-207) also states that "a court's inquiry in suits brought under § 1415(c)(2) is twofold. First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" ▓▓▓▓▓ has not made any educational progress for close to three years particularly in reading where his scores have not improved and, in fact have regressed. Further, ▓▓▓▓▓ 2008 IEP indicated that he was to receive speech and language services 2X40X5 with an additional 1X40X1 to "address attention and auditory processing skills. Prior to the formation of his 2008 IEP, ▓▓▓▓▓ had been receiving speech and language therapy in a group 4 times per week. (2008 IEP page 3). On his 2008 IEP, he was only provided with speech and language services once per week (2008 IEP page 4). It is clear from all of his school records that Enrique has not made progress, and that he also has not been receiving the services mandated in his 2008 IEP. Furthermore, while ▓▓▓▓▓ has shown no signs of progress these services have not been increased in the 2009 IEP. Therefore, the Department of Education has failed in providing ▓▓▓▓▓ with a FAPE as ▓▓▓▓▓ has not been provided an adequate evaluation and has not had an individualized educational program reasonably calculated to confer educational benefit.

## Failure to Provide ▓▓▓▓▓ with an Adequate Evaluation and Identify His Disability

On September 25, 2009 ▓▓▓▓▓ was evaluated by Arlene Pinetta, school psychologist at MS 247. This evaluation was not sufficiently comprehensive to comport with N.Y. Comp. Codes R. & Regs. tit. 8 § 200.4 (b)(4) requiring that "The reevaluation shall be conducted by a multidisciplinary team or group of persons, including at least one teacher or other specialist with knowledge in the area of the student's disability."

Furthermore, data available to the CSE indicated that further testing was necessary to properly identify ▓▓▓▓▓ needs. In his 2008 IEP, ▓▓▓▓▓ demonstrated reading comprehension skills within a third grade level. His fluency and word recognition were comparable to a third grade student, as well as his writing skills. Psychological testing conducted by Arlene Pinetta, on September 25, 2009 revealed that ▓▓▓▓▓ reading decoding skills placed him at 2.6 grade level and his reading comprehension also tested at a 2.6 grade level These test scores indicate that not only has ▓▓▓▓▓ not made educational progress, but he has regressed.

Pursuant to N.Y. Comp. Codes. R. & Regs. tit. 8 § 200.4, the CSE and other qualified professionals should have reviewed their own evaluation data indicating that ████████ had persistent and severe comprehension and communication problems that had not been addressed for years. The CSE should have used this data to identify other possible evaluations that might have better identified his deficits and targeted specific services accordingly.

Finally, the evaluation conducted in 2009 was not sufficient to assess ████████ in all areas related to his suspected disability, including, where appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, vocational skills, communicative status and motor abilities, in compliance with N.Y. Comp. Codes. R. & Regs. tit. 8 § 200.4 (b)(6)(vii). Indeed in ████████ 2008 IEP report, the Department of Education recommended a Central Auditory Processing Disorder Evaluation. This recommendation was consistent with ████████ 2006 IEP which described him as having "reduced auditory memory/ processing skills". Further testing of these skills and ████████ disability in this area has yet to occur. Without additional evaluations, ████████ disability and classification remain in question.

### Failure to Properly Implement Enrique's IEP

Pursuant to N.Y. Comp. Codes. R. & Regs. tit. 8 § 200.4 (c)(4)(e)(2), A school district shall ensure that each student with a disability has an IEP in effect at the beginning of the school year. The Board of Education has not satisfied this requirement. ████████ most recent IEP was created on October 2, 2009. This IEP was created past the start of the school year. Further, to this date the IEP has not been properly implemented. ████████ is currently in a classroom staffing ratio of 20:1. His IEP created on 10/2/09 mandates for a classroom with a 12:1 staffing ratio. Not only has this year's IEP never been implemented, but his IEP program for 2008 that mandated a classroom staffing ratio of 13:1 was also never fulfilled. In fact, since being placed at MS 247 ████████ has never received the required staffing ratio provided by his IEP. Furthermore, in ████████ latest IEP a new staffing ratio of 12:1:1 was to occur by November 2, 2009. It is currently November 20, 2009 and the IEP has yet to be properly implemented. M.S. 247 does not have the ability to provide a 12:1 classroom setting.

As per N.Y. Comp. Codes. R. & Regs. tit. 8 § 200.4 (e)(4), while ████████ current placement is inadequate to fulfill his educational needs, by law he is entitled to remain in his current placement until an appropriate review based on an independent evaluation of ████████ educational needs occurs. Switching ████████ placement without a proper independent evaluation will only further delay ████████ educational progress, as it is still unclear as to what ████████ needs are.

Consequently we are requesting:

That the Department of Education grant ████████ the right to obtain a comprehensive independent evaluation of ████████ at public expense, pursuant to N.Y. Comp. Codes R. & Regs. tit. 8 § 200.5 to be administered by a multidisciplinary team or group of persons that will include but is not limited to, a full psychiatric evaluation; neurological evaluation, physical examination; and an auditory-processing evaluation.

That ████████ be provided with information regarding where an independent educational evaluation may be obtained; and the school district's criteria applicable for

independent educational evaluations pursuant to N.Y. Comp. Codes. R. & Regs. tit. 8 § 200.4 (b)(4) and N.Y. Comp. Codes. R. & Regs. tit. 8 § 200.5(g)(1)

That ███████ current program and placement be reviewed, taking into account said independent evaluation

That ███████ be provided with additional educational services to make up for the time he was improperly classified, evaluated and placed. Such services shall include but not be limited to private tutoring and any other services that will compensate for the above mentioned failures.

That pursuant to N.Y. Comp. Codes. R. & Regs. tit. 8 § 200.4 (e)(4), ███████ remain in his current placement pending a new recommendation of the committee on special education, unless the board and parent otherwise agree.

That such other and further relief deemed necessary be granted.

### Conclusion

Therefore we respectfully request that that the relief herein requested be granted in its entirety. We look forward to hearing from you soon, and thank you in advance for your cooperation. Please feel free to contact us at 212-636-6934 with any questions.

Dated: November 20, 2009

LINCOLN SQUARE LEGAL SERVICES INC.
BY:

Stacy Sadove
Legal Intern
33 W. 60th Street, 3rd Fl
New York, NY 10023
212-636-6934

LINCOLN SQUARE LEGAL SERVICES INC.
BY:

Josh Gelb
Legal Intern
33 W. 60th Street, 3rd Fl
New York, NY 10023

LINCOLN SQUARE LEGAL SERVICES INC.
BY:

Leah Hill
Supervising Attorney
33 W. 60th Street, 3rd Fl
New York, NY 10023

# EXHIBIT B

## FINDINGS OF FACT AND DECISION

Case Number:        125343

Student's Name:     ██████████

Date of Birth:      November 26, 1996

District:           3

Hearing Requested By:   Parent

Date of Hearing:    June 9, 2010
                    September 21, 2010

Hearing Officer:    Ralph Pennington, Jr., Esq.

Hearing Officer's Findings of Fact and Decision                                          1

Case No. 125343

NAMES AND TITLES OF PERSONS WHO APPEARED ON JUNE 9, 2010

PARENT
LEAH HILL, Attorney
ALEXANDRA ALVAREZ, Legal Intern
RACHEL WU, Legal Intern
KASH LEGRAND, Social Worker
AARON SCHEINWALD, Legal Intern

DEPARTMENT OF EDUCATION
WILLIAM R. WOODS, CSE Representative

NAMES AND TITLES OF PERSONS WHO APPEARED ON SEPTEMBER 21, 2010

PARENT
LEAH HILL, Attorney
███████████, Parent
BERNARD DUFRESNE, Legal Intern
SIOBHAIN MINAROVICH, Legal Intern
KATHERINE ACOSTA, Social Worker Intern
AARON SCHEINWALD, Legal Intern
TANYA COVINGTON, Social Worker

DEPARTMENT OF EDUCATION
NICHOLAS CHAVARRIA, CSE Representative

Hearing Officer's Findings of Fact and Decision                                    2

Case No   125343

---

### PARENT'S POSITION

The parent contends that the New York City Department of Education (hereinafter referred to as "Department"), has failed to identify and properly classify this student for the 2007, 2008 & 2009 school years. The department failed to neither provide the student with an adequate Individualized Education Program (IEP) nor properly implement an IEP for the 2008 and 2009 school years.

With respect to relief, the parent seeks: an related services authorization ("RSA") to receive a minimum of one hundred and ninety-eight hours of compensatory education in the form of speech therapy to compensate for missed services; an RSA to receive three hundred and sixty hours of compensatory education in the form of reading and writing instruction; Committee on Special Education (CSE) to reconvene to draft an appropriate IEP with a deferral to Central Based Support Team (CBST) so that the student may be placed in a nonpublic school setting with transportation provided; and the parent seeks placement at the School for Language and Communication Development.

### DEPARTMENT'S POSITION

The Department is silent as to any argument in opposition, except that if the requested placement is not available then that a comparable placement be made immediately. Secondly, the department argues that the RSA's are provided for specific related services with a specific provider and not for a non-specified provider.

### Evidence presented:

### On Behalf of the Department:

The department presented no documentary or testimonial evidence.

### On Behalf of the Parent:

██████████, Parent, testified that she is the parent of the student (Tr.26). She first noticed that the student had issues around ages six or seven (Tr.27). The student was not listening and attending (Tr.27). He had difficulty with his homework (Tr.28). He had difficulty with his homework every day (Tr.29). It would take him five or six hours to do his homework (Tr.29). The student has made no progress in the past five-six years (Tr.32). Said witness requested to the department that the student be reevaluated and

Hearing Officer's Findings of Fact and Decision                                   3

Case No.  125343

never received a response (Tr.32). She feels that the student requires a small class (Tr.32). She has no difference from last school year to this school year (Tr.33). She would like to be more involved in the IEP process and more in contact with his teachers (Tr.33).

Moreover, the student has difficulties at home (Tr.34). Often, she has to repeat herself when requesting him to do something, (Tr.35). The student is currently failing his academic classes (Tr.35).

No cross examination was conducted of this witness.

## FINDINGS FACTS AND CONCLUSIONS OF LAW.

I find that the evidence clearly establishes that the student is a fourteen (14) year old student who is classified as speech and language impaired on the October 2, 2009 IEP. The most recent IEP of August 2010 classifies the student with an emotional disturbance. The student presents with poor comprehension, spelling, reading and math skills. Exhibit twenty-two shows that academically, the student performs in a range from 2.6 to 6.0 grade equivalent in various academic domains. The student is impulsive and has difficulty controlling his emotions. He has been diagnosed with attention deficit hyperactive disorder and oppositional defiant disorder.

Compensatory education, i.e., special education services provided to a student is a permissible remedy under the Individuals with Disabilities Education Act (IDEA) when the student has been excluded from school or denied appropriate educational services for an extended period of time (Mrs. C. v. Wheaton, 916 F.2d 69 [2d Cir. 1990]; Burr by Burr v. Ambach, 863 F.2d 1071 [2d Cir. 1988]; Lester H. v. Gilhool, 916 F.2d 865 [3d Cir. 1990]; Miener v. State of Missouri, 800 F.2d 749 [8th Cir. 1986]). Compensatory education is an equitable remedy that is tailored to meet the circumstances of the case (Wenger v. Canastota, 979 F. Supp. 147 [N.D.N.Y. 1997]). It may be awarded if there has been a gross violation of the IDEA resulting in the denial of, or exclusion from, educational services for a substantial period of time (Mrs. C. v. Wheaton, 916 F.2d 69 [2d Cir. 1990]; Burr v. Ambach, 863 F.2d 1071 [2d Cir. 1988]; Application of the Bd. of Educ., Appeal No. 02-047).

Hearing Officer's Findings of Fact and Decision                                    4

Case No. 125343

_____

While, compensatory education is a remedy that is available to students who are no longer eligible for instruction, I note that State Review Officers have awarded additional services to students who remain eligible to attend school and have been denied appropriate services, if such deprivation of instruction could be remedied through the provision of additional services before the student becomes ineligible for instruction by reason of age or graduation (Application of a Child with a Disability, Appeal No. 05-096, Application of a Child with a Disability, Appeal No. 04-054; Application of the Bd. of Educ., Appeal No. 02-047; Application of a Child with a Disability, Appeal No. 02-042; Application of a Child with a Disability, Appeal No. 02-030).

Based upon my review of the record, I find that a gross violation of FAPE was committed by the department for the 2008-2009 and 2009-2010 school years. Therefore, I agree with the parent's attorney that the student is entitled to and has the opportunity to receive the additional services requested. The parent's credible testimony along with exhibits nine, ten, twelve, fourteen and twenty-two, establish the student's delays and lack of progress. Further, the record establishes that the student's classification has been changed numerous times. The department presents no evidence and no witnesses in this matter.

Further, the record substantiates that the student has not been properly evaluated. Exhibits twelve, fourteen and fifteen improperly classify with the non-existent classification of "mentally deficient". A category that does not exist under the IDEA or any applicable New York State Law provisions. The fact that such improper classification was repeated in more than one IEP is proof that the department failed to properly develop an appropriate IEP over a substantial period of time.

Moreover, a review of exhibit fourteen reveals that the IEP team of March 17, 2007 was not properly composed. Said IEP team did not have a special education teacher, a district representative, a parent or a parent member. Said IEP team clearly was missing mandatory members of the team. This evidence further corroborates the parent's argument that the department has not only failed to provide FAPE to this student but failed to develop an appropriate IEP and properly classify this student over a number of years. Furthermore, the parent did not attend the CSE meeting that resulted in exhibits

Hearing Officer's Findings of Fact and Decision                                                     5
Case No.  125343

fourteen and fifteen, therefore said IEP's were developed without meaningful participation of a key CSE member, the parent.

Clearly, as a result of the above noted discussion, the student has been deprived of instruction over a substantial period of time which the department does no refute. Although it is alleged by the parent that the student was not provided with numerous speech therapy sessions, the department fails to present any evidence to rebut and or counter said argument. On the basis of exhibits sixteen and twenty-two, it appears that the student has missed at least one hundred and ninety-eight hours of speech therapy.

Furthermore, to remedy the denial of FAPE and the lack of instruction and services, under these circumstances, the parent seeks additional services of private tutoring. The record reveals that the student has poor reading and writing skills (Exhibit 30). The parent requests three hundred and sixty hours of private tutoring at the rate of one hundred ten dollars per hour. However, the parent does not submit any evidence to justify the requested enhanced rate, inclusive of a particular provider, for said private tutoring. Therefore, the private tutoring will be provided at the department rate.

Thus, I direct the department to provide the student with the additional services, noted above to allow him to make up for instruction and services that he missed. Thus, the student is to be provided with up to one hundred and ninety-eight hours of speech and language therapy and three hundred and sixty hours of private tutoring, to commence from the date of this decision until June 30, 2012. The private tutoring is to be provided at the department rate. If necessary, the department is to provide the parent with a Related Services Authorization (RSA) so that she may acquire the necessary additional services noted above.

Lastly, pursuant to the parent's request, a duly constituted CSE team is to reconvene, within two-three weeks, and said CSE team is to consider all evaluations and also consider a deferral to CBST for placement/program and/or the School for Language and Development as a proposed placement. The parent further requests that the student be placed at the School for Language and Communication Development. However, the record is devoid of any evidence to substantiate the appropriateness of said placement.

Hearing Officer's Findings of Fact and Decision                                        6

Case No. 125343

The parent did not testify as to the proposed school nor was any other witness presented to testify to such. There is no documentary evidence to substantiate the appropriateness of the proposed placement. Therefore, the CSE team is to consider said potential placement. It is hereby:

So Ordered,

The department is to provide the student, as compensatory education, with up to one hundred and ninety-eight hours of speech and language therapy and three hundred and sixty hours of private tutoring, to commence from the date of this decision until June 30, 2012. The private tutoring is to be provided at the department rate. Also, a duly constituted CSE team is to reconvene, within two-three weeks, to develop an appropriate IEP. Said CSE team is to consider all evaluations and also consider a deferral to CBST for placement/program and/or the School for Language and Development as a proposed placement. If necessary, the department is to provide the parent with an RSA so that she may acquire the necessary additional services noted above.

Dated:  December 30, 2010

RALPH PENNINGTON, JR., ESQ.
Impartial Hearing Officer

RPJ:jj

Hearing Officer's Findings of Fact and Decision                                    7

Case No.  125343

_____

PLEASE TAKE NOTICE

Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.

"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed. The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed. If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b]) Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.

Directions and sample forms for filing an appeal are included with this decision. Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.

8

Hearing Officer's Findings of Fact and Decision

Case No. 125343

## DOCUMENTATION ENTERED INTO RECORD

PARENT

1    Connor's Teacher's Rating Scale, 2003, 4 pp.
2    Social History, 2003, 3 pp.
3    Psycho-Educational Evaluation, 1/12/2004 and 2/04/2004, 3 pp.
4    Psycho-Educational Evaluation, 1/12/2004 and 2/04/2004, 2 pp.
5    Speech and Language Evaluation 2004, 4 pp.
6    Structured Classroom Observation Record, 004, 5 pp.
7    IEP, 2/25/2004, 13 pp.
8    IEP, 1/11/2005, 10 pp.
9    Speech and Language Progress Report, 3/01/2005, 1 p.
10   IEP, 3/10/2005, 18 pp.
11   Interim Service Plan, 2005, 2 pp.
12   IEP, 3/17/2006, 14 pp.
13   IEP, 3/17/2006, 14 pp.
14   IEP, 3/17/2007, 15 pp.
15   IEP, 3/20/2008, 13 pp.
16   IEP, 11/13/2008, 13 pp.
17   Social History, 2009, 4 pp.
18   Parent's Letter to Department, Undated, 1 p.
19   Teacher's Progress Report, 2009, 4 pp.
20   Functional Behavioral Assessment 2009, 7 pp.
21   Psycho-Educational Evaluation, 9/25/2009, 17 pp.
22   IEP, 10/02/2009, 12 pp.
23   Audiological Evaluation Results 3/30/2010, 1 p.
24   Speech Evaluation Summary 2010, 5 pp.
25   Speech Evaluation Full Report 2010, 13 pp.
26   Progress Reports, 2010, 4 pp.
27   Psychiatric Report, 5/27/2010, 27 pp.
28   Neuropsychological Evaluation Report, 4/26/2010, 10 pp.
29   Results of ENT, 08/18/2010, 1 p.

POST HEARING

30   IEP, 8/10/10, 14 pp.

Version: 02/05/2009

| STUDENT NAME | IHO CASE NUMBER | PARENT/GUARDIAN NAME | | |
|---|---|---|---|---|
| ███████ | 125343 | ███████ | | |

| ORDER(S) | REQUESTED | COMPLETED | FINAL | AMENDED |
|---|---|---|---|---|
| SERVICE | YES | NO | Locked by Ralph Pennington, Jr. on 12/29/2010 2:35:23 PM | and Locked by Ralph Pennington, Jr. on 12/29/2010 2:42:23 PM |
| REIMBURSEMENT | NO | N/A | | |
| PAYMENT | YES | | Locked by Ralph Pennington, Jr. on 12/29/2010 2:35:23 PM | and Locked by Ralph Pennington, Jr. on 12/29/2010 2:42:23 PM |

# PAY ORDER

| STUDENT NAME | IHO CASE NO. | PARENT/GUARDIAN NAME |
|---|---|---|
| ▅▅▅▅▅ | 125343 | ▅▅▅▅▅ |

## The New York City Department of Education (DOE) is directed to PAY

### IT IS FURTHER DIRECTED THAT

Dept. to fund and/or provide the parent with an RSA for the additional services of 198 hours of speech therapy and 360 hours of private tutoring. Private tutoring to be at Board rate. Properly constituted CSE team to reconvene within 2-3 weeks and to consider all evaluations, consider deferral to CBST and proposed placement of SLCD, and devise an appropriate IEP.

Dated: _____

So Ordered: _____

Finalized and Locked by Ralph
Pennington, Jr. on 12/29/2010
2:35:23 PM

    4th Time Finalized and Locked by
Ralph Pennington, Jr. on 12/29/2010
        2:42:23 PM

**Ralph Pennington, Jr.**
Impartial Hearing Officer Name

_Ralph Pennington, Jr. Esq._
Impartial Hearing Officer Signature

### PROOF OF SERVICE PROVISION

**A**   Contract between school/provider & record of service
    a1 - Contract between parent and school/provider
    a2 - Record of attendance/service
**B**   Invoice for tuition/service on school/provider letterhead and record of attendance/service (if applicable)
    b1 - Invoice for tuition/service on school/provider letterhead
    **b2** - Record of attendance/service
**C**   School affidavit certifying cost and enrollment/service period
**D**   Copy of independent evaluation report with date of service
**E**   Daily transportation log identifying destination
**X**   Other service document
**NO**   DOE will reimburse parent upon submission of documents supporting the **provision of service**.

| STUDENT NAME | IHO CASE NO | PARENT/GUARDIAN NAME |
|---|---|---|
| | 125343 | ████████ |

**SERVICE**

           4th Time Finalized and Locked by Ralph Pennington, Jr on 12/29/2010 2:42:23 PM

           2nd Time Finalized and Locked by Ralph Pennington, Jr on 6/21/2010 3:17:41 PM

**PAYMENT**

           4th Time Finalized and Locked by Ralph Pennington, Jr on 12/29/2010 2:42:23 PM

Dated: _____

           Ralph Pennington, Jr.

          _____

          Impartial Hearing Officer Name

So Ordered: _____

          _____

          Impartial Hearing Officer Signature

<u>PLEASE TAKE NOTICE</u>

Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.

"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed. The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed. If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2(b)) Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.

Directions and sample forms for filing an appeal are included with this decision. Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.

# EXHIBIT C

**Lincoln Square Legal Services, Inc.**
33 West 60th Street
Third Floor
New York, N.Y. 10023-7485

Date: 11/05/2012

Regarding: ▆▆▆▆▆▆ In Re ▆▆▆▆▆▆
Invoice No: 01014

*Services Rendered*

| Date | Staff | Description | Hours | Rate | Charges |
|------|-------|-------------|-------|------|---------|
| 10/07/2009 | STS1 | Conference Talked with Michelle regarding case. Had a conversation with Josh regarding case. | 1.50 | $150.00 | No Charge |
| 10/08/2009 | STS1 | Document Review - Review of IEP and researched unrecognized classification "mentally deficient" | 3.75 | $150.00 | No Charge |
| 10/09/2009 | STS1 | Conference phone conference josh game plan | 1.00 | $150.00 | No Charge |
| 10/09/2009 | STS1 | Document Review more of IEP review of Special education materials from class lecture, and review of parent guide to special education | 4.00 | $150.00 | $600.00 |
| 10/09/2009 | STS1 | Review of IEP, review of special education procedures and regulations | 1.00 | $150.00 | $150.00 |
| 10/13/2009 | STS1 | Meeting - Supervision Supervision meeting. Discuss meeting with client | 2.00 | $150.00 | No Charge |
| 10/14/2009 | STS1 | Conference -Conference call between team members regarding client meeting | 0.75 | $150.00 | $112.50 |
| 10/14/2009 | STS1 | Document Review - Review interview questions and statutes for client meeting | 2.00 | $150.00 | $300.00 |
| 10/15/2009 | STS1 | Document Review -Review documents for meeting with client reprint business cards | 1.00 | $150.00 | No Charge |
| 10/15/2009 | STS1 | Interview with client | 1.50 | $150.00 | $225.00 |
| 10/15/2009 | STS1 | Meeting - In Office Meeting with team in | 12.00 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.

Page No :      2

|  |  | office post interview for wrap up and discussion/ debrief |  |  |  |
|---|---|---|---|---|---|
| 10/16/2009 | STS1 | Document review and and research on special education generally, statutes and definitions | 4.50 | $150.00 | $675.00 |
| 10/19/2009 | STS1 | Research | 2.25 | $150.00 | No Charge |
| 10/20/2009 | STS1 | Meeting - Student Team | 0.75 | $150.00 | No Charge |
| 10/21/2009 | STS1 | Meeting - Supervision | 1.00 | $150.00 | No Charge |
| 10/21/2009 | STS1 | Meeting - Student Team | 0.82 | $150.00 | No Charge |
| 10/22/2009 | STS1 | Research on topics for memo this week. mandatory school kick out of child etc. | 3.50 | $150.00 | No Charge |
| 10/23/2009 | STS1 | Document Drafting memo for class | 2.00 | $150.00 | No Charge |
| 10/23/2009 | STS1 | Conferences with Kasi/josh/ Prof. Hill to set up call to Mr. Torres. Ultimately call was not answered as Mr. Torres was unavailable. Team conferencing in between. | 1.00 | $150.00 | No Charge |
| 10/26/2009 | STS1 | Meeting - In Office meeting via conference call with josh attempt to call Mr. Torres | 0.50 | $150.00 | No Charge |
| 10/27/2009 | STS1 | Document Drafting Memo to file | 7.25 | $150.00 | No Charge |
| 10/28/2009 | STS1 | Meeting - Supervision | 1.25 | $150.00 | No Charge |
| 10/28/2009 | STS1 | Document Drafting - Draft Memo | 2.00 | $150.00 | No Charge |
| 10/28/2009 | STS1 | Team meeting - Called Mr. Torres and school teacher of ▇▇▇▇ | 2.00 | $150.00 | $300.00 |
| 10/30/2009 | STS1 | Other Scan memos into TM. | 1.00 | $150.00 | No Charge |
| 10/30/2009 | STS1 | Conference with Kasi regarding Client and attempt to call Client. | 0.50 | $150.00 | No Charge |
| 10/30/2009 | STS1 | Special Education research | 2.00 | $150.00 | No Charge |
| 11/03/2009 | STS1 | Call to client, call to school resend fax | 2.00 | $150.00 | $300.00 |

Lincoln Square Legal Services, Inc.
Page No.:      3

| 11/03/2009 | STS1 | Conference - Call with josh regarding case | 1.08 | $150.00 | No Charge |
| 11/03/2009 | STS1 | Review all records, continue research, revise FAPE memo | 3.50 | $150.00 | $525.00 |
| 11/04/2009 | STS1 | Meeting - Supervision | 1.00 | $150.00 | No Charge |
| 11/05/2009 | STS1 | Meeting with school officials | 2.00 | $150.00 | $300.00 |
| 11/05/2009 | STS1 | Conference - Meeting with professor Hill and Josh draft Chron note | 1.00 | $150.00 | No Charge |
| 11/06/2009 | STS1 | Review of additional school records, continue drafting of memo, and research on independent evaluations | 3.00 | $150.00 | $450.00 |
| 11/06/2009 | STS1 | Conference - Conference call with team to plan for meeting Monday | 0.00 | $150.00 | No Charge |
| 11/06/2009 | STS1 | Draft of retainer agreement | 1.00 | $150.00 | $150.00 |
| 11/09/2009 | STS1 | Preparation for client meeting | 1.00 | $150.00 | $150.00 |
| 11/09/2009 | STS1 | Client Meeting in office | 2.50 | $150.00 | $375.00 |
| 11/10/2009 | STS1 | Review of documents, review of 8NYCRR 200, draft of letter to CSE | 4.00 | $150.00 | $600.00 |
| 11/11/2009 | STS1 | Meeting - Student Team | 1.00 | $150.00 | No Charge |
| 11/12/2009 | LAH | Meeting - Supervision with ████ team to discuss strategy | 1.00 | $400.00 | $400.00 |
| 11/12/2009 | STS1 | Meeting - Supervision | 1.00 | $150.00 | No Charge |
| 11/17/2009 | STS1 | Draft complaint, complete FAPE memos | 5.00 | $150.00 | $750.00 |
| 11/18/2009 | STS1 | Draft of complaint | 2.00 | $150.00 | No Charge |
| 11/18/2009 | STS1 | Meeting - Supervision | 1.00 | $150.00 | No Charge |
| 11/19/2009 | STS1 | Further draft complaint | 6.00 | $150.00 | $900.00 |
| 11/20/2009 | STS1 | Document Drafting | 1.50 | $150.00 | No Charge |
| 11/20/2009 | STS1 | Sign complaint, and met with client to have her sign complaint | 1.00 | $150.00 | $150.00 |

Lincoln Square Legal Services, Inc.

Page No.:     4

| 11/23/2009 | STS1 | Conference with Josh / document review for case | 1.50 | $150.00 | No Charge |
| 11/24/2009 | STS1 | Phone call to CSE, review of documents folder | 1.00 | $150.00 | $150.00 |
| 11/24/2009 | STS1 | Draft memo | 2.00 | $150.00 | No Charge |
| 12/01/2009 | STS1 | Calls to various offices, messages, update chron notes etc. | 3.00 | $150.00 | No Charge |
| 12/03/2009 | STS1 | Call with B.W. CSN | 0.33 | $150.00 | $49.50 |
| 12/03/2009 | STS1 | Call to CSN board, finish file papers | 0.50 | $150.00 | No Charge |
| 12/07/2009 | STS1 | Conference with Professor Hill and Josh with call to client | 1.50 | $150.00 | $225.00 |
| 12/08/2009 | LAH | Meeting - In Office: Resolution Meeting | 1.00 | $400.00 | $400.00 |
| 1/18/2010 | AA9 | Document Review  Went over client's file. | 4.50 | $150.00 | No Charge |
| 1/19/2010 | AA9 | Case review and Analysis -  Looked through case notes and documents to review and gain familiarity with claims at issue in the ▮▮▮▮▮ matter. | 3.00 | $150.00 | $450.00 |
| 1/19/2010 | AA9 | Meeting - Student Team  Met with Rachel and Kasi to introduce ourselves, exchange numbers and briefly discuss the case. | 1.00 | $150.00 | No Charge |
| 1/19/2010 | RWU | Document Review | 3.50 | $150.00 | No Charge |
| 1/20/2010 | AA9 | Document Review  Went over the Client's Claims (the Final Draft) and the status memo | 0.75 | $150.00 | No Charge |
| 1/20/2010 | AA9 | Meeting - Supervision  Met with team and Professor Hill to discuss goals and a plans in the near future regarding client | 0.50 | $150.00 | No Charge |
| 1/20/2010 | RWU | Document review and legal research concerning impartial hearings | 3.17 | $150.00 | $475.50 |
| 1/20/2010 | RWU | Meeting - Supervision | 2.42 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.

Page No.:    5

| 1/24/2010 | AA9 | Document Review  Continued to look over documents. | 1.00 | $150.00 | No Charge |
| 1/24/2010 | AA9 | Document Review  Continued to get more familiarized with case. | 1.50 | $150.00 | No Charge |
| 1/25/2010 | AA9 | Other  Discuss with Rachel how we want to proceed with the hearing. Wrote an e-mail with her to Donna of Black Pennington Law about adjourning the hearing.  Started research on Mediation. | 2.00 | $150.00 | $300.00 |
| 1/25/2010 | AA9 | Research on Mediation.  Began writing a Mediation memo. | 0.75 | $150.00 | $112.50 |
| 1/25/2010 | AA9 | Meeting - Supervision  Met with Family Advocacy Clinic for Weekly Supervisory Meeting. | 1.25 | $150.00 | No Charge |
| 1/25/2010 | AA9 | Met with team to discuss plan for representing client. Contacted Ms. ███████to set up a client meeting. | 0.50 | $150.00 | $75.00 |
| 1/25/2010 | RWU | Research into the client's Due Process rights and memo on rights. Called client about additional availabilities for a hearing date. | 5.00 | $150.00 | $750.00 |
| 1/25/2010 | RWU | Meeting - In Office | 2.00 | $150.00 | No Charge |
| 1/26/2010 | AA9 | Other  Worked on filling out mediation form with Rachel.  Want to discuss form with ███████at client meeting tomorrow and make sure that we receive her consent. Contacted Bob Woods.  Started to prepare agenda for Client Meeting tomorrow. | 2.25 | $150.00 | No Charge |
| 1/26/2010 | AA9 | Team meeting to prepare for Client Meeting.was very helpful. | 1.00 | $150.00 | $150.00 |
| 1/26/2010 | AA9 | Other  Finished prep questions for Client Meeting 01.27.09. | 0.50 | $150.00 | $75.00 |
| 1/26/2010 | RWU | Contacted ███████case manager and Bob Woods today. Drafted a request for mediation. We also made the agenda for the client meeting with ███████ | 3.50 | $150.00 | $525.00 |

Lincoln Square Legal Services, Inc.

Page No.:      6

| Date | Code | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 1/27/2010 | AA9 | Telephone conference with Bill Woods (DOE representative) to work out a partial agreement. | 0.80 | $150.00 | $120.00 |
| 1/27/2010 | AA9 | Meeting in Office   Client meeting with ███ | 1.50 | $150.00 | $225.00 |
| 1/27/2010 | RWU | Phone Call to B. Woods and wrote a summary of the meeting with ███ ███ | 2.72 | $150.00 | No Charge |
| 1/27/2010 | RWU | Meeting - In Office | 1.50 | $150.00 | No Charge |
| 1/28/2010 | AA9 | Other  Read over/edited/added to Rachel's draft of client meeting.  Found Resolution agreement in TM (was in file bin but was never added to TM). Uploaded to TM. | 1.00 | $150.00 | No Charge |
| 1/31/2010 | AA9 | Other Wrote Supervisory Meeting Agenda for 02.01.10. | 0.75 | $150.00 | No Charge |
| 2/01/2010 | AA9 | Conference with team dissect the claims of the case and to initialize research for supporting documents, law and witnesses | 0.50 | $150.00 | $75.00 |
| 2/01/2010 | AA9 | Other Prepared summary of supervisory meeting. | 1.00 | $150.00 | No Charge |
| 2/01/2010 | AA9 | Meeting - Student Team  Met to discuss our agenda. | 0.50 | $150.00 | No Charge |
| 2/02/2010 | AA9 | Meeting - Supervision  Met to discuss agenda and goals for the week. | 1.00 | $150.00 | No Charge |
| 2/02/2010 | AA9 | Legal Research of claims for supporting documents, case law, and potential expert witnesses | 1.50 | $150.00 | $225.00 |
| 2/03/2010 | AA9 | Contacted Bill Woods about the Independent Evaluations and how they are paid for.  We also discussed implementing a plan after each evaluation is done | 0.50 | $150.00 | $75.00 |
| 2/03/2010 | AA9 | Other The team discussed how to proceed with Professor Hill. | 0.50 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.

Page No.     7

| Date | | Description | Hours | Rate | Amount |
|------|------|-------------|-------|------|--------|
| 2/03/2010 | AA9 | Legal research regarding NY regulations and client's son, ███████ classifications | 2.50 | $150.00 | $375.00 |
| 2/03/2010 | AA9 | Meeting - Student Team  Met with Kasi because we couldn't meet with her on Monday.  We discussed her updates and concerns.  She told us she wanted to know how the evaluations are paid for.  She told us she was trying to get in contact with Michelle Crichelow. We discussed with her what was going on with the partial agreement. | 0.50 | $150.00 | No Charge |
| 2/03/2010 | RWU | Research - Dissected the claims, called Bob Woods, discussed call with Professor Hill, team meeting, called ███████ school, went through hardcopy records | 5.25 | $150.00 | No Charge |
| 2/03/2010 | RWU | Research - Dissected claims, team meeting, called Bob Woods, met with Professor Hill to discuss phone call, called ███████ school, went through hardcopy records | 5.17 | $150.00 | No Charge |
| 2/05/2010 | AA9 | Phone calls to obtain ███████ Fall 2007 IEP | 0.50 | $150.00 | $75.00 |
| 2/07/2010 | AA9 | Dissection of claims | 0.50 | $150.00 | $75.00 |
| 2/07/2010 | RWU | Meeting - Supervision - Prepared Agenda for the week. | 1.08 | $150.00 | No Charge |
| 2/07/2010 | RWU | Document Review dissecting claims | 0.00 | $150.00 | $0.00 |
| 2/08/2010 | AA9 | Researched payment for Independent evaluations | 1.00 | $150.00 | No Charge |
| 2/08/2010 | AA9 | Further dissection of claims | 1.25 | $150.00 | $187.50 |
| 2/08/2010 | AA9 | Meeting - Student Team. Met with team to discuss goals and report on issues we divided.  We also discussed what we plan to talk about on Wednesday, i.e. types of outcomes to expect from the evaluations and how we plan to proceed from there.  We also discussed compiling our documents for the claims. | 1.00 | $150.00 | $150.00 |
| 2/08/2010 | AA9 | Meeting - Supervision | 2.37 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.

Page No.:    8

| 2/08/2010 | RWU | Meeting - Student Team | 1.08 | $150.00 | No Charge |
|---|---|---|---|---|---|
| 2/08/2010 | RWU | Meeting - Supervision - Supervisory Meeting and team meeting afterwards | 2.37 | $150.00 | No Charge |
| 2/10/2010 | AA9 | Document Review  Reviewed Kasi's recently uploaded TM documents (on ADHD).  Worked on provided support for claims. | 1.63 | $150.00 | No Charge |
| 2/10/2010 | AA9 | Research regarding support for claims in complaint. | 1.50 | $150.00 | $225.00 |
| 2/10/2010 | AA9 | Research of the IEP process using the Standard Operating Procedure provided by the DOE | 1.50 | $150.00 | $225.00 |
| 2/10/2010 | AA9 | Meeting - Student Team  Snow Day: Had a three way conference call with Rachel and Kasi.  We discussed projects we were working on and plans for the week. | 0.58 | $150.00 | No Charge |
| 2/10/2010 | AA9 | Research on the costs of Independent Evaluations | 1.72 | $150.00 | $258.00 |
| 2/10/2010 | RWU | Document Review, Claim Dissection | 2.92 | $150.00 | No Charge |
| 2/12/2010 | AA9 | Document Drafting; Discussed with Professors cost of Independent Evaluators as well as terms of Partial Agreement; contacted Bill Woods about the agreement and our terms.  Drafted Partial Agreement and sent to bill woods. | 2.85 | $150.00 | No Charge |
| 2/12/2010 | AA9 | Wrote Memo on Independent Evaluators, billing procedures, forms that circulate between the parent, DOE, and independent provider and more. | 3.08 | $150.00 | $462.00 |
| 2/15/2010 | AA9 | Meeting - Student Team, Met with team to discuss possible diagnoses for ▮▮▮▮ (used the small DSM book) as well as ways to respond to these diagnoses.  Discussed the Independent Evaluation sites with Kasi as well as our plans for the week. | 1.70 | $150.00 | $255.00 |

Lincoln Square Legal Services, Inc.
Page No.      9

| Date | | Description | Hours | Rate | Charge |
|---|---|---|---|---|---|
| 2/15/2010 | AA9 | Other  Worked on claim dissection (peer reviewed Rachel's claims) | 0.67 | $150.00 | No Charge |
| 2/15/2010 | AA9 | Other Reviewed/Editing Rachel's dissection of claims.  Also reviewed Kasi's document about Independent Evaluations. | 2.25 | $150.00 | No Charge |
| 2/15/2010 | RWU | Other: Wrote up Supervisory Meeting Summary for 2/8/20010 | 0.75 | $150.00 | No Charge |
| 2/15/2010 | RWU | Meeting - Student Team. Met with team to discuss possible diagnoses for ▇▇▇▇ | 1.75 | $150.00 | No Charge |
| 2/16/2010 | AA9 | Claim dissection | 3.12 | $150.00 | $468.00 |
| 2/16/2010 | AA9 | Other   Reviewed Kasi's agenda/added to agenda. | 0.25 | $150.00 | No Charge |
| 2/16/2010 | RWU | Document Review: Reviewed Alex's claim dissection | 2.58 | $150.00 | No Charge |
| 2/17/2010 | AA9 | Research  Conducted research on time constraints for independent evaluations. | 1.00 | $150.00 | No Charge |
| 2/17/2010 | AA9 | Meeting - Supervision  Met with entire Family Ad Clinic team to discuss cases. | 1.00 | $150.00 | No Charge |
| 2/17/2010 | AA9 | Other  Went over Kasi's notes from our supervision meeting. | 0.08 | $150.00 | No Charge |
| 2/17/2010 | RWU | Meeting - Supervision | 2.00 | $150.00 | No Charge |
| 2/18/2010 | RWU | Document Review:looking Alex's and my own claim dissections. | 3.25 | $150.00 | No Charge |
| 2/19/2010 | AA9 | Research  Researched time constraints for independent evaluations | 2.00 | $150.00 | No Charge |
| 2/20/2010 | RWU | Other: made changes to agenda | 0.53 | $150.00 | No Charge |
| 2/21/2010 | AA9 | Other  Drafted supervision agenda for the week. | 1.00 | $150.00 | No Charge |
| 2/21/2010 | AA9 | . . . | 1.00 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.
Page No.:   10

| Date | Initials | Description | Hours | Rate | Charge |
|---|---|---|---|---|---|
| 2/22/2010 | AA9 | Meeting - Supervision | 0.75 | $150.00 | No Charge |
| 2/22/2010 | AA9 | Telephone Call | 0.17 | $150.00 | No Charge |
| 2/22/2010 | AA9 | Meeting - Student Team  Met with team to discuss agenda for the week. | 0.50 | $150.00 | No Charge |
| 2/22/2010 | RWU | Meeting - Student Team, met with team to discuss weekly agenda, goals, and summary | 0.37 | $150.00 | No Charge |
| 2/22/2010 | RWU | Other: Prepared for Supervisory meeting by talking to other team members | 0.50 | $150.00 | No Charge |
| 2/22/2010 | RWU | Other: Called Bob Woods twice, looked over Alex and my own claim dissection documents | 2.25 | $150.00 | No Charge |
| 2/22/2010 | RWU | Meeting - Student Team, Met with Team to talk about possible diagnoses for ▮▮▮ | 1.75 | $150.00 | No Charge |
| 2/22/2010 | RWU | Meeting - Supervision: Weekly Supervisory Meeting | 0.75 | $150.00 | No Charge |
| 2/23/2010 | AA9 | Received, reviewed and noted changes/amendments within the new partial resolution agreement provided by Mr. Woods via e-mail | 0.67 | $150.00 | $100.50 |
| 2/23/2010 | AA9 | Conference with team and supervising attorney Leah Hill to discuss changes proposed in the new partial agreement from Mr. Woods and to draft a new partial agreement in response | 1.00 | $150.00 | $150.00 |
| 2/23/2010 | RWU | Correspondence: called bob woods, talked to professors | 1.00 | $150.00 | No Charge |
| 2/24/2010 | AA9 | Client Interview | 2.25 | $150.00 | $337.50 |
| 2/24/2010 | LAH | Meeting - In Office: Meeting with students to discuss strategies for client meeting | 0.17 | $400.00 | $68.00 |
| 2/24/2010 | RWU | Meeting - In Office: Met with Professor Hill to talk about client meeting | 0.17 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc

Page No.   11

| Date | | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 2/24/2010 | RWU | Meeting - Outside of Office  Met with client ████████ at her residence to review and discuss the partial agreement and obtain her signature. | 1.42 | $150.00 | $213.00 |
| 2/24/2010 | RWU | Other: Wrote up Client Meeting Summary.  See Chron Notes. | 0.42 | $150.00 | No Charge |
| 2/25/2010 | AA9 | Other  Type up post-supervision notes for 02.22.10.  Sent to team for review and awaiting to hear back from them. Will then send to professors. | 1.00 | $150.00 | No Charge |
| 2/26/2010 | AA9 | Worked on claims dissection. | 0.50 | $150.00 | No Charge |
| 2/26/2010 | AA9 | Other Went over agenda for March 1. | 0.50 | $150.00 | No Charge |
| 2/26/2010 | RWU | Meeting - Supervision: Wrote up Agenda for the week of 3/1/10 | 1.25 | $150.00 | No Charge |
| 2/27/2010 | RWU | Correspondence. Talked to Housing Clinic intern about ████████ housing issue and emailed team members with updates about the housing issue. | 1.25 | $150.00 | No Charge |
| 3/01/2010 | AA9 | Other Reviewed Kasr's report. | 0.58 | $150.00 | No Charge |
| 3/01/2010 | AA9 | Other  Worked on claim dissection. | 0.42 | $150.00 | No Charge |
| 3/01/2010 | AA9 | Other Researched case law. Shepardized Rowley and checked similar cases. | 0.50 | $150.00 | No Charge |
| 3/01/2010 | AA9 | Meeting - Supervision | 1.33 | $150.00 | No Charge |
| 3/01/2010 | AA9 | Legal research of case law, including the case of Rowley | 0.50 | $150.00 | $75.00 |
| 3/01/2010 | AA9 | Telephone Call to B. W.  regarding obtaining authorizations so independent evaluations can proceed. He will send forms to us. | 0.25 | $150.00 | No Charge |
| 3/01/2010 | AA9 | Claim dissection. | 1.33 | $150.00 | No Charge |
| 3/01/2010 | RWU | Meeting - Supervision  met with whole clinic to hear updates about each others' cases, team meeting afterwards to talk about how to proceed, and called Bob Woods to check on status of the | 2.27 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.
Page No.:   12

authorization forms.

| Date | ID | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 3/01/2010 | RWU | Document Editing: revised and edited last week's supervisory meeting summary that Alex wrote up | 0.75 | $150.00 | No Charge |
| 3/03/2010 | AA9 | Document Drafting/Phone Call: Contacted DOE and spoke to Victor Sawyer about missing 2007 IEP. He called me back and said they had various documents. Found old copy of release consent form signed by Mrs. ▓▓▓▓ originally sent to MS 247. I wrote a cover letter for this form asking the Department of Education to release all IEPs and evaluations. Faxed this form to the DOE. Looked over Rachel's consent agreement for IEE's and edited. | 3.00 | $150.00 | $450.00 |
| 3/03/2010 | RWU | Document Drafting: Wrote up the release form for providers and typed up the supervisory meeting summaries. | 2.17 | $150.00 | No Charge |
| 3/04/2010 | AA9 | Other  Wrote Supervision Agenda for 03.08.10 | 1.17 | $150.00 | No Charge |
| 3/04/2010 | AA9 | Telephone Call  Called V. Sawyer to see if the DOE received fax.  He said they did and they would have the papers by the end of the day. | 0.17 | $150.00 | $25.50 |
| 3/05/2010 | AA9 | Conducted analysis of ▓▓▓▓ IEPs | 0.50 | $150.00 | $75.00 |
| 3/05/2010 | AA9 | Research  Went over research Prof. Hill gave us.  Look over edits of agenda by team.  made a few more changes and posted. | 0.67 | $150.00 | No Charge |
| 3/05/2010 | RWU | Document Review: Amended claim dissection, reviewed weekly supervisory agenda, emailed Bob Woods about getting an e-copy of the authorization forms. | 3.32 | $150.00 | No Charge |
| 3/07/2010 | AA9 | Other  Began formulating questions I had about the IEP | 1.23 | $150.00 | No Charge |
| 3/08/2010 | AA9 | Document Review  After phone call from evaluation place, reviewed evaluation reports. | 3.50 | $150.00 | $525.00 |

Lincoln Square Legal Services, Inc
Page No .   13

| Date | Staff | Description | Hours | Rate | Amount |
|------|-------|-------------|-------|------|--------|
| 3/08/2010 | AA9 | Meeting - Student Team  Met with Kasr to discuss what we need to work on for the week. | 1.00 | $150.00 | No Charge |
| 3/08/2010 | AA9 | Meeting - Supervision  Met with FAC to discuss case. | 1.00 | $150.00 | No Charge |
| 3/08/2010 | AA9 | Received Assessment Authorization forms from Woods. Contacted independent providers about AA's | 2.50 | $150.00 | $375.00 |
| 3/09/2010 | AA9 | Telephone Conference  Called various providers to follow up with the faxes sent on Monday. | 0.25 | $150.00 | $37.50 |
| 3/10/2010 | AA9 | Reviewed the new IEP's and evaluations sent by the DOE | 1.25 | $150.00 | $187.50 |
| 3/10/2010 | AA9 | Telephone Call  Called ▓▓▓▓▓ to see her availability for the week. Discussed with team our plans for dividing up work for the break. Contacted the IEE's.  Set up an appointment for ▓▓▓▓ for the Medical Evaluation. | 1.00 | $150.00 | $150.00 |
| 3/10/2010 | RWU | Correspondence: Gave teammates updates during spring break and getting updates from them | 1.08 | $150.00 | No Charge |
| 3/10/2010 | RWU | Telephone Call: Conference call to client ▓▓▓▓▓ to discuss case status and upcoming developments | 0.30 | $150.00 | $45.00 |
| 3/10/2010 | RWU | Document Review: Reviewed ▓▓▓▓▓ 2007 IEP | 0.25 | $150.00 | No Charge |
| 3/10/2010 | RWU | Document Review: Organized the new documents we got with Alex and reviewed the 2008 IEPs | 1.67 | $150.00 | No Charge |
| 3/10/2010 | RWU | Document Review: Continued reviewing the 2008 IEP | 0.40 | $150.00 | No Charge |
| 3/12/2010 | AA9 | Other  Contacted one of the independent providers for the status of AA2 forms we sent her on Monday. This specific place is providing 3 evaluations and she had the info for 2 | 1.75 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.
Page No.:   14

| | | | | | |
|---|---|---|---|---|---|
| | | (psych/neurepsych), so I asked her to just send those over for now.  She said the audiological would be here soon.  Continued to work on Cruz's timeline.  Also, met with Kasi for roughly 30 mins to relay my information about what appointments I had made etc. and then she updated me about her conversation with Michelle and other things we would want to look into for the case. | | | |
| 3/12/2010 | AA9 | Telephone Call  Received call from Ms. Nancy Geller from the Center for Hearing and Communication.  Set up an appointment for 1:00 on Monday, March 29, 2010. | 0.12 | $150.00 | $18.00 |
| 3/12/2010 | RWU | Document Review: Read over the new IEPs that the DOE sent us during the week. | 2.17 | $150.00 | No Charge |
| 3/17/2010 | AA9 | Telephone Call Contacted Citicare office regarding the AA-2 Forms.  Spoke with Dr. Darku. | 0.17 | $150.00 | $25.50 |
| 3/17/2010 | RWU | Correspondence: Talked Housing Interns about ▮▮▮▮▮ Housing Issue | 0.67 | $150.00 | No Charge |
| 3/18/2010 | AA9 | Other  Re-faxed AA-2s to Dr. Darku.  Wrote up team agenda for 03.22.10. | 1.25 | $150.00 | No Charge |
| 3/19/2010 | RWU | Document Drafting: Wrote up Supervisory Agenda | 1.25 | $150.00 | No Charge |
| 3/22/2010 | AA9 | Claim Dissection | 1.00 | $150.00 | $150.00 |
| 3/22/2010 | AA9 | Meeting - Student Team  Met with team to discuss plans for the week.  Get AA-2s.  We contacted ▮▮▮▮▮ to meet with her for signatures | 0.67 | $150.00 | No Charge |
| 3/22/2010 | AA9 | Telephone Call | 0.67 | $150.00 | No Charge |
| 3/22/2010 | AA9 | Client Interview  Visited client's apartment to obtain signature on 2 of the AA-2 forms (these were the only 2 completed).  We also received additional papers she had (including a report card).  We also met with ▮▮▮▮▮ | 2.00 | $150.00 | $300.00 |

Lincoln Square Legal Services, Inc.
Page No.:   15

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  |  | asked him about school and explained to him who we were and that he would be going to evaluations soon. |  |  |  |
| 3/22/2010 | AA9 | Correspondence: E-mailed Mr. Woods with completed AA-2 forms. | 0.25 | $150.00 | $37.50 |
| 3/22/2010 | AA9 | Further reviewed the new IEP's and other evaluations by the DOE in order to add to claim dissection | 2.25 | $150.00 | $337.50 |
| 3/22/2010 | AA9 | Other: Contacted IEE's about forms. Worked on claim dissection. | 1.00 | $150.00 | No Charge |
| 3/22/2010 | AA9 | Meeting - Supervision: Met with FAC to talk about cases. | 1.33 | $150.00 | No Charge |
| 3/22/2010 | RWU | Document Drafting: Wrote up client meeting summary, looked at claim dissection | 2.00 | $150.00 | No Charge |
| 3/22/2010 | RWU | Meeting - Supervision: Supervisory Meeting, followed by team meeting and phone calls to providers | 2.00 | $150.00 | No Charge |
| 3/22/2010 | RWU | Correspondence: called ▮▮▮▮ to ask her if we could go to her apt today to have her sign forms, get the AA-2 forms from providers, preparing AA-2 forms, updated our claim dissection | 1.00 | $150.00 | $150.00 |
| 3/22/2010 | RWU | Meeting - Outside of Office: Went to visit ▮▮▮▮ at her apartment | 1.58 | $150.00 | No Charge |
| 3/23/2010 | AA9 | Finished claim dissection | 1.00 | $150.00 | $150.00 |
| 3/23/2010 | AA9 | Other: Spoke with Prof. Hill about claims. Contacted Bill Woods and received confirmation about the 2 providers. Tried contacting other providers as well -- looked on DOE website for list of people. Contacted ▮▮▮▮ for name of ▮▮▮▮ pediatrician. | 2.00 | $150.00 | No Charge |
| 3/23/2010 | RWU | Other: Looked up more providers for IEE's, called providers to get AA-2 forms, met with Professor Hill, called potential provider, faxed over blank form to potential provider, organized received | 2.37 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.
Page No.   16

AA-2 forms.

| 3/24/2010 | AA9 | Meeting - Outside of Office  Contacted providers regarding AA-2 forms.  Found alternate providers from the original ones we had and we reached out to them.  Prepared a schedule of appointments for ███████  Visited ███████ to get signatures for the 3 AA-2s.  Also, gave her the schedule of appointments.  E-mailed Mr. Woods with the new AA-2s for approval. | 3.25 | $150.00 | No Charge |
|---|---|---|---|---|---|
| 3/24/2010 | RWU | Other: Called Dr. Darku to get completed AA-2 form, followed up with Comprehensive Center for audiological evaluation, called another audiological center, emailed AA-2 form to that center, got the completed AA-2 forms back from second center, called Bill Woods, set up appointments for Enrique, went to ███████ apt to get her signature, called medical evaluator to get necessary information to complete AA-2 forms, emailed Bill Woods the completed forms. | 3.75 | $150.00 | No Charge |
| 3/25/2010 | AA9 | Other  Talked (e-mailed) with Kasi about changing the audiological appointments   Received approved AA-2 forms from Mr. Woods, e-mailed him back regarding the fact that the first set of forms he sent us were not marked approved or not.  He re-sent them. | 0.50 | $150.00 | $75.00 |
| 3/25/2010 | RWU | Correspondence: Talked to teammates about next week's agenda, appointments for ███████ and rescheduling some appointments. | 0.75 | $150.00 | No Charge |
| 3/26/2010 | AA9 | Telephone Call  Received call from ████ from Comprehensive about Psych eval.  Talked with Rachel about preparing package for Elain Geller, Audiological/Speech Language evaluation | 0.50 | $150.00 | $75.00 |
| 3/26/2010 | RWU | Correspondence: Talked to the speech evaluator and contacted teammates about putting together a background | 0.95 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc
Page No.    17

information packet for ███████

| Date | Init | Description | Hours | Rate | Charge |
|------|------|-------------|-------|------|--------|
| 3/27/2010 | AA9 | Meeting - Student Team  Talked with Rachel about Psychiatric evaluation and what should go in evaluator packet for Nancy Geller, Audiological/Speech Language Evaluation | 0.50 | $150.00 | No Charge |
| 3/27/2010 | RWU | Correspondence: Called other psychiatric evaluators to get appointments for ███████ | 0.58 | $150.00 | No Charge |
| 3/28/2010 | RWU | Correspondence: Emailed speech evaluator packet of ███████ background information and wrote up the supervisory meeting summary and goals for last week | 1.50 | $150.00 | No Charge |
| 3/29/2010 | AA9 | Meeting - Outside of Office  Prepared papers for Nancy Geller speech evaluator. | 0.50 | $150.00 | No Charge |
| 3/29/2010 | AA9 | Meeting - Outside of Office  Went to speech evaluation downtown.  Nancy Geller performed evaluation while we observed and then she gave us feedback. | 5.00 | $150.00 | No Charge |
| 3/29/2010 | RWU | Correspondence: Followed up with psychiatric evaluators to get an appointment for ███████, drafted release forms for evaluators, faxed over an AA-2 form for one of the evaluators, looked into getting transportation reimbursement for ███████ | 3.42 | $150.00 | No Charge |
| 3/30/2010 | AA9 | Telephone Call  Contacted NYU Child Study Center to provide case background and request psychiatric evaluation | 0.25 | $150.00 | $37.50 |
| 3/30/2010 | RWU | Correspondence: Called Rysch. evaluator to get AA-2 forms and her license, scanned in documents and uploaded to TM | 0.43 | $150.00 | No Charge |
| 3/30/2010 | RWU | Event  Went with ███████ to ███████ audiological evaluation and scanned in release form and audiological eval results. | 2.02 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.
Page No.:   18

| Date | | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 3/31/2010 | AA9 | Meeting - Supervision  Met with team and Prof Hill to discuss the case. | 1.00 | $150.00 | No Charge |
| 3/31/2010 | AA9 | Other  Prepared fax for Dr. Darku regarding information that may assist him in the medical eval. | 1.00 | $150.00 | $150.00 |
| 3/31/2010 | AA9 | Meeting - Student Team Met with Team to figure how we wanted to divide up the work for the month of April. Discussed the evaluations and how we wanted to proceed. | 1.00 | $150.00 | No Charge |
| 3/31/2010 | RWU | Meeting - Supervision: Met with Professor Hill for supervisory meeting, called Dr. Darku's office to tell him about ▇▇▇▇ ear condition, had a team meeting to talk about future steps, called and followed up with Maria and sent her a blank psych AA-2 form, set up a neuropsych eval | 3.42 | $150.00 | No Charge |
| 4/01/2010 | RWU | Correspondence: met with professor, called audiologist, faxed over AA-2 form for auditory processing eval to audiologist | 1.17 | $150.00 | No Charge |
| 4/02/2010 | AA9 | Other  Contacted Citicare regarding medical appointment for ▇▇▇▇ Wrote up week's agenda as well as schedule for the team for the remainder of the semester. | 1.50 | $150.00 | No Charge |
| 4/02/2010 | RWU | Correspondence: called ▇▇▇▇▇ to remind her about ▇▇▇▇ med eval, found that the doctor was late and ▇▇▇▇ was getting impatient, doctor's office requested approved AA-2 forms, which I emailed over, eventually told ▇▇▇▇ to leave, because she couldn't wait around anymore, she told me that she had scheduled an appointment with ▇▇▇▇ pediatrician, told her that we would send him the AA-2 forms to get the DOE to pay for the medical examination, called Alex to give her updates and discussed what to do next. | 1.08 | $150.00 | No Charge |
| 4/07/2010 | AA9 | Meeting - Supervision | 2.00 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.
Page No.:    19

| | | | | | |
|---|---|---|---|---|---|
| 4/07/2010 | RWU | Meeting - Supervision: Met with team to talk about this week's agenda and plans and worked on opening statement, had supervisory meeting, called ▮▮▮▮ to see if she had set up a medical evaluation for ▮▮▮▮ called medical clinic to see what time the appointment was, called ▮▮▮▮ to tell her about the app't time and remind her that ▮▮▮▮ had a neuropsych eval at 330 on Friday, contacted audiologist, emailed over AA-2 and AA-8 forms for audiologist to complete. | 3.75 | $150.00 | No Charge |
| 4/09/2010 | AA9 | Revised claims dissection with appropriate statutory case law. | 8.00 | $150.00 | No Charge |
| 4/09/2010 | RWU | Document Editing:Edited claim dissection and sent  to team | 7.42 | $150.00 | No Charge |
| 4/11/2010 | AA9 | Hearing Preparation - Draft and edited the opening statement | 3.00 | $150.00 | $450.00 |
| 4/11/2010 | RWU | Document Drafting: worked on opening statement with Alex. | 2.58 | $150.00 | No Charge |
| 4/12/2010 | AA9 | Document Editing  Edited first draft of Opening Statement | 1.00 | $150.00 | No Charge |
| 4/12/2010 | AA9 | Other  Wrote summary for 04.07.10 Supervision Meeting. | 1.00 | $150.00 | No Charge |
| 4/12/2010 | AA9 | Meeting - Student Team Met with team to discuss plans for the week. | 0.50 | $150.00 | No Charge |
| 4/12/2010 | AA9 | Meeting - Supervision FAC Group Supervision | 2.00 | $150.00 | No Charge |
| 4/12/2010 | AA9 | Meeting - Supervision Met with FAC, read opening statement and listened to feedback. | 1.75 | $150.00 | No Charge |
| 4/12/2010 | RWU | Meeting - Supervision: revised opening statement with Alex, had a team meeting, supervisory meeting with FAC, wrote up supervisory meeting 's summary and goals. | 4.08 | $150.00 | No Charge |
| 4/13/2010 | AA9 | Hearing Preparation - Conference with | 2.48 | $150.00 | $372.00 |

Lincoln Square Legal Services, Inc.
Page No.   20

| | | | | | |
|---|---|---|---|---|---|
| | | team to review and perfect opening statement | | | |
| 4/13/2010 | AA9 | Hearing Preparation - Prepared second draft of opening statement | 0.50 | $150.00 | $75.00 |
| 4/13/2010 | RWU | Document Drafting: Phone Conversation with Kasi and Alex, working on opening statement | 2.25 | $150.00 | No Charge |
| 4/14/2010 | AA9 | Edited second draft of opening statement. | 0.50 | $150.00 | No Charge |
| 4/14/2010 | AA9 | Hearing Preparation - Drafted claims chart for hearing | 1.25 | $150.00 | $187.50 |
| 4/14/2010 | RWU | Other: did some research into the development of an adequate IEP, spoke to teammates about revising the opening statement, talked about the validity of the claim of failure to implement IEP, talked about what documents we should submit. | 2.22 | $150.00 | No Charge |
| 4/16/2010 | RWU | Meeting - Outside of Office: I emailed some forms to the auditory evaluator b/c she filled them wrong, spoke to Kasi about the agenda for next week and what forms ████████ needed to fill out for the psych eval, went to the neuropsych eval center, spoke to receptionist and doctor, and rescheduled tentatively for next Friday, emailed team and professor, summarizing today's events. | 2.17 | $150.00 | No Charge |
| 4/18/2010 | AA9 | Hearing Preparation - Draft questions for witness and client ████████ | 0.50 | $150.00 | $75.00 |
| 4/19/2010 | AA9 | Prepared exhibits to send to the CSE for hearing. | 4.00 | $150.00 | $600.00 |
| 4/19/2010 | AA9 | Telephone Call: Contacted Nancy Geller about results of Speech evaluation. She said she would try to have them by the weekend. Also, e-mailed her the complete AA-2 forms. | 0.25 | $150.00 | $37.50 |
| 4/19/2010 | AA9 | Meeting - Student Team | 0.50 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.

Page No.   21

| | | | | | |
|---|---|---|---|---|---|
| 4/19/2010 | AA9 | Meeting - Supervision | 2.33 | $150.00 | No Charge |
| 4/19/2010 | AA9 | Telephone Call Contacted ▮▮▮ about coming into the office. | 0.25 | $150.00 | $37.50 |
| 4/19/2010 | RWU | Other: Team Meeting, Supervisory Meeting, Individual Meeting with Professor Hill, Called ▮▮▮ Called Nancy Geller, Team Meeting to discuss next steps, complied supporting documents with Alex to send to DOE | 6.67 | $150.00 | No Charge |
| 4/20/2010 | AA9 | Client Interview Prepared agenda for client interview. | 1.00 | $150.00 | No Charge |
| 4/21/2010 | AA9 | Meeting - In Office: meeting with client ▮▮▮ to review goals and prepare for client's testimony at hearing | 2.00 | $150.00 | $300.00 |
| 4/21/2010 | AA9 | Conference with team and supervising attorney Leah Hill to review strategy for client interview and agenda | 0.50 | $150.00 | $75.00 |
| 4/21/2010 | RWU | Meeting - In Office: After revising client meeting agenda, met with ▮▮▮ in office to discuss hearing and prepare her for direct and cross examination | 2.67 | $150.00 | $400.50 |
| 4/22/2010 | AA9 | Mailed a hard copy of documents to Bill Woods. Added speech evaluation summary. E-mailed a version of documents to Bill Woods. | 1.75 | $150.00 | $262.50 |
| 4/22/2010 | RWU | Telephone Call: Calling Spoke to Nancy Geller, Speech and Language Evaluator regarding her findings; Contacted Ms. Caldwell, school principle, to clarify service ▮▮▮ is currently receiving She confirmed counseling 2 times a week at school but no speech and language services at school | 0.42 | $150.00 | $63.00 |
| 4/23/2010 | AA9 | Received a phone call and e-mail from Woods requesting an adjournment. Spoke to Prof. Hill about this. Called Mr. Woods back and talked to ▮▮▮ ▮▮▮ about Private Schooling | 5.00 | $150.00 | $750.00 |
| 4/23/2010 | LAH | Meeting - In Office: Meeting with | 1.00 | $400.00 | $400.00 |

Lincoln Square Legal Services, Inc.

Page No : 22

students to discuss hearing strategies

| Date | Code | Description | Hours | Rate | Charge |
|------|------|-------------|-------|------|--------|
| 4/23/2010 | RWU | Other: Worked on opening statement, met with Professor Hill, contacted ███████ school, Called Bill Woods, called ██████ called neuropsych evaluator, wrote up part of the supervisory agenda. | 5.42 | $150.00 | No Charge |
| 4/24/2010 | AA9 | Reviewed all documents and began compiling report/summary of all the documents from the DOE, including results of independent evaluations and more. | 3.00 | $150.00 | $450.00 |
| 4/25/2010 | AA9 | Trial Prep - Continued to go through documents and compile analysis | 3.00 | $150.00 | $450.00 |
| 4/25/2010 | AA9 | Document Editing Edited the Opening statement | 1.00 | $150.00 | No Charge |
| 4/26/2010 | AA9 | Psychological Assessment Ordered car service for ██████ to the Neuropsych. Contacted ██████ to make sure ██████ and Pedro new the car was coming. Went to Dr. Hafeez's office. Answered a few questions about why ██████ was there. The actually appointment lasted approximately 2 hours. | 3.50 | $150.00 | No Charge |
| 4/26/2010 | AA9 | Meeting - Student Team Discussed how to proceed for the remainder of the semester - discussed getting in contact with independent providers for the remaining evaluations. | 1.00 | $150.00 | No Charge |
| 4/26/2010 | AA9 | Meeting - Supervision Met with FAC. | 1.50 | $150.00 | No Charge |
| 4/26/2010 | RWU | Meeting - Student Team. Called Alex to discuss whether we should adjourn the case or not. | 0.67 | $150.00 | No Charge |
| 4/26/2010 | RWU | Meeting - In Office; After revising client meeting agenda, met with client ██████ ██████ to discuss hearing and prepare her for direct and cross examination. | 2.67 | $150.00 | $400.50 |
| 4/27/2010 | RWU | Meeting - In Office: Met with Professor Hill to discuss adjournment. | 0.58 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.

Page No. :   23

| | | | | | |
|---|---|---|---|---|---|
| 4/28/2010 | LAH | Meeting - In Office: Meeting with students to discuss hearing strategies | 1.00 | $400.00 | $400.00 |
| 4/28/2010 | RWU | Other : talked with team about how to proceed next, complied and organized files for next semester | 3.17 | $150.00 | No Charge |
| 4/29/2010 | AA9 | Called Impartial Hearing Officer Ralph Pennington to make sure the hearing was adjourned. Wrote an e-mail to Laura Byrd from the Impartial Hearing Office and e-mailed Donna Coleman to set up a time for the new hearing date | 0.33 | $150.00 | $49.50 |
| 4/30/2010 | AA9 | Document Drafting: Worked on End of Semester Memo. | 2.00 | $150.00 | No Charge |
| 4/30/2010 | RWU | Correspondence: Called IHO and Alex about the adjournment | 1.00 | $150.00 | No Charge |
| 5/03/2010 | AA9 | Document Drafting: Worked on Memo and printing out chron notes and organizing files. | 5.00 | $150.00 | No Charge |
| 5/03/2010 | RWU | Document Drafting: Writing and correcting status memo and assembling files. | 3.33 | $150.00 | No Charge |
| 5/04/2010 | RWU | Document Drafting: tuning up memo on theory of the case and send it to teammates | 2.33 | $150.00 | No Charge |
| 5/12/2010 | RWU | Other: Met with Professor Hill, talked to Alex to see if there were any updates, made sure file was in order, called ENI to confirm appointment, called ▮▮▮▮ ▮▮▮▮ wrote ▮▮▮▮▮▮ a letter. | 1.58 | $150.00 | No Charge |
| 5/12/2010 | RWU | Document Drafting: wrote a memo on client interview on April 21, 2010 | 2.08 | $150.00 | No Charge |
| 5/13/2010 | RWU | Telephone Call: Called Michelle Crichlow to get Ms. C's new phone number and she gave me updates about the family, called ▮▮▮▮ to get updates and gives updates, and Kasi to get updates and give updates | 0.70 | $150.00 | No Charge |
| 5/14/2010 | AA9 | Other: Worked on Status Memo | 2.00 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.
Page No.:   24

| Date | Atty | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| | | Created a road map and added other necessary corrections. | | | |
| 5/14/2010 | RWU | Document Drafting: Amended status memo and wrote a memo on private schooling. | 5.00 | $150.00 | $750.00 |
| 5/15/2010 | AA9 | Other Worked on Status Memo. | 1.50 | $150.00 | No Charge |
| 5/19/2010 | AA9 | Other Worked on writing up documents inventory | 1.00 | $150.00 | No Charge |
| 5/20/2010 | AA9 | Meeting - Supervision Met with Professor Hill to discuss team's plans to proceed with the case/wrap up | 1.00 | $150.00 | No Charge |
| 5/20/2010 | AA9 | Correspondence Received fax from Aida. Spoke with Aida about some questions on the form. Completed document inventory. Confirmed psych appointment with NYU. Faxed over NYU papers. Spoke to ▆▆▆▆ about her appointment for Monday. I also asked her ▆▆▆▆ availability for next week. | 3.50 | $150.00 | No Charge |
| 5/20/2010 | AA9 | Other Worked on Documents Inventory | 2.50 | $150.00 | No Charge |
| 5/20/2010 | RWU | Other: Looked through time matters to make sure all documents can be opened and uploaded missing documents. | 0.58 | $150.00 | No Charge |
| 5/25/2010 | AA9 | Other Went over case and documents with Aaron. Contacted Bill Woods, Car Service, and ▆▆▆▆ | 3.08 | $150.00 | No Charge |
| 5/25/2010 | AA9 | Other Highlight some important section of NYCRR (200.1, 200.4, and 200.5) for Aaron. Sent fax/e-mail for CAP test. | 2.00 | $150.00 | No Charge |
| 6/09/2010 | LAH | Court Appearance - Adjournment of Impartial Hearing at DOE in Brooklyn, New York | 0.33 | $400.00 | $132.00 |
| 7/07/2010 | LAH | Client Meeting in office | 0.83 | $400.00 | $332.00 |
| 9/02/2010 | BDU | Document Review for ▆▆▆▆ | 1.50 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.
Page No :   25

| Date | Init | Description | Hours | Rate | Amount |
|------|------|-------------|-------|------|--------|
| 9/03/2010 | BDU | Document Review of ▓▓▓▓ Matter | 3.50 | $150.00 | No Charge |
| 9/03/2010 | SMI | Document Review for ▓▓▓▓ Case | 4.50 | $150.00 | No Charge |
| 9/03/2010 | SMI | Document review | 4.50 | $150.00 | $675.00 |
| 9/07/2010 | BDU | Document Drafting | 1.33 | $150.00 | No Charge |
| 9/07/2010 | KAC | Document Review | 1.50 | $150.00 | No Charge |
| 9/07/2010 | SMI | Document Review Group meeting to discuss current status of case and tasks for upcoming week | 1.25 | $150.00 | No Charge |
| 9/09/2010 | BDU | Went to ▓▓▓▓ apartment to obtain the IEP but she did not have it available.  Came back to the office and looked through ▓▓▓▓ most recent evaluations. | 3.50 | $150.00 | No Charge |
| 9/09/2010 | SMI | Legal Research - Researching of procedural guidelines for conducting a pre-hearing conference and standards of a "Free and Appropriate Public Education". | 2.00 | $150.00 | $300.00 |
| 9/10/2010 | BDU | Trial Preparation | 7.50 | $150.00 | No Charge |
| 9/10/2010 | SMI | Hearing Preparation - Scheduling ▓▓▓▓ CAP Test; Preparing documents to be sent to Bill Woods (DOE rep) in anticipation of upcoming hearing. | 7.50 | $150.00 | $1,125.00 |
| 9/11/2010 | SMI | Hearing Preparation - Preparing binder of documents to be used at hearing and to be sent to B. Woods and hearing officer. | 2.00 | $150.00 | $300.00 |
| 9/13/2010 | BDU | Trial Preparation | 4.50 | $150.00 | No Charge |
| 9/13/2010 | SMI | Trial Preparation - Meeting with clinic members to prepare for upcoming hearing, reviewing and sending documents to the Department of Education's representative and to the impartial hearing office | 4.00 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.
Page No.   26

| 9/14/2010 | SMI | Meeting with team to review tasks and research for hearing. | 2.50 | $150.00 | $375.00 |
|---|---|---|---|---|---|
| 9/15/2010 | SMI | Meeting - Supervision - Meeting with clinic members to discuss upcoming hearing; Team meeting to review tasks completed and still to be done. | 5.00 | $150.00 | No Charge |
| 9/16/2010 | BDU | Trial Preparation - Called the CSE to leave message for V. Sawyer, Speech and Language Evaluator, about ████████/August 2010 IEP, and met with team to plan pre-conference hearing. | 3.00 | $150.00 | $450.00 |
| 9/16/2010 | BDU | Trial Preparation - Met with team about pre-hearing conference and choice to file motion for summary judgment. Research SJ and impartial hearings. | 2.58 | $150.00 | $387.00 |
| 9/16/2010 | SMI | Research - Researching summary judgment and default legal standards in preparation to make respective arguments at upcoming hearing. | 2.00 | $150.00 | No Charge |
| 9/16/2010 | SMI | Research - Researching summary judgment and default legal standards in preparation to make respective arguments at upcoming hearing. | 1.50 | $150.00 | No Charge |
| 9/17/2010 | BDU | Trial Preparation | 8.25 | $150.00 | No Charge |
| 9/17/2010 | LAH | Meeting - In Office: Preparation for impartial hearing | 2.00 | $400.00 | $800.00 |
| 9/17/2010 | SMI | Call with representative from Department of Ed to discuss forthcoming hearing | 0.50 | $150.00 | $75.00 |
| 9/17/2010 | SMI | Mooting - Mooting arguments with team, draft potential direct and cross examination questions, and discussion of team roles in preparation for hearing | 6.00 | $150.00 | $900.00 |
| 9/18/2010 | SMI | Research - Researching summary judgment and default judgment legal standards in preparation to make respective arguments at upcoming hearing | 2.00 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.

Page No.   27

| Date | Initials | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 9/19/2010 | BDU | Prepared questions for direct/cross-examination for upcoming hearing on September 21st. Worked on other misc. trial preparation. | 5.83 | $150.00 | $874.50 |
| 9/19/2010 | SMI | Hearing Preparation - Meeting with team members to discuss and review arguments to be made at upcoming hearing; Researching summary judgment and default judgment legal standards in preparation to make respective arguments at upcoming hearing; Drafting potential direct and cross examination questions. | 8.50 | $150.00 | $1,275.00 |
| 9/20/2010 | BDU | Hearing Preparation - Met with partner Siobhan to discuss hearing strategy | 2.00 | $150.00 | $300.00 |
| 9/20/2010 | BDU | Telephone conference with Nick Chavarria (DOE) | 0.50 | $150.00 | $75.00 |
| 9/20/2010 | BDU | Edited direct/cross examination questions and closing statement. | 2.50 | $150.00 | $375.00 |
| 9/20/2010 | SMI | Document Drafting - Drafted a motion for summary judgment and default judgment to present at upcoming hearing. | 4.00 | $150.00 | $600.00 |
| 9/20/2010 | SMI | Trial Preparation ; Team meeting to prepare for upcoming hearing; Supervisory meeting with Professors Hill and Ho; Drafting a formal motion for summary judgment and default judgment. | 7.00 | $150.00 | No Charge |
| 9/21/2010 | BDU | Impartial Hearing | 4.25 | $150.00 | $637.50 |
| 9/21/2010 | LAH | Court Appearance - Impartial Hearing at DOE in Brooklyn, New York | 4.25 | $400.00 | $1,700.00 |
| 9/21/2010 | SMI | Hearing - Impartial hearing at the Department of Education | 4.25 | $150.00 | $637.50 |
| 9/22/2010 | BDU | Meeting - Supervision | 1.75 | $150.00 | No Charge |
| 9/22/2010 | SMI | Meeting - Supervision - Supervisory meeting with Professors Hill and Ho; Team meeting to discuss next steps after hearing | 3.00 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.
Page No.:   28

| Date | Atty | Description | Hours | Rate | Amount |
|------|------|-------------|-------|------|--------|
| 9/24/2010 | BDU | Administrative | 5.00 | $150.00 | No Charge |
| 9/27/2010 | BDU | Document Drafting- Drafted Supervisory Agenda; looked over ███████ latest IEP, prepared for supervisory meeting | 2.00 | $150.00 | No Charge |
| 9/27/2010 | BDU | Administrative- Supervision Meeting to discuss updates in the case | 2.00 | $150.00 | No Charge |
| 9/27/2010 | LAH | Meeting - Supervision: Review of August 2010 IEP | 1.00 | $400.00 | $400.00 |
| 9/27/2010 | SMI | Meeting - Supervision; Phone call with client to discuss current status of case; Individual meeting with Prof. Hill to discuss next steps; Reviewing DOE IEP Procedural manual to critique most recent IEP | 5.33 | $150.00 | No Charge |
| 9/28/2010 | BDU | Administrative- Looked over ███████ IEP and the state guidelines, met with team; discussed strategies for expediting the authorization for additional evaluation. | 2.50 | $150.00 | $375.00 |
| 9/28/2010 | SMI | Telephone Call with CSE representative Charlotte Darrow to discuss school visit; Meeting with team members; Phone call with ███████ to discuss school visit | 0.75 | $150.00 | No Charge |
| 9/29/2010 | BDU | Administrative- Preparation for supervisory meeting and met with team to discuss any updates regarding the authorization | 2.25 | $150.00 | No Charge |
| 9/29/2010 | BDU | Meeting-Supervision to discuss the case | 1.75 | $150.00 | No Charge |
| 9/29/2010 | SMI | Meeting - Student Team; Phone call with ACS and New Alternatives for Children; Updating chron notes with recent telephone calls; Supervisory meeting | 3.50 | $150.00 | No Charge |
| 9/30/2010 | BDU | Correspondence: Contacted Nick Chavarria, DOE rep., numerous times about expediting the authorization for the Central Auditory processing | 3.00 | $150.00 | $450.00 |

Lincoln Square Legal Services, Inc
Page No.:   29

| Date | | Description | | | |
|---|---|---|---|---|---|
| | | evaluation, received an email about ▓▓▓ difficulties at school, left a message with ▓▓▓ principal to discuss ▓▓▓ difficulties; spoke with social worker from ACS re: ▓▓▓ frustration at school and need to move quickly on getting proper placement. Drafted notes about these communications | | | |
| 9/30/2010 | SMI | Document Drafting response to DOE rep Nick Chavarria; Phone call to ACS regarding current status of case; Phone call to ▓▓▓ school regarding their communications with Nick Chavarria | 2.00 | $150.00 | $300.00 |
| 10/01/2010 | BDU | Fact Investigation- Reviewed ▓▓▓ IEP,  Spoke with Nick Chavarria (DOE rep) about evaluations | 6.00 | $150.00 | $900.00 |
| 10/01/2010 | SMI | Telephone Conference with team; Phone call with DOE rep Nick Chavarria regarding CAP exam authorizations; Phone call with provider re scheduling the CAP exam and authorization procedures; Researching DOE guidelines on billing procedures for independent evaluations | 7.25 | $150.00 | No Charge |
| 10/04/2010 | BDU | Document Drafting-Drafted letter to be sent to all parties, worked on supervisory meeting agenda; confirmed Aida's attendance at the 10.07 meeting | 3.00 | $150.00 | No Charge |
| 10/04/2010 | BDU | Meeting - Supervision-Discussed updates in the case and ideas/strategies moving forward; | 1.50 | $150.00 | No Charge |
| 10/04/2010 | SMI | Meeting - Supervision; Drafting and sending email to Department of Education Representative Nick Chavarria; Uploading case documents and chron notes to Time Matters. | 2.50 | $150.00 | No Charge |
| 10/05/2010 | SMI | Meeting - Student Team | 0.75 | $150.00 | No Charge |
| 10/05/2010 | SMI | Correspondence, drafting and editing letter to be sent to all parties involved | 1.00 | $150.00 | No Charge |
| 10/06/2010 | BDU | Meeting  Supervision- Discussed strategy in anticipation of client meeting | 1.00 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.
Page No.: 30

| 10/06/2010 | SMI | Meeting - Supervision; researching information on authorization forms, corresponding with client, social worker, and education advocate to confirm attendance at meeting next day | 3.00 | $150.00 | No Charge |
|---|---|---|---|---|---|
| 10/07/2010 | BDU | Prepared for client meeting | 1.50 | $150.00 | No Charge |
| 10/07/2010 | BDU | Client Interview to discuss IEPs and to discuss school placements | 1.00 | $150.00 | $150.00 |
| 10/07/2010 | BDU | Document Review-Met briefly with team and Prof. Hill after the client meeting to discuss options moving forward, worked on the letter to the parties | 1.50 | $150.00 | No Charge |
| 10/07/2010 | SMI | Meeting - In Office with client, client's son, son's social worker, and education advocate | 2.00 | $150.00 | $300.00 |
| 10/08/2010 | BDU | Finished the letter to the DOE, MS 247, CSE; received the AA forms from Nick Chavarria and faxed them to Susan Wartsman's (audiologist) office; called ████████ school and left a message for Ms. Fernandes | 5.00 | $150.00 | $750.00 |
| 10/12/2010 | BDU | Finished the letter and emailed it to the CSE, DOE and MS 247; called Madeline Fuentes and Aida Ortiz to schedule ████████ CAP exam for Friday, October 22nd at 10AM | 3.75 | $150.00 | No Charge |
| 10/12/2010 | SMI | Conference; Discussing with team recent phone calls with outside providers; preparing agenda for next day supervisory meeting | 1.00 | $150.00 | No Charge |
| 10/13/2010 | BDU | Conference- Left Aida a message confirming CAP exam appointment; Left a message with S. Wartsman; left a message with Claudia Fernandes. | 0.50 | $150.00 | No Charge |
| 10/13/2010 | SMI | Meeting - Supervision | 2.00 | $150.00 | No Charge |
| 10/14/2010 | BDU | Spoke with S. Wartsman, Began drafting an outline for Closing Brief | 3.25 | $150.00 | $487.50 |
| 10/15/2010 | BDU | Began first draft of the outline for the | 4.33 | $150.00 | $649.50 |

Lincoln Square Legal Services, Inc.

Page No :    31

post hearing, closing brief

| 10/15/2010 | SMI | Conference - Discussing draft outline of post hearing brief, closing with team | 1.00 | $150.00 | $150.00 |
|---|---|---|---|---|---|
| 10/17/2010 | SMI | Document Drafting - Drafting closing outline; discussing with team; drafting agenda for tomorrow's supervisory meeting | 4.00 | $150.00 | No Charge |
| 10/17/2010 | SMI | Conference - Review of draft and outline of post hearing brief, closing with team | 2.50 | $150.00 | $375.00 |
| 10/18/2010 | BDU | Document Drafting-Worked on outline for Closing Statement | 2.00 | $150.00 | No Charge |
| 10/18/2010 | BDU | Meeting - Supervision-Met with FAC to discuss cases | 1.50 | $150.00 | No Charge |
| 10/18/2010 | SMI | Meeting - Supervision, Meeting with team to discuss outline of draft closing statement. | 3.00 | $150.00 | No Charge |
| 10/19/2010 | BDU | Went to see ███████ to discuss the school visit and obtain her signature for the AA2 form; faxed the forms to Nick | 1.25 | $150.00 | No Charge |
| 10/20/2010 | BDU | Meeting - Supervision-Discussed options regarding private school and the closing statement with the group. | 1.33 | $150.00 | No Charge |
| 10/20/2010 | LAH | Meeting - Supervision Reviewing legal arguments for closing statement | 2.00 | $400.00 | $800.00 |
| 10/20/2010 | SMI | Meeting - Supervision; Researching legal arguments for closing statement. | 4.00 | $150.00 | No Charge |
| 10/21/2010 | BDU | Legal Research -  Research of case law to use in drafting of the post hearing, closing brief | 4.00 | $150.00 | $600.00 |
| 10/22/2010 | BDU | Document Drafting- Worked on Closing Statement; spoke with Dr. Wartsman about ███████ CAP exam | 3.50 | $150.00 | $525.00 |
| 10/24/2010 | SMI | Legal Research - Research of case law for post hearing brief, closing | 3.00 | $150.00 | $450.00 |
| 10/25/2010 | BDU | Meeting - Supervision | 1.17 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.
Page No.   32

| Date | Init | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 10/25/2010 | BDU | Document analysis of ███ evaluations and IEPs to use in drafting the closing statement | 2.00 | $150.00 | $300.00 |
| 10/25/2010 | SMI | Meeting - Supervision; meeting with teammate to discuss draft of closing statement. | 5.00 | $150.00 | No Charge |
| 10/26/2010 | BDU | Document Drafting-Closing Statement | 2.00 | $150.00 | No Charge |
| 10/26/2010 | SMI | Document Drafting - Review of ███ evaluations and IEPs for drafting of post hearing brief, closing statement | 2.00 | $150.00 | No Charge |
| 10/27/2010 | BDU | Meeting - Supervision- Met with team to discuss updates/dilemmas | 2.00 | $150.00 | No Charge |
| 10/27/2010 | SMI | Document Drafting of post hearing brief, closing statement | 2.00 | $150.00 | $300.00 |
| 10/27/2010 | SMI | Meeting - Supervision, document drafting closing statement. | 5.00 | $150.00 | No Charge |
| 10/28/2010 | BDU | Legal Research - Research of further case law to use in drafting of the post hearing, closing brief | 5.50 | $150.00 | $825.00 |
| 10/28/2010 | SMI | Meeting - Student Team editing and redrafting post hearing brief, closing statement | 4.00 | $150.00 | $600.00 |
| 10/29/2010 | SMI | Legal Research - Further research of case law for post hearing brief, closing statement | 4.00 | $150.00 | No Charge |
| 11/01/2010 | BDU | Meeting - Supervision- Met with team to discuss closing statement and SLCD | 2.00 | $150.00 | No Charge |
| 11/01/2010 | BDU | Document Editing - Use of case law, ███ IEPs and evaluations to edit first draft of post hearing, closing brief | 2.00 | $150.00 | No Charge |
| 11/01/2010 | SMI | Meeting - Supervision, document drafting closing statement | 4.00 | $150.00 | No Charge |
| 11/02/2010 | BDU | Further document analysis to add supporting evidence for the composition of second draft of post hearing, closing brief | 6.17 | $150.00 | $925.50 |

Lincoln Square Legal Services, Inc.
Page No.    33

| Date | Initials | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 11/02/2010 | SMI | Document Drafting | 1.92 | $150.00 | No Charge |
| 11/03/2010 | BDU | Document Drafting and Legal Research - Research of case memorandums and transcripts to assist in the further drafting of the post hearing, closing brief | 2.00 | $150.00 | No Charge |
| 11/03/2010 | BDU | Document Editing and Drafting - post hearing, closing brief | 3.75 | $150.00 | No Charge |
| 11/03/2010 | SMI | Meeting - Supervision | 2.00 | $150.00 | No Charge |
| 11/03/2010 | SMI | Document Drafting | 1.92 | $150.00 | No Charge |
| 11/03/2010 | SMI | Drafting and Editing - Closing Statement drafts edits and revisions | 7.00 | $150.00 | No Charge |
| 11/04/2010 | BDU | Document Drafting- Closing Statement | 7.00 | $150.00 | $1,050.00 |
| 11/04/2010 | BDU | Document Drafting- post hearing, closing brief | 2.50 | $150.00 | $375.00 |
| 11/04/2010 | SMI | Document Drafting - Input of further revisions for post hearing brief, closing following conference with team | 2.92 | $150.00 | $438.00 |
| 11/04/2010 | SMI | Document Drafting | 3.00 | $150.00 | No Charge |
| 11/04/2010 | SMI | Document Drafting of post hearing brief, closing | 4.00 | $150.00 | No Charge |
| 11/04/2010 | SMI | Meeting with team to review the draft post hearing brief, closing | 2.00 | $150.00 | $300.00 |
| 11/05/2010 | BDU | Document Editing- Final editing and drafting of the post hearing, closing brief | 8.00 | $150.00 | No Charge |
| 11/05/2010 | SMI | Document Drafting | 2.00 | $150.00 | No Charge |
| 11/05/2010 | SMI | Document Editing - Final editing of post hearing brief, closing and submission of closing statement to IHO | 9.00 | $150.00 | $1,350.00 |
| 11/08/2010 | BDU | Updates on case with FAC group. | 2.00 | $150.00 | No Charge |
| 11/08/2010 | SMI | Meeting - Student Team, Meeting - Supervision | 3.00 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.
Page No.: 34

| Date | Staff | Description | Hours | Rate | Charge |
|---|---|---|---|---|---|
| 11/10/2010 | BDU | Supervision hours and team meeting | 2.00 | $150.00 | No Charge |
| 11/12/2010 | BDU | Research appropriate private schools in the NYC area. | 2.75 | $150.00 | $412.50 |
| 11/15/2010 | BDU | Meeting - Supervision | 2.00 | $150.00 | No Charge |
| 11/15/2010 | SMI | Meeting - Supervision; meeting - student group | 2.00 | $150.00 | No Charge |
| 11/16/2010 | BDU | Research-Researched private schools as well as spoke with Nancy Geller about the CAP Exam | 1.83 | $150.00 | No Charge |
| 11/17/2010 | BDU | Telephone Conference-Spoke with Aida about ▮▮▮▮▮updates as well as scheduling a meeting with ACS for Friday, November 19th | 0.50 | $150.00 | No Charge |
| 11/17/2010 | SMI | Meeting - Supervision; meeting - student group to discuss end semester tasks | 3.00 | $150.00 | No Charge |
| 11/19/2010 | BDU | Researched private schools | 1.50 | $150.00 | No Charge |
| 11/22/2010 | BDU | Meeting - Supervision | 1.50 | $150.00 | No Charge |
| 11/22/2010 | SMI | Meeting - Student Team | 1.50 | $150.00 | No Charge |
| 11/22/2010 | SMI | Researching local CAP exam providers; looking for a provider who works with non-native English speaking children; drafting case transition memo. | 2.00 | $150.00 | No Charge |
| 11/24/2010 | BDU | Document Drafting-Case status memo | 3.42 | $150.00 | No Charge |
| 11/28/2010 | SMI | Administrative - Preparing case status memo | 4.00 | $150.00 | No Charge |
| 11/29/2010 | BDU | Meeting - Supervision | 1.58 | $150.00 | No Charge |
| 11/29/2010 | SMI | Meeting - Supervision; Researching and calling providers in NY in an attempt to find one to conduct a CAP exam on a non-native English speaker | 2.00 | $150.00 | No Charge |
| 11/30/2010 | SMI | Correspondence; Speaking with provider regarding CAP exam for ▮▮▮▮▮ Creating chron note re conversation | 0.50 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.

Page No     35

| | | | | | |
|---|---|---|---|---|---|
| 12/01/2010 | SMI | Meeting - Supervision; Preparing and faxing documents re ▮▮▮▮ to CAP exam provider | 2.00 | $150.00 | No Charge |
| 12/04/2010 | SMI | Correspondence - Phone call with Ms. ▮▮▮▮ Aida, and CHC about the SLCD tour and rescheduling the CAP exam | 0.75 | $150.00 | No Charge |
| 1/18/2011 | BDU | Administrative-TM training | 1.50 | $150.00 | No Charge |
| 1/18/2011 | BDU | Telephone Conference- Spoke with Elizabeth Byrwa about ▮▮▮▮ updates | 0.17 | $150.00 | No Charge |
| 1/18/2011 | BDU | Prepared the SLCD application | 1.50 | $150.00 | $225.00 |
| 1/19/2011 | BDU | Met with team to discuss next steps regarding ▮▮▮▮ matter and assemble the application. | 1.50 | $150.00 | No Charge |
| 1/19/2011 | BDU | Administrative-Clinic lunch | 0.50 | $150.00 | No Charge |
| 1/21/2011 | BDU | Preparing SLCD application material and mailing it out. | 1.25 | $150.00 | No Charge |
| 1/21/2011 | BDU | Telephone Call with Aida Ortiz | 0.25 | $150.00 | $37.50 |
| 1/21/2011 | BDU | Telephone Call with SLCD | 0.17 | $150.00 | No Charge |
| 1/24/2011 | BDU | Meeting - Student Team | 2.00 | $150.00 | No Charge |
| 1/24/2011 | BDU | Telephone Calls to Nick Chavarria, Ms ▮▮▮▮ and Aida Ortiz | 0.42 | $150.00 | No Charge |
| 1/24/2011 | BDU | Telephone Call from Aida Ortiz | 0.17 | $150.00 | No Charge |
| 1/25/2011 | BDU | Telephone Call with Elizabeth Byrwa | 0.17 | $150.00 | No Charge |
| 1/25/2011 | BDU | Document Drafting-Class 4 Assignment (Case Theory) | 1.33 | $150.00 | No Charge |
| 1/26/2011 | BDU | Telephone Call with Nick Chavarria | 0.17 | $150.00 | $25.50 |
| 1/26/2011 | BDU | Telephone Call with ▮▮▮▮ | 0.17 | $150.00 | No Charge |
| 1/27/2011 | BDU | Document Drafting (Agenda for team meeting) | 1.00 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.

Page No.     36

| 1/27/2011 | BDU | Research on speech/language and private tutors | 2.33 | $150.00 | No Charge |
| 1/28/2011 | BDU | Telephone Calls to Nick Chavarria, Maria Carrion, Aida Ortiz, Claudia Fernandes and Elizabeth Bwrya. Emails with updates to team. | 1.25 | $150.00 | No Charge |
| 1/31/2011 | BDU | Meeting - Supervision | 2.00 | $150.00 | No Charge |
| 1/31/2011 | BDU | Document Drafting-Post supervision agenda | 0.67 | $150.00 | No Charge |
| 2/01/2011 | BDU | Telephone Calls with ████████ and Aida Ortiz | 0.33 | $150.00 | $49.50 |
| 2/01/2011 | BDU | Meeting - Brief meeting with Morgan to update each on phone calls made and next steps | 0.42 | $150.00 | No Charge |
| 2/02/2011 | BDU | Document Drafting- Memo on deferral to CBST | 1.67 | $150.00 | No Charge |
| 2/02/2011 | BDU | Telephone Call from Arlene Pineda | 0.42 | $150.00 | $63.00 |
| 2/02/2011 | BDU | Meeting - Supervision | 1.00 | $150.00 | No Charge |
| 2/02/2011 | BDU | Meeting - Student Team | 0.50 | $150.00 | No Charge |
| 2/02/2011 | BDU | Document Review of Kathy's Agenda | 0.67 | $150.00 | No Charge |
| 2/03/2011 | BDU | Telephone Call from Elizabeth Byrwa | 0.17 | $150.00 | No Charge |
| 2/03/2011 | BDU | Telephone Call with Arlene Pineda (school psychologist) | 0.17 | $150.00 | $25.50 |
| 2/03/2011 | BDU | Telephone Call-Left message with Susan Wartsman | 0.08 | $150.00 | $12.00 |
| 2/04/2011 | BDU | Research on Attorney's Fees | 0.58 | $150.00 | $87.00 |
| 2/04/2011 | BDU | Document Editing- Client meeting agendas | 1.25 | $150.00 | No Charge |
| 2/07/2011 | BDU | Client meeting | 1.50 | $150.00 | $225.00 |
| 2/07/2011 | BDU | Meeting - Supervision | 1.50 | $150.00 | No Charge |
| 2/07/2011 | BDU | Document Drafting-Attorney Fee | 2.08 | $150.00 | $312.00 |

Case 1:12-cv-09281-CM   Document 1   Filed 12/20/12   Page 64 of 67

Lincoln Square Legal Services, Inc.
Page No.:    37

Request preparation

| Date | | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 2/08/2011 | BDU | Document Drafting-Attorney Fee request | 1.42 | $150.00 | $213.00 |
| 2/09/2011 | BDU | Document Drafting and research for attorney fee request | 2.17 | $150.00 | $325.50 |
| 2/11/2011 | BDU | Document Drafting-Compiling time records for Attorney Fee Request | 3.17 | $150.00 | $475.50 |
| 2/12/2011 | BDU | Document Drafting-Attorney fee request-inputting student's billing hours into chart | 3.08 | $150.00 | $462.00 |
| 2/14/2011 | BDU | Meeting - In Office Supervision | 1.25 | $150.00 | No Charge |
| 2/14/2011 | BDU | Document Drafting-Attorney fee request | 0.75 | $150.00 | $112.50 |
| 2/15/2011 | BDU | Document Drafting-Attorney fee request application | 1.67 | $150.00 | $250.50 |
| 2/16/2011 | BDU | Document Drafting-Attorney fee request | 2.00 | $150.00 | $300.00 |
| 2/16/2011 | BDU | Meeting - In Office with Morgan and Kathy | 0.50 | $150.00 | No Charge |
| 2/17/2011 | BDU | Telephone Call - Telephone Call with Arlene Pineda and Tanya Covington | 0.25 | $150.00 | $37.50 |
| 2/18/2011 | BDU | Document Drafting-Draft of letter to Elizabeth Byrwa | 1.25 | $150.00 | No Charge |
| 2/18/2011 | BDU | Document Drafting-Attorney Fee Request | 1.08 | $150.00 | $162.00 |
| 2/22/2011 | BDU | Document Drafting-Edits to letter for Elizabeth Byrwa | 0.92 | $150.00 | No Charge |
| 2/22/2011 | BDU | Document Drafting-Attorney Fee Request | 1.17 | $150.00 | $175.50 |
| 2/22/2011 | BDU | Telephone Call to ███████and Aida Ortiz | 0.17 | $150.00 | No Charge |
| 2/23/2011 | BDU | Document Editing-Letter to Elizabeth Byrwa | 0.58 | $150.00 | No Charge |

Lincoln Square Legal Services, Inc.
Page No.:   38

| | | | | | |
|---|---|---|---|---|---|
| 2/23/2011 | BDU | Research on Residential schools and CBST deferrals | 0.75 | $150.00 | No Charge |
| 2/24/2011 | BDU | Document Drafting-Final edits of letter to Elizabeth Byrwa | 0.50 | $150.00 | No Charge |
| 2/24/2011 | BDU | Document Drafting-Attorney Fee Request | 1.50 | $150.00 | $225.00 |
| 2/24/2011 | BDU | Research on Residential school requests in IEP meetings | 0.92 | $150.00 | No Charge |
| 2/25/2011 | BDU | Document Drafting-Fee request edits | 0.00 | $150.00 | $0.00 |
| 2/25/2011 | BDU | Research on IEP process and residential schools | 2.33 | $150.00 | $349.50 |
| 2/26/2011 | BDU | Document Drafting-Case theory assignment for class 8 | 1.50 | $150.00 | No Charge |
| 2/28/2011 | BDU | Research on residential schools by looking through SRO decisions | 1.30 | $150.00 | No Charge |
| 2/28/2011 | BDU | Telephone Call from Arlene Pineda | 0.08 | $150.00 | $12.00 |
| 2/28/2011 | BDU | Meeting - Supervision to discuss cases | 2.00 | $150.00 | No Charge |
| 3/01/2011 | BDU | Research on IEP development | 1.90 | $150.00 | No Charge |
| 3/02/2011 | BDU | Telephone Calls with ████ Aida and Arlene Pineda to schedule IEP meeting | 0.17 | $150.00 | $25.50 |
| 3/02/2011 | BDU | Research on ████ IEP, the IEP process in preparation for IEP meeting | 1.75 | $150.00 | No Charge |
| 3/03/2011 | BDU | Research for IEP Meeting | 1.33 | $150.00 | No Charge |
| 3/04/2011 | BDU | Review of ████ past evaluations and teacher reports. | 2.42 | $150.00 | No Charge |
| 3/04/2011 | BDU | Research in preparation for ████ IEP meeting | 1.67 | $150.00 | No Charge |
| 3/07/2011 | BDU | Preparation for IEP meeting | 1.00 | $150.00 | No Charge |
| 3/07/2011 | BDU | Meeting - Supervision | 1.08 | $150.00 | No Charge |
| 3/07/2011 | BDU | Document Drafting-List of findings, and | 2.25 | $150.00 | $337.50 |

Lincoln Square Legal Services, Inc
Page No     39

recommendations for ▮▮▮▮

| | | | | | |
|---|---|---|---|---|---|
| 3/09/2011 | BDU | Document Review of ▮▮▮ IEPs and evaluations | 1.08 | $150.00 | No Charge |
| 3/09/2011 | BDU | Document Review of ▮▮▮ IEPs and evaluations | 1.58 | $150.00 | No Charge |
| 3/09/2011 | BDU | Telephone Call from Elizabeth Byrwa | 0.25 | $150.00 | No Charge |
| 3/10/2011 | BDU | Document Review in preparation for IEP meeting | 1.83 | $150.00 | No Charge |
| 3/11/2011 | BDU | Conference-IEP Meeting at MS 247 | 2.75 | $150.00 | $412.50 |
| 3/11/2011 | BDU | Meeting - In Office with team to discuss IEP meeting | 0.50 | $150.00 | No Charge |
| 3/21/2011 | BDU | Meeting - Supervision | 1.33 | $150.00 | No Charge |
| 3/21/2011 | BDU | Telephone Call with Arlene Pineda | 0.08 | $150.00 | $12.00 |
| 3/23/2011 | BDU | Meeting - Student Team to discuss Carrion matter | 0.42 | $150.00 | No Charge |
| 3/24/2011 | BDU | Telephone Call with CBST | 0.17 | $150.00 | No Charge |
| 3/31/2011 | BDU | Phone calls to Aida Ortiz ▮▮▮ and Arlene Pineda | 0.25 | $150.00 | No Charge |

Total Hours:   978.30     Total Fees   $57,345.00

Total New Charges                                    $57,345.00

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* Michael A. Cardozo, Corp Counsel of NYC

was received by me on *(date)* 12/20/12

☐ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☒ I served the summons on *(name of individual)* Dmitriy Aronov _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* Corp Counsel of NYC, DOE

Attorney for Defendant, Dept of Education of NYC on *(date)* 12/20/12 _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ 0.00 for travel and $ 0.00 for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: 12/20/12

Eva Marie Franco
*Server's signature*

EvaMarie Franco, legal intern
*Printed name and title*


304 W 92nd St, NY, NY 10025; 33 W 60th St, NY, NY
*Server's address*                                        10023

Additional information regarding attempted service, etc:

# EXHIBIT M

**LINCOLN SQUARE LEGAL SERVICES, INC.**
**Fordham University School of Law**
**33 West 60th Street, Third Floor**
**New York, New York 10023**
**(212) 636-6934**

## AGREEMENT BETWEEN YOU AND LINCOLN SQUARE LEGAL SERVICES, INC.

This is an agreement between you, ███████████ and Lincoln Square Legal Services, Inc. Leah Hill, Esq., Stacy Sadove, Legal Intern, and Josh Gelb, Legal Intern, are entering this agreement with you on behalf of Lincoln Square Legal Services, Inc. Here are our agreements:

1. You agree to become our client in connection with the special education advocacy of your child, ███████████ We agree to represent you by investigating facts connected with this matter and researching and determining possible options to achieve the goal of appropriate educational placement.

2. You agree that law student interns will provide the legal services to you. We agree that the student's work will be supervised by a lawyer, who is also a law professor at Fordham University.

3. We agree that the law student interns working for you and their supervisor will obey all laws and rules that govern the work of attorneys, including the duty to protect your confidentiality and to zealously represent your position.

4. You are aware that social work students may, in the future, work with you to help you get the legal results you want. You have discussed this part of our agreement with a supervisor in this office. You understand that our policy has been that social workers in this office owe you the same level of confidentiality as is given to you by our lawyers. You also understand that we are looking at a new law to see if has changed this policy. We are studying whether social workers in this office may now be "mandated reporters" – meaning that they would have to report you to the State if they learn from you information that causes them to suspect that you are abusing or neglecting your child or children. If the new law means this, then you will not have as much confidentiality protection from our social workers as you have from our lawyers. Until we reach a final policy on the new law, we agree that if we sense any risk that your confidences might have to be revealed by a social worker in the office, we will immediately work with you to take steps to minimize the risk of a report having to be made.

5. We agree that the social work student interns, if any are assigned, will work under the supervision of a certified social worker, who is an employee of Lincoln Square Legal Services, Inc., and is also a member of the faculty of Fordham University.

6. You agree that the law and social work students interns can work together to achieve the legal results you want.

7. You agree that, in order to work together for you, student interns and their supervisors will act as your team and will discuss your case with one another. You agree that information you provide to one member of the team may be shared with other team members.

8. We agree to provide services at no charge to you. You agree that, if there is a way for us to get paid by other sources, we may pursue that payment. An example of this would be if your case is one in which attorneys' fees have to be paid by another party if you win your case. If that is true, we will pursue those fees as part of the settlement or litigation of your case.

9. There may be expenses that must be paid to others in order to handle your case properly. For example, there may be a filing fee if we need to file papers at the courthouse. For another example, a doctor or hospital might charge us for copies of medical records. You agree to be responsible for paying any such expenses. We agree to keep all costs and expenses to a minimum and to speak with you before incurring any costs that you will need to pay.

10. We all agree that this is the complete agreement between you and us regarding our relationship. We have set out the services we will provide. You agree that we will not be providing any other services to you unless you and we enter into a new agreement for those services. In your case, this means that we have agreed to investigate facts connected with this matter and research and determine possible options to achieve the goal of an appropriate educational placement for your child, ██████████ This agreement does not cover any other services, including an appeal in a case in which representation is provided at hearing or trial, unless a separate representation agreement is signed by the client and the lawyer.

Dated: November 9, 2009

Your Signature as Client

Signature

Title        Legal Intern   Stacy Sadove

Signature

Title        Legal Intern   Josh Gelb


FOR LINCOLN SQUARE LEGAL SERVICES, INC.

# EXHIBIT N

# LINCOLN SQUARE LEGAL SERVICES, INC.

**Executive Director**
Ian Weinstein

**Supervising Attorneys**
Cheryl G. Bader
James A. Cohen
Elizabeth B. Cooper
Romane L. Gardner
Mercer Givhan
Brian Glick
Leah A. Hill
Ron Lazebnik

**Supervising Attorneys**
Elizabeth A. Maresca
Michael W. Martin
Paul Radvany
Martha Rayner
Beth G. Schwartz
Marcella Silverman
Gemma Sohmene

**Supervising Social Workers**
Kathy Ho, M.S.W.
Lyn Kennedy Slater, C.S.W., Ph.D.

Committee on Special Education:
Chair: Marilyn Sprecher
388 W. 125th St.
New York, NY 10027
Phone: (212) 342-8300

Re: ████████
CSE Case #: 03-21841
Date of Birth: August 12, 2003
NYC ID: 275017994
Home District: 3
Service District: Region 3

Current Placement:                    Parent:
MS 247 Dual Language Middle School    ████████
32 W 92nd Street                      845 Columbus Avenue, Apt 8G
New York, NY 10025                    New York, NY 10025

Dear Ms. Sprecher:

    Lincoln Square Legal Services ("LSLS") represents ████████████ ("████████"),
on behalf of her son ████████ ("████████"), in her quest to ensure that ████████ receives a free
and appropriate public education ("FAPE") that he is entitled to under the Individuals with
Disabilities in Education Act (IDEA) and New York law.  Specifically, the CSE has:

    i.)    Failed to properly identify ████████ disability
    ii.)    Failed to properly classify ████ in 2007, 2008 and 2009
    iii.)    Failed to provide ████ with an adequate evaluation in developing his IEP in
             2007, 2008 and 2009
    iv.)    Failed to develop an adequate IEP for ████████
    v.)    Failed to provide ████ with a Free and Appropriate Public Education; and,
    vi.)    Failed to properly implement ████████ 2008 and 2009 IEP.

### Failure to Provide Free and Appropriate Public Education

As per 20 USC § 1401(9), a school is required to provide each student with a free and appropriate public education that is, (A) provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the state education agency, (C) include an appropriate preschool, elementary school, or secondary school education in the state involved; and, (D) are provided in conformity with the individualized education program required under §1414(d) of this title.

The Supreme Court in Board of Education v. Rowley (458 US 176 at 188-189) determined that a FAPE consists of "educational instruction specifically designed to meet the unique needs of the handicapped child supported by such services as necessary to permit the child to benefit from the instruction." Moreover, the Court in Rowley (458 US 176 at 206-207) also states that "a court's inquiry in suits brought under § 1415(e)(2) is twofold. First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" ███████ has not made any educational progress for close to three years particularly in reading where his scores have not improved and, in fact have regressed. Further, ███████ 2008 IEP indicated that he was to receive speech and language services 2X40X5 with an additional 1X40X1 to "address attention and auditory processing skills. Prior to the formation of his 2008 IEP, ███████ had been receiving speech and language therapy in a group 4 times per week. (2008 IEP page 3). On his 2008 IEP, he was only provided with speech and language services once per week (2008 IEP page 4). It is clear from all of his school records that ███████ has not made progress, and that he also has not been receiving the services mandated in his 2008 IEP. Furthermore, while ███████ has shown no signs of progress these services have not been increased in the 2009 IEP. Therefore, the Department of Education has failed in providing ███████ with a FAPE as ███████ has not been provided an adequate evaluation and has not had an individualized educational program reasonably calculated to confer educational benefit.

### Failure to Provide ███████ with an Adequate Evaluation and Identify His Disability

On September 25, 2009 ███████ was evaluated by Arlene Pinetta, school psychologist at MS 247. This evaluation was not sufficiently comprehensive to comport with N.Y. Comp. Codes. R. & Regs. tit. 8 § 200.4 (b)(4) requiring that "The reevaluation shall be conducted by a multidisciplinary team or group of persons, including at least one teacher or other specialist with knowledge in the area of the student's disability."

Furthermore, data available to the CSE indicated that further testing was necessary to properly identify ███████ needs. In his 2008 IEP, ███████ demonstrated reading comprehension skills within a third grade level. His fluency and word recognition were comparable to a third grade student, as well as his writing skills. Psychological testing conducted by Arlene Pinetta, on September 25, 2009 revealed that ███████ reading decoding skills placed him at 2.6 grade level and his reading comprehension also tested at a 2.6 grade level. These test scores indicate that not only has ███████ not made educational progress, but he has regressed.

Pursuant to N.Y. Comp. Codes. R. & Regs. tit. 8 § 200.4, the CSE and other qualified professionals should have reviewed their own evaluation data indicating that ██████ had persistent and severe comprehension and communication problems that had not been addressed for years. The CSE should have used this data to identify other possible evaluations that might have better identified his deficits and targeted specific services accordingly.

Finally, the evaluation conducted in 2009 was not sufficient to assess ██████ in all areas related to his suspected disability, including, where appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, vocational skills, communicative status and motor abilities, in compliance with N.Y. Comp. Codes. R. & Regs. tit. 8 § 200.4 (b)(6)(vii). Indeed in ██████ 2008 IEP report, the Department of Education recommended a Central Auditory Processing Disorder Evaluation. This recommendation was consistent with ██████ 2006 IEP which described him as having "reduced auditory memory processing skills". Further testing of these skills and ██████ disability in this area has yet to occur. Without additional evaluations, ██████ disability and classification remain in question.

### Failure to Properly Implement Enrique's IEP

Pursuant to N.Y. Comp. Codes. R. & Regs. tit. 8 § 200.4 (c)(4)(e)(2), A school district shall ensure that each student with a disability has an IEP in effect at the beginning of the school year. The Board of Education has not satisfied this requirement. ██████ most recent IEP was created on October 2, 2009. This IEP was created past the start of the school year. Further, to this date the IEP has not been properly implemented. ██████ is currently in a classroom staffing ratio of 20:1. His IEP created on 10/2/09 mandates for a classroom with a 12:1 staffing ratio. Not only has this year's IEP never been implemented, but his IEP program for 2008 that mandated a classroom staffing ratio of 13:1 was also never fulfilled. In fact, since being placed at MS 247 ██████ has never received the required staffing ratio provided by his IEP. Furthermore, in ██████ latest IEP a new staffing ratio of 12:1:1 was to occur by November 2, 2009. It is currently November 20, 2009 and the IEP has yet to be properly implemented. M.S. 247 does not have the ability to provide a 12:1 classroom setting.

As per N.Y. Comp. Codes. R. & Regs. tit. 8 § 200.4 (e)(4), while ██████ current placement is inadequate to fulfill his educational needs, by law he is entitled to remain in his current placement until an appropriate review based on an independent evaluation of ██████ educational needs occurs. Switching ██████ placement without a proper independent evaluation will only further delay ██████ educational progress, as it is still unclear as to what ██████ needs are.

Consequently we are requesting:

That the Department of Education grant ██████ the right to obtain a comprehensive independent evaluation of ██████ at public expense, pursuant to N.Y. Comp. Codes. R. & Regs. tit. 8 § 200.5 to be administered by a multidisciplinary team or group of persons that will include but is not limited to, a full psychiatric evaluation; neurological evaluation, physical examination; and an auditory-processing evaluation.

That ██████ be provided with information regarding where an independent educational evaluation may be obtained; and the school district's criteria applicable for

independent educational evaluations pursuant to N.Y. Comp. Codes. R. & Regs. tit. 8 § 200.4 (b)(4) and N.Y. Comp. Codes. R. & Regs. tit. 8 § 200.5(g)(1)

That ██████ current program and placement be reviewed, taking into account said independent evaluation

That ██████ be provided with additional educational services to make up for the time he was improperly classified, evaluated and placed. Such services shall include but not be limited to private tutoring and any other services that will compensate for the above mentioned failures.

That pursuant to N.Y. Comp. Codes. R. & Regs. tit. 8 § 200.4 (e)(4), ██████ remain in his current placement pending a new recommendation of the committee on special education, unless the board and parent otherwise agree.

That such other and further relief deemed necessary be granted.

## Conclusion

Therefore we respectfully request that that the relief herein requested be granted in its entirety. We look forward to hearing from you soon, and thank you in advance for your cooperation. Please feel free to contact us at 212-636-6934 with any questions.

Dated: November 20, 2009

LINCOLN SQUARE LEGAL SERVICES INC.
BY:

Stacy Sadove
Legal Intern
33 W. 60th Street, 3rd Fl
New York, NY 10023
212-636-6934

LINCOLN SQUARE LEGAL SERVICES INC.
BY:

Josh Gelb
Legal Intern
33 W. 60th Street, 3rd Fl
New York, NY 10023

LINCOLN SQUARE LEGAL SERVICES INC.
BY:

Leah Hill
Supervising Attorney
33 W. 60th Street, 3rd Fl
New York, NY 10023