UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

M.C., on behalf of E.C., a minor,  :

              Plaintiff,  :

         -against-  :  12 Civ. 9281 (CM) (AJP)

DEPARTMENT OF EDUCATION OF THE CITY  :  **REPORT AND RECOMMENDATION**
OF NEW YORK,

            Defendant.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Colleen McMahon, United States District Judge:**

Plaintiff M.C. brings this action under the fee shifting provisions of the Individuals

with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3) (Dkt. No. 1: Compl.), and moves

for summary judgment seeking attorneys' fees of $63,810. (Dkt. No. 15: Notice of Motion; Dkt. No.

29: Hill Supp. Aff. at 3.) The New York City Department of Education ("DOE") opposes the fee

application on the grounds that the hourly rate sought and number of hours expended by M.C.'s

attorneys are unreasonable. (Dkt. No. 23: DOE Opp. Br. at 3-26; Dkt. No. 33: DOE Sur-Reply Br.

at 2-6.)

For the reasons set forth below, M.C.'s motion should be <u>GRANTED</u> as modified

herein and M.C. should be awarded $43,993 in attorneys' fees.

**FACTS**

On November 20, 2009, M.C. filed a due process complaint with the DOE on behalf

of her minor son E.C. claiming that he was denied a free and appropriate public education ("FAPE")

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 6/4/13

**MEMO ENDORSED**

6/28/2013 Perceiving no merit whatsoever in the City's objections, the court adopts the learned Magistrate Judge's Report as its opinion. The motion is granted as modified and M.C. is awarded $43,993 in attorneys' fees. Enter judgment and close case. Colleen McMahon USDJ

2

as required by the IDEA. (Dkt. No. 1: Compl. Ex. A: 11/20/09 DOE Compl.; Dkt. No. 16: Hill Aff.

¶¶ 23-24; Dkt. Nos. 18 & 26: M.C. 56.1 Stmt. & DOE Resp. ¶ 5.) M.C. sought the following relief:

> [T]he parent seeks: an related services authorization ("RSA") to receive a minimum of one hundred and ninety-eight hours of compensatory education in the form of speech therapy to compensate for missed services; an RSA to receive three hundred and sixty hours of compensatory education in the form of reading and writing instruction; Committee on Special Education (CSE) to reconvene to draft an appropriate IEP with a deferral to Central Based Support Team (CBST) so that the student may be placed in a nonpublic school setting with transportation provided; and the parent seeks placement at the School for Langauge and Communication Development.

(Compl. Ex. B: 12/30/10 IHO Decision at 2; see also Hill Aff. ¶ 25; M.C. 56.1 Stmt. & DOE Resp.

¶¶ 7, 9.)

Administrative hearings were held on June 9 and September 21, 2010 before an

independent hearing officer ("IHO"). (Hill Aff. ¶¶ 26, 30, 33, 34, 36; M.C. 56.1 Stmt. & DOE Resp.

¶ 8; Hill Aff. Ex. O: 6/9/10 IHO Tr.; Hill Aff. Ex. Q: 9/21/10 IHO Tr.) Plaintiff presented

documentary and testimonial evidence at the IHO hearings, as well as written closing remarks.

(Compl. Ex. B: 12/30/10 IHO Decision at 2-3; Hill Aff. ¶¶ 29, 31, 33, 36, 39; M.C. 56.1 Stmt. &

DOE Resp. ¶ 9; Hill Aff. Ex. R: M.C. 11/5/10 IHO Closing Br.; Hill Aff. Ex. Q: 9/21/10 IHO Tr.)

The DOE presented no documentary or testimonial evidence and did not make written or oral

closing remarks. (Compl. Ex. B: 12/30/10 IHO Decision at 2-3; Hill Aff. ¶¶ 32, 40; Hill Aff. Ex.

Q: 9/21/10 IHO Tr.)

The IHO issued a decision on December 30, 2010 concluding that "a gross violation

of FAPE was committed by the [D]epartment" and ordered the following relief:

> The department is to provide the student, as compensatory education, with up to one hundred and ninety-eight hours of speech and language therapy and three hundred and sixty hours of private tutoring, to commence from the date of this decision until June 30, 2012. The private tutoring is to be provided at the department rate. Also, a duly constituted CSE team is to reconvene, within two-three weeks, to

develop an appropriate IEP. Said CSE team is to consider all evaluations and also consider a deferral to CBST for placement/program and/or the School for Language and Development as a proposed placement. If necessary, the department is to provide the parent with an RSA so that she may acquire the necessary additional services noted above.

(Compl. Ex. B: 12/30/10 IHO Decision at 4, 6.)

## M.C.'s Attorneys

Throughout the pendency of this matter, M.C. has been represented by Lincoln Square Legal Services ("LSLS"), a non-profit organization established to implement Fordham Law School's clinical program through which students provide legal representation under faculty supervision. (Dkt. No. 16: Hill Aff. ¶¶ 1, 3; Dkt. Nos. 18 & 26: M.C. 56.1 Stmt. & DOE Resp. ¶¶ 2-4.) M.C.'s representation has included a rotation of eight second and third year law students participating in Fordham's Family Advocacy Clinic ("FAC") under the supervision of Leah A. Hill, Esq., a Clinical Associate Professor and LSLS Supervising Attorney. (Hill Aff. ¶¶ 1, 3, 5, 8; Dkt. No. 29: Hill Supp. Aff. ¶ 2.)

### Supervising Attorney: Prof. Leah A. Hill, Esq.

Prof. Hill received her B.A. in 1982 and her J.D. in 1985. (Dkt. No. 16: Hill Aff. ¶ 12 & Ex. F: Hill Resume at 2.) She was admitted to practice in New York in 1987. (Hill Aff. ¶ 12.) From 1986 to 1995, Prof. Hill worked as a trial attorney at Legal Services for New York City and the Legal Aid Society focusing on trial-level family proceedings. (Hill Aff. ¶ 13 & Ex. F: Hill Resume at 2.) Prof. Hill became an Assistant Clinical Professor in the Family Defense Clinic at NYU Law School in 1995; in 1996, she began teaching as an Associate Clinical Professor at Fordham Law School, where she has been for the past seventeen years. (Hill Aff. ¶¶ 14-15 & Ex. F: Hill Resume at 1.) Prof. Hill "began to focus heavily on special education cases beginning in

2006, and those cases now make up the bulk of the FAC's interdisciplinary docket." (Hill Aff. ¶ 16.) Prof. Hill's clients have prevailed at every hearing to date. (Hill Aff. ¶ 16.)

Prof. Hill has lectured extensively on family law issues. (Hill Aff. Ex. F: Hill Resume at 4-8.) Prof. Hill asserts that her "experience is commensurate with a senior partner in private practice, with an hourly rate easily above the $400" rate sought here. (Hill Aff. ¶ 17.)

### Law Student Interns

Intern 1 (reflected in the billing records as "STS1") worked on M.C.'s case during the Fall 2009 semester of her third year of law school. (Dkt. No. 16: Hill Aff. ¶ 9; Dkt. No. 19: M.C. Br. at 6.) Intern 1 had no experience in education or family law, but had approximately seventeen months of unrelated legal experience including seven months as a judicial intern and ten months as a law clerk in the insurance sector. (M.C. Br. at 6; Hill Aff. Ex. A: Intern 1 Resume.)

Intern 2 (reflected in the billing records as "AA9") worked on M.C.'s case during the Spring 2010 semester of her second year of law school. (Hill Aff. ¶ 9; M.C. Br. at 6.) Intern 2 had no experience in education or family law, but had approximately three years of unrelated, non-legal work experience prior to matriculating at Fordham Law School. (M.C. Br. at 6; Hill Aff. Ex. B: Intern 2 Resume.)

Intern 3 (reflected in the billing records as "RWU") also worked on M.C.'s case during the Spring 2010 semester of her second year of law school. (Hill Aff. ¶ 9; M.C. Br. at 6.) Intern 3 had no experience in education or family law, but had worked as a summer associate at a law firm in an unrelated practice for approximately four months. (M.C. Br. at 7; Hill Aff. Ex. C: Intern 3 Resume.)

Intern 4 (reflected in the billing records as "SMI") worked on M.C.'s case during the Fall 2010 semester of her second year of law school. (Hill Aff. ¶ 9; M.C. Br. at 7.) Intern 4 had no

experience in education or family law, but had approximately three months of experience each as a research assistant and judicial intern in unrelated practice areas. (M.C. Br. at 7; Hill Aff. Ex. D: Intern 4 Resume.) Additionally, prior to and during law school, Intern 4 worked as a paralegal for approximately three years. (M.C. Br. at 7; Hill Aff. Ex. D: Intern 4 Resume.)

Intern 5 (reflected in the billing records as "BDU") worked on M.C.'s case during the Fall 2010 and Spring 2011 semesters of his third year of law school. (Hill Aff. ¶ 9; M.C. Br. at 8.) Intern 5 had no experience in education or family law, but had approximately fourteen months of experience as an intern and fellow in unrelated areas. (M.C. Br. at 8; Hill Aff. Ex. E: Intern 5 Resume.)

Intern 6 (reflected in the billing records as "JMO1") worked on M.C.'s case during the Fall 2012 semester of her third year of law school. (Dkt. No. 29: Hill Supp. Aff. ¶ 3; Dkt. No. 30: M.C. Reply Br. at 3.) Intern 6 had no experience in education or family law, but had approximately twenty-eight months of unrelated, non-legal work experience prior to law school, and some legal experience as an intern and analyst for an unspecified period of time during law school. (M.C. Reply Br. at 3 & Ex. A: Intern 6 Resume.)

Intern 7 (reflected in the billing records as "EFR") worked on M.C.'s case during the Fall 2012 and Spring 2013 semesters of her third year of law school. (Hill Supp. Aff. ¶ 3; M.C. Reply Br. at 3.) Intern 7 had no experience in education law, but had approximately four years of family law experience as a legal intern. (M.C. Reply Br. at 3-4 & Ex. B: Intern 7 Resume.)

Intern 8 (reflected in the billing records as "HCR") worked on M.C.'s case during the Spring 2013 semester of her third year of law school. (Hill Supp. Aff. ¶ 3; M.C. Reply Br. at 4.) Intern 8 had no experience in education law, but had approximately sixteen months of experience as an intern on the Second Circuit, at the United States Attorney's Office and at a law firm where

her work involved family law matters. (M.C. Reply Br. at 4 & Ex. C: Intern 8 Resume.) Additionally, prior to law school, Intern 8 worked as a paralegal for approximately three years. (M.C. Reply Br. at 4 & Ex. C: Intern 8 Resume.)

## M.C.'s Attorneys' Fees And Billing Records

M.C.'s attorneys' billing submission reflects 978.3 hours expended between October 7, 2009 and March 31, 2011 in connection with the underlying DOE proceedings. (Dkt. No. 1: Compl. Ex. C: Billing Records.) Of the 978.3 hours, 14.41 are attributable to Prof. Hill. (Compl. Ex. C: Billing Records at 3, 4, 21, 23, 24, 26, 27, 28, 31.) M.C. requests compensation for 13.41 of Prof. Hill's 14.41 hours. (Dkt. No. 16: Hill Aff. at 14 n.2; Compl. Ex. C: Billing Records at 4.) M.C. originally sought compensation for 343.87 of the 963.89 hours attributable to the law student interns. (See Compl. Ex. C: Billing Records at 39.)[1] M.C.'s reply papers withdrew requests for 19.33 hours that the DOE challenged in its opposition papers, leaving 324.54 law student intern hours requested. (Dkt. No. 32: Hill Reply Aff. ¶¶ 14-15; Compl. Ex. C: Billing Records at 26-27.)

M.C.'s attorneys' supplemental billing submission reflects 182.59 hours expended between September 10, 2012 and May 15, 2013 in connection with this federal action (i.e., this fee petition), none of which are attributable to Prof. Hill. (Dkt. No. 30: M.C. Reply Br. Ex. D: Supp. Billing Records.) M.C. seeks compensation for 65.1 of the 182.59 hours attributable to the law student interns. (See M.C. Reply Br. Ex. D: Supp. Billing Records at 22.)[2]

---

[1]   After subtracting $5,764 from the original $57,345 total to account for the 14.41 hours billed at Prof. Hill's requested $400 hourly rate, the total requested amount for law student intern time is $51,581. That amount, divided by the requested $150 hourly rate for the law student interns, yields 343.87 hours for which M.C. actually seeks compensation.

[2]   The total requested amount of $9,765, divided by the requested $150 hourly rate for the law student interns, yields 65.1 hours for which M.C. actually seeks compensation.

Accordingly, on this summary judgment motion, M.C. seeks an award of attorneys' fees for a total of 403.05 hours expended between October 2009 and May 2013, of which 13.41 are attributable to the supervising attorney and 389.64 are attributable to the law student interns. Based on M.C.'s requested hourly rates of $400 for Prof. Hill and $150 for the law student interns, M.C. seeks a total of $63,810 in attorneys' fees for the underlying action and this federal action. (See Dkt. No. 29: Hill Supp. Aff. at 3; Compl. Ex. C: Billing Records; M.C. Reply Br. Ex. D: Supp. Billing Records.) The DOE argues that M.C. only is entitled to $10,385.25 in attorneys' fees, after reducing the requested rates, striking certain billing entries, and applying a seventy-five percent overall reduction. (Dkt. No. 23: DOE Opp. Br. at 1-2; Dkt. No. 33: DOE Sur-Reply Br. at 2.)

## ANALYSIS

### I.    LEGAL STANDARDS

#### A.    Attorneys' Fees Under The IDEA

The IDEA provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I).[3/]

Typically, "[w]hen considering a claim for attorneys' fees made under a fee-shifting statute such as the IDEA, the court must undertake a two-pronged inquiry asking first whether the party seeking the award is a 'prevailing party.'" E.S. v. Katonah-Lewisboro Sch. Dist., 796 F. Supp. 2d at 427; accord, e.g., Mr. L. v. Sloan, 449 F.3d 405, 407 (2d Cir. 2006); K.F. v. N.Y.C. Dep't of

---

[3/]    See, e.g., A.R. v. N.Y.C. Dep't of Educ., 407 F.3d 65, 72 (2d Cir. 2005); K.F. v. N.Y.C. Dep't of Educ., 10 Civ. 5465, 2011 WL 3586142 at *1 (S.D.N.Y. Aug. 10, 2011); E.S. v. Katonah-Lewisboro Sch. Dist., 796 F. Supp. 2d 421, 427 (S.D.N.Y. 2011), aff'd, 487 F. App'x 619 (2d Cir. 2012); Mrs. M. v. Tri-Valley Cent. Sch. Dist., 363 F. Supp. 2d 566, 568 (S.D.N.Y. 2002) (McMahon, D.J.).

Educ., 2011 WL 3586142 at *1. The DOE concedes that M.C. is a prevailing party entitled to attorneys' fees under the IDEA fee shifting provisions. (Dkt. No. 23: DOE Opp. Br.)[4] See, e.g., J.S. v. Carmel Cent. Sch. Dist., 501 F. App'x 95, 97 (2d Cir. 2012); A.R. v. N.Y.C. Dep't of Educ., 407 F.3d at 75 (A "plaintiff who receives IHO-ordered relief on the merits in an IDEA administrative proceeding is a 'prevailing party.' He or she may therefore be entitled to payment of attorneys' fees under the IDEA's fee-shifting provisions."); Engwiller v. Pine Plains Cent. Sch. Dist., 110 F. Supp. 2d 236, 251 (S.D.N.Y. 2000) (McMahon, D.J.).[5]

### B.    Calculating Reasonable Attorneys' Fees

The Second Circuit's general principles for calculating fee awards "apply to attorney's fee applications under the IDEA." K.F. v. N.Y.C. Dep't of Educ., 10 Civ. 5465, 2011 WL 3586142 at *2 (S.D.N.Y. Aug. 10, 2011) (citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 190 (2d Cir. 2008)); see, e.g., A.R. v. N.Y.C. Dep't of Educ., 407 F.3d 65, 75 (2d Cir. 2005) ("[W]e 'interpret the IDEA fee provisions in consonance with those of other civil rights fee-shifting statutes.'"); E.S. v. Katonah-Lewisboro Sch. Dist., 796 F. Supp. 2d 421, 428-29 (S.D.N.Y. 2011), aff'd, 487 F. App'x 619 (2d Cir. 2012).

Traditionally, "[i]n determining a fee award, the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007) (citing Hensley v.

---

[4]    The DOE's challenge to the time spent on requested relief that the DOE argues was not granted, is discussed in the context of the fee calculation. (See Point II.B below.)

[5]    See also, e.g., E.S. v. Katonah-Lewisboro Sch. Dist., 796 F. Supp. 2d at 427 ("'[T]he prevailing party standard has been interpreted generously by the Supreme Court and the Second Circuit in terms of the degree of relief required'" in IDEA cases.); Mrs. M. v. Tri-Valley Cent. Sch. Dist., 363 F. Supp. 2d at 569 ("It is a generous formulation—even a nominal victory confers 'prevailing party' status" in IDEA cases.).

Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983)); see also, e.g., J.S. v. Carmel Cent. Sch. Dist., 501 F. App'x 95, 99 (2d Cir. 2012); A.R. v. N.Y.C. Dep't of Educ., 407 F.3d at 79.[6] Particularly in awarding statutory attorneys' fees, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward . . . ." Hensley v. Eckerhart, 461 U.S. at 434, 103 S. Ct. at 1940; see also, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d at 186 ("[T]he lodestar method involved two steps: (1) the lodestar calculation; and (2) adjustment of the lodestar based on case-specific considerations."); Stengel v. Black, 10 Civ. 8661, 2012 WL 4794583 at *4 (S.D.N.Y. Sept. 20, 2012) (McMahon, D.J. & Pitman, M.J.). As the Second Circuit recently explained: "We begin by noting the Supreme Court's recent instruction that '[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.' . . . Trial courts evaluating fee requests 'need not, and indeed should not, become green-eyeshade accountants.'" Torres v. Gristede's Operating Corp., No. 12-3336-cv, --- F. App'x ----, 2013 WL 2257859 at *1-2 (2d Cir. May 22, 2013) (quoting Fox v. Vice, 131 S. Ct. 2205, 2216 (2011)).

Counsel for M.C. provided the Court with contemporaneous time records that specify the date, who performed the work, the time expended, and a description of the service provided. (Dkt. No. 1: Compl. Ex. C: Billing Records; Dkt. No. 30: M.C. Reply Br. Ex. D: Supp. Billing Records.) Counsel for M.C. also provided resumes and attorney affidavits stating each individual's

---

[6]   The Second Circuit requires contemporaneous time records as a prerequisite for awarding attorneys' fees. E.g., N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).

10

hourly rate, position, and credentials. (Dkt. No. 16: Hill Aff. & Exs. A-F: Resumes; Dkt. No. 29: Hill Supp. Aff.; M.C. Reply Br. Exs. A-C: Resumes.)

## II.      APPLICATION TO M.C.'S REQUEST FOR ATTORNEYS' FEES

### A.      Hourly Rates

Under the IDEA, a reasonable hourly rate must "be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C).[2] "The Court should endeavor to determine 'the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" K.F. v. N.Y.C. Dep't of Educ., 2011 WL 3586142 at *3; accord 20 U.S.C. § 1415(i)(3)(F)(ii); see also, e.g., J.S. v. Carmel Cent. Sch. Dist., 501 F. App'x 95, 99 (2d Cir. 2012); Pyatt v. Raymond, 10 Civ. 8764, 2012 WL 1668248 at *6 (S.D.N.Y. May 10, 2012) (McMahon, D.J.) ("When fixing a reasonable amount for attorneys' fees, courts should consider 'what a reasonable, paying client would be willing to pay,' and apply the prevailing market rates for attorneys of similar expertise providing comparable services. . . . In performing this analysis, courts look to current market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" (citation omitted)).

M.C. argues that Prof. Hill and the interns should be compensated at hourly rates of $400 and $150 respectively. (Dkt. No. 19: M.C. Br. at 12-18.) The DOE argues that the requested

---

[2]    See also, e.g., A.R. v. N.Y.C. Dep't of Educ., 407 F.3d 65, 72 (2d Cir. 2005); K.F. v. N.Y.C. Dep't of Educ., 10 Civ. 5465, 2011 WL 3586142 at *1, *3 (S.D.N.Y. Aug. 10, 2011); E.S. v. Katonah-Lewisboro Sch. Dist., 796 F. Supp. 2d 421, 428 (S.D.N.Y. 2011), aff'd, 487 F. App'x 619 (2d Cir. 2012); B.W. v. N.Y.C. Dep't of Educ., 716 F. Supp. 2d 336, 346 n.4 (S.D.N.Y. 2010).

rates are unreasonable and should be reduced to $350 and $100 respectively. (Dkt. No. 23: DOE Opp. Br. at 2, 20-25.)

## 1. LSLS Supervising Attorney: Professor Leah A. Hill, Esq.

Prof. Hill has focused on family law since the outset of her career approximately twenty-five years ago, including as a legal services attorney, family law clinical professor and supervising attorney, and lecturer on family law issues. (See pages 3-4 above.) In 2006, Prof. Hill began focusing specifically on special education cases, which now comprise the majority of LSLS's caseload. (See pages 3-4 above.) Under Prof. Hill's supervision, LSLS has prevailed at every hearing since 2006. (See page 4 above.)

In light of Prof. Hill's credentials, the Court finds that $375 per hour is the prevailing market rate for attorneys with comparable experience. See, e.g., A.R. v. N.Y.C. Dep't of Educ., 407 F.3d 65, 82-83 & n.18 (2d Cir. 2005); K.F. v. N.Y.C. Dep't of Educ., 10 Civ. 5465, 2011 WL 3586142 at *3, *6 (S.D.N.Y. Aug. 10, 2011) ("The attorneys in this case are experienced in administrative hearings of this type. . . . Utilizing the above case-specific factors and considering the record as a whole, this Court approximates the market rate prevailing in this District for similar services by lawyers of reasonably comparable skill, experience and reputation as $375 per hour."); E.S. v. Katonah-Lewisboro Sch. Dist., 796 F. Supp. 2d 421, 430 (S.D.N.Y. 2011) ("In a recent IDEA case, lead counsel from a non-profit advocacy group was awarded $375 for her work in a suit challenging the education provided to a single student. Lead counsel was an attorney with over twenty-five years of experience and had been working with the non-profit group for over ten years." (citation omitted)), aff'd, 487 F. App'x 619 (2d Cir. 2012); B.W. v. N.Y.C. Dep't of Educ., 716 F. Supp. 2d 336, 342 (S.D.N.Y. 2010) (IDEA attorney practicing since 1973 and volunteering with a non-profit since 2000 was entitled to $375 rate charged by the non-profit for attorneys "practicing

for more than fifteen years"); LV v. N.Y.C. Dep't of Educ., 700 F. Supp. 2d 510, 521 (S.D.N.Y.

2010) ($375 rate was reasonable for attorney at non-profit practicing since 1991 with "substantial

experience" who "oversaw strategy" and made "significant contributions" to the case).[8]

       The DOE's argument that Prof. Hill's rate should be reduced due to "the non-

monetary benefits Ms. Hill received from litigating plaintiff's case (i.e., her students' educational

benefit)" (Dkt. No. 23: DOE Opp. Br. at 23) is meritless. As Judge Lynch has stated, it is well

established that "nonprofit civil rights attorneys are entitled to fees that are comparable to those

awarded to private attorneys with fee-paying clients." Moon v. Gab Kwon, 2002 WL 31512816 at

*2.[9] The Court similarly rejects the DOE's argument that Prof. Hill's rate should be lower "given

her relatively minimal experience in this area of the law," namely, that she "handled her first special

---

[8]   See also, e.g., Kadden v. VisuaLex, LLC, 11 Civ. 4892, 2012 WL 6097656 at *2 (S.D.N.Y. Dec. 6, 2012) (holding "an hourly fee of $375 is reasonable" for "a well-respected solo practitioner with approximately twenty-five years of legal experience"); G.B. v. Tuxedo Union Free Sch. Dist., 894 F. Supp. 2d 415, 422-23, 430, 435 (S.D.N.Y. 2012) (finding $450 was reasonable rate for founding partner of civil rights litigation firm who practiced for over thirty years, and $300 was reasonable rate for attorney admitted in 1996 who worked at a family law non-profit since 2001 but had only focused on IDEA cases for three years, noting "courts in the Southern District of New York have recently found that the most experienced attorneys are entitled to between $350 and $375 per hour for single plaintiff IDEA cases" (collecting cases)); Moon v. Gab Kwon, 99 Civ. 11810, 2002 WL 31512816 at *2 (S.D.N.Y. Nov. 8, 2002) (Lynch, D.J.) ("Courts in this district have often awarded as much as $390 per hour to civil rights attorneys with three decades of legal and supervisory experience.").

[9]   Accord, e.g., Blanchard v. Bergeron, 489 U.S. 87, 95, 109 S. Ct. 939, 945 (1989) ("That a nonprofit legal services organization may contractually have agreed not to charge any fee of a civil rights plaintiff does not preclude the award of a reasonable fee to a prevailing party . . . calculated in the usual way."); Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 184 n.2 (2d Cir. 2008) ("The reasonableness of the fee award does not depend on whether the attorney works at a private law firm or a public interest organization . . . ."); A.R. v. N.Y.C. Dep't of Educ., 407 F.3d at 70, 82-83 (affirming district court's award of $350 and $375 hourly rates to attorneys from "a not-for-profit legal services organization that specialized in, inter alia, education law"); G.B. v. Tuxedo Union Free Sch. Dist., 894 F. Supp. 2d at 435; Heng Chan v. Sung Yue Tung Corp., 03 Civ. 6048, 2007 WL 1373118 at *3 (S.D.N.Y. May 8, 2007) (Lynch, D.J.).

13

education case in 2006." (DOE Opp. Br. at 22.) Prof. Hill began her career in 1986 and to paraphrase the Second Circuit in a similar case, is "the beneficiar[y] of many years of experience . . . in areas outside the IDEA. Furthermore, [her] prior experience, while not focused exclusively on the IDEA, was in related areas of law: [Prof. Hill] has spent much of [her] career at legal services organizations (Legal Aid Society of New York City; . . . Legal Services [for New York City]), representing clients in administrative hearings and litigation related thereto . . . for [nine] years prior to joining" LSLS. See A.R. v. N.Y.C. Dep't of Educ., 407 F.3d at 82 n.18. (See also page 3 above; Dkt. No. 16: Hill Aff. ¶ 13.)

Finally, the Court is unpersuaded by plaintiff's attempt to establish a higher hourly rate by submitting other attorneys' affidavits prepared in connection with other, distinguishable cases. (Hill Aff. Exs. G-K.)[10] See, e.g., G.B. v. Tuxedo Union Free Sch. Dist., 894 F. Supp. 2d at 430 n.13 (Plaintiffs' attorneys "submitted affidavits from another recent IDEA case, which was before Judge Crotty in the Southern District of New York. However, these affidavits were not created for the purpose of demonstrating that the fees sought by [plaintiffs' attorneys] are reasonable in this case." (citations omitted)); Tatum v. City of N.Y., 06 Civ. 4290, 2010 WL 334975 at *4 (S.D.N.Y. Jan. 28, 2010) (affidavits submitted by attorneys in different case did not support fee application in present case); see also, e.g., A.R. v. N.Y.C. Dep't of Educ., 407 F.3d at 82 (no abuse of discretion where district court declined to credit attorney affidavits, submitted in support of the DOE's fee position, that it "found unpersuasive").[11]

---

[10]   Indeed, the Court in the case in which the affidavits were submitted found that "the rate sought by [plaintiff's counsel] is unreasonably high." E.F. v. N.Y.C. Dep't of Educ., 11 Civ. 5243, 2012 WL 5462602 at *5 (S.D.N.Y. Nov. 8, 2012).

[11]   For the same reason, the Court is not persuaded by the submitted affidavits in the context of
(continued...)

Having considered all of the relevant factors and finding the parties' remaining arguments to be without merit, the Court concludes that $375 is a reasonable hourly rate for Prof. Hill in this case.

### 2.   LSLS Law Student Interns

The parties do not dispute that the law student interns should be compensated at rates similar to those charged by paralegals in the prevailing market. (Dkt. No. 19: M.C. Br. at 15; Dkt. No. 23: DOE Opp. Br. at 24.) See, e.g., Moon v. Gab Kwon, 99 Civ. 11810, 2002 WL 31512816 at *3 (S.D.N.Y. Nov. 8, 2002) (Lynch, D.J.) ("Like paralegals, law student clerks are compensated at prevailing market rates. Students are generally billed at rates similar to those of paralegals . . . ." (citation omitted)).

In light of their relative experience, the Court finds that the law student interns should be compensated at $125 per hour, which is the prevailing market rate in this District for paralegals in similar cases. See, e.g., T.K. v. N.Y.C. Dep't of Educ., 11 Civ. 3964, 2012 WL 1107660 at *6 (S.D.N.Y. Mar. 30, 2012) (approving $125 paralegal rate); E.F. v. N.Y.C. Dep't of Educ., 11 Civ. 5243, 2012 WL 5462602 at *6 (S.D.N.Y. Nov. 8, 2012) (approving $125 paralegal rate); Torres v. Gristede's Operating Corp., 04 Civ. 3316, 2012 WL 3878144 at *4 (S.D.N.Y. Aug. 6, 2012) (approving $125 paralegal rate), aff'd, No. 12-3336-cv, --- F. App'x ----, 2013 WL 2257859 at *2 (2d Cir. May 22, 2013) (Defendant "does not challenge the reasonableness of the hourly rates assigned by the district court here. Nor could it."); K.F. v. N.Y.C. Dep't of Educ., 10 Civ. 5465,

---

[11]/    (...continued)
deciding reasonable hourly rates for the law student interns. (See Hill Aff. ¶ 19 & Exs. I, K; Dkt. No. 19: M.C. Br. at 17.) Rates charged in different cases by paralegals who focus on special education law are not relevant to determining the reasonable rates for the largely inexperienced law student interns in this case. (See pages 4-6 above.)

2011 WL 3586142 at *6 (S.D.N.Y. Aug. 10, 2011) (approving $125 paralegal rate in IDEA case); J.S. v. Carmel Cent. Sch. Dist., 10 Civ. 8021, 2011 WL 3251801 at *4, *7 (S.D.N.Y. July 26, 2011) (approving $125 paralegal rate in IDEA case), aff'd, 501 F. App'x 95 (2d Cir. 2012); Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 514 (S.D.N.Y. 2011) (Peck, M.J.); LV v. N.Y.C. Dep't of Educ., 700 F. Supp. 2d 510, 523-24 (S.D.N.Y. 2010) (approving $125 paralegal rate where plaintiffs "provided biographical information about each of [the non-profit's] paralegals" that was sufficient "to establish the reasonableness of the rates"); Tatum v. City of N.Y., 06 Civ. 4290, 2010 WL 334975 at *5 (S.D.N.Y. Jan. 28, 2010) ("The case law, however establishes that $125 is within the range of rates typically awarded for paralegal work in this District, and that is the rate that will be applied."); see also, e.g., Moon v. Gab Kwon, 2002 WL 31512816 at *2 ("In the Southern District, paralegal fees have recently been awarded at rates ranging from $75 to $130, depending on the amount of experience possessed by the paralegal.").

M.C.'s argument that a $150 hourly rate is warranted because the law student interns, unlike paralegals, have completed one or more years of law school (M.C. Br. at 18), is unavailing. See, e.g., Barile v. Allied Interstate, Inc., 12 Civ. 916, 2013 WL 795649 at *6-7 (S.D.N.Y. Jan. 30, 2013) (Plaintiff "seeks recovery at the rate of $180 per hour for [an intern], who apparently worked for the Firm for one summer, prior to entering her third year of law school. . . . A law student, however, should not be compensated at the same rate as a law school graduate. Rather, '[a] law student's time is compensable in an award of attorney fees at the same rate as a paralegal.' Accordingly, I recommend that [the intern's] work be compensated at a paralegal rate of $100/hour." (citation omitted)), report & rec. adopted, 2013 WL 829189 (S.D.N.Y. Mar. 4, 2013); Kadden v. VisuaLex, LLC, 11 Civ. 4892, 2012 WL 6097656 at *2 (S.D.N.Y. Dec. 6, 2012) (The law clerk "is a 2012 law graduate, which means presumably he was a law student during much of the relevant

time period. Regardless of the level of skill he displays, a law clerk cannot expect to garner fees similar to those earned by a junior associate who is license[d] to practice law. . . . A reasonable rate for [the law clerk's] time is therefore $100 per hour."); LV v. N.Y.C. Dep't of Educ., 700 F. Supp. 2d at 520 (awarding $100 per hour for work performed prior to being admitted to the bar); Heng Chan v. Sung Yue Tung Corp., 03 Civ. 6048, 2007 WL 1373118 at *4 (S.D.N.Y. May 8, 2007) (Lynch, D.J.) (awarding "$100 per hour for pre-admission work").[12]

Nor does the nature of this case warrant a higher hourly rate since, even assuming arguendo there were any merit to M.C.'s characterization of the case as "complicated" or "complex" (M.C. Br. at 3, 11-12), such factors "more appropriately inform the amount of time an attorney should have spent on a matter, and do not necessarily relate to the rate an attorney may reasonably charge for those hours." G.B. v. Tuxedo Union Free Sch. Dist., 894 F. Supp. 2d 415, 433 n.17 (S.D.N.Y. 2012) (collecting cases); accord, e.g., J.S. v. Carmel Cent. Sch. Dist., 501 F. App'x 95, 99 (2d Cir. 2012) ("[T]he complexity and novelty of the case would be reflected in the number of billable hours rather than in a lodestar adjustment."); Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 537 n.1 (S.D.N.Y. 2008).[13]

---

[12]   See also, e.g., Dweck v. Amadi, 10 Civ. 2577, 2012 WL 3020029 at *4 (S.D.N.Y. July 6, 2012) ("The paralegal who worked on the matter is described as a third-year law student and, subsequently, a law school graduate. I also conclude that $75 per hour is a reasonable rate for the paralegal's services." (citation omitted)), report & rec. adopted, 2012 WL 3024185 (S.D.N.Y. July 24, 2012); T.K. v. N.Y.C. Dep't of Educ., 2012 WL 1107660 at *6 (approving $90 rate for legal interns and $125 for paralegals); J.S. v. Carmel Cent. Sch. Dist., 2011 WL 3251801 at *7 (approving $90 rate for legal intern); Moon v. Gab Kwon, 2002 WL 31512816 at *3 (approving $80 rate "for the services of seven law students who worked as student interns" at "Fordham University School of Law's clinic, Lincoln Square Legal Services" in 2002).

[13]   In any event, the Court agrees with the DOE that this single-plaintiff IDEA case was not sufficiently complicated or complex to warrant an increased award. (DOE Opp. Br. at 20.)
(continued...)

Having considered the relevant factors and finding the parties' remaining arguments to be meritless, the Court concludes that $125 is a reasonable hourly rate for the law student interns.

**B.**     **Time Expended**

In determining whether the amount of hours billed is reasonable "the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'" Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40 (1983)). "In so doing, 'the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.'" Bliven v. Hunt, 579 F.3d at 213. "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" Cesario v. BNI Constr., Inc., 07 Civ. 8545, 2008 WL 5210209 at *7 (S.D.N.Y. Dec. 15, 2008) (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992), cert. denied, 506 U.S. 1053, 113 S. Ct. 978 (1993)), report & rec. adopted, 2009 WL 424136 (S.D.N.Y. Feb. 19, 2009); accord, e.g., Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 12 Civ. 5456, 2013 WL 174226 at *7 (S.D.N.Y. Jan. 17, 2013) (Peck, M.J.), report & rec. adopted, 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013).

**1.**     **The DOE's Requests To Strike Certain Billing Entries**

The DOE urges the Court to strike specific entries from M.C.'s attorneys' billing records, arguing that: (a) 3.25 of the 4.25 hours billed by Prof. Hill for the September 21, 2010 IHO

---

[13]/     (...continued)
Compare LV v. N.Y.C. Dep't of Educ., 700 F. Supp. 2d at 515 (attorneys representing a class of IDEA plaintiffs in a "factually and logistically challenging" case were entitled to higher hourly rate because the case "was much more complex than the ordinary single-plaintiff lawsuit"), with E.F. v. N.Y.C. Dep't of Educ., 2012 WL 5462602 at *4.

hearing should be struck because the transcript reflects the hearing lasted approximately one hour, and 4.25 hours billed by Intern 5 for the same hearing should be struck as "obvious unnecessary overstaffing" (Dkt. No. 23: DOE Opp. Br. at 5-7);[14/] (b) 11.58 hours billed by the law student interns in connection with M.C.'s request for private school placement should be struck because the IHO did not grant the requested placement outright (id. at 10-12); and (c) 66.7 hours billed by the law student interns and two hours billed by Prof. Hill for preparing the IHO closing brief should be struck as unreasonable because the twenty-nine page brief was "wholly unnecessary to the successful litigation of plaintiff's administrative hearing" (id. at 7-9).

### a.   The September 21, 2010 IHO Hearing

The DOE argues that the time billed for appearing at the September 21, 2010 IHO hearing should be struck because the hearing lasted only one hour and because it was unnecessary overstaffing for more than one attorney to be present. (Dkt. No. 23: DOE Opp. Br. at 5-7; see Dkt. No. 1: Compl. Ex. C: Billing Records at 27.) In response to the DOE's overstaffing objection—in addition to withdrawing her fee request for Intern 4's time (see n.14)—M.C. points out that Prof. Hill and Intern 5 both participated in witness examinations during the hearing. (Dkt. No. 32: Hill Reply Aff. ¶ 11.) Prof. Hill further argues that while the transcript reflects that the hearing lasted for one hour, additional time was spent waiting for witnesses to arrive, switching hearing rooms, participating in "'extensive off-the-record conversation[s] between [the IHO] and the representatives

---

[14/]   Originally, the DOE also argued that 4.25 hours billed by Intern 4 for the September 21, 2010 IHO hearing should be struck as "obvious unnecessary overstaffing" (DOE Opp. Br. at 6-7), and 15.08 hours billed by the law student interns for work on a summary judgment or default motion should be struck because the motion was never made (id. at 9-10). M.C.'s reply papers withdrew her requests for compensation for both categories of time. (Dkt. No. 32: Hill Reply Aff. ¶¶ 14-15.)

for the parties,'" and participating in post-hearing discussions. (Hill Reply Aff. ¶ 13; Dkt. No. 16:

Hill Aff. Ex. Q: 9/21/10 IHO Tr. at 20; Dkt. No. 30: M.C. Reply Br. at 5-6.)

              The Court finds that it was reasonable for both Intern 5 and Prof. Hill to be present

at the IHO hearing and, particularly in light of M.C.'s voluntary withdrawal of her request for

compensation of Intern 4's time at that hearing, no further reduction is warranted on the basis of

overstaffing. See, e.g., N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d

Cir. 1983) ("[P]revailing parties are not barred as a matter of law from receiving fees for sending

a second attorney to depositions or an extra lawyer into court to observe and assist."); Rozell v.

Ross-Holst, 576 F. Supp. 2d 527, 541 (S.D.N.Y. 2008) ("The defendants argue for an

across-the-board reduction of any award on the grounds that plaintiff's counsel overstaffed the case

. . . . The defendants' concerns are to some extent exaggerated. For instance, while two of plaintiff's

attorneys attended a number of proceedings, these tended to be the most critical points in the

litigation, such as the depositions of key witnesses, where it was entirely appropriate to staff in this

manner."); Etna Prods. Co. v. Q Mktg. Grp., Ltd., 03 Civ. 3805, 2005 WL 2254465 at *4 (S.D.N.Y.

June 6, 2005) ("There similarly is no problem with both [attorneys] participating in the same

conference with the Court or their client."); Moon v. Gab Kwon, 99 Civ. 11810, 2002 WL 31512816

at *5, *6 n.12 (S.D.N.Y. Nov. 8, 2002) (Lynch, D.J.) (rejecting overstaffing objection based on court

attendance by two supervising attorneys and one law student intern); Gavin-Mouklas v. Info.

Builders, Inc., 97 Civ. 3085, 1999 WL 728636 at *5 (S.D.N.Y. Sept. 17, 1999) ("Counsel attended

two status conferences (for which two hours each of supervisor and student time is reasonable), one

pre-motion conference (same plus three student hours and one supervisor hour of preparation is

appropriate), and one settlement conference (for which 2.5 supervisor and 2.5 student hours are

appropriate). Thus, I find 9.5 supervisor and 11.5 student hours to be reasonable for in-court time.").

Additionally, the Court finds that M.C. has adequately substantiated additional time spent off-the-record at the September 21, 2010 hearing, which is properly compensable. See, e.g., Moon v. Gab Kwon, 2002 WL 31512816 at *4 ("An attorney's time spent waiting for court conferences or hearings to begin is time that is appropriately billed to a client, and thus plaintiff can recover it here."); c.f., e.g., Short v. Manhattan Apartments, Inc., 286 F.R.D. 248, 257 (S.D.N.Y. 2012) (rejecting objection to fee application based on inaccurate task duration where "the time entries include other tasks, such as preparation and follow up, that explain any minor discrepancies").

Accordingly, the time billed for appearing at the September 21, 2010 IHO hearing should not be struck.

### b.    The Request For Private School Placement

While the DOE does not dispute that M.C. is the prevailing party and generally entitled to attorneys' fees under the IDEA, it argues that M.C. is not entitled to fees for time spent on M.C.'s request for placement at the School for Language and Communication Development because the IHO "explicitly rejected" that relief. (Dkt. No. 23: DOE Opp. Br. at 10-12.)

As an initial matter, contrary to the DOE's characterization, the IHO did not reject M.C.'s request for private school placement outright, but rather referred the placement decision to a Committee on Special Education ("CSE"):

> [A] duly constituted CSE team is to reconvene, within two-three weeks, to develop an appropriate IEP. Said CSE team is to consider all evaluations and also consider a deferral to CBST [Central Based Support Team] for placement/program and/or the School for Language and Development as a proposed placement.

(Dkt. No. 1: Compl. Ex. B: 12/30/10 IHO Decision at 6.)

Furthermore, "when a plaintiff's claims for relief involve common facts and legal issues, a court should not divide the number of hours expended on a claim-by-claim basis." E.S. v. Katonah-Lewisboro Sch. Dist., 796 F. Supp. 2d 421, 427 (S.D.N.Y. 2011) (quotations omitted), aff'd, 487 F. App'x 619 (2d Cir. 2012). "Thus, a court should not reduce fee requests due to unsuccessful claims if the successful and unsuccessful claims are inextricably intertwined and involve a common core of facts or are based upon related legal theories." E.S. v. Katonah-Lewisboro Sch. Dist., 796 F. Supp. 2d at 427-28 (quotations omitted).

The Court finds that the time spent on M.C.'s request for private school placement is properly compensable because it was sufficiently intertwined with M.C.'s primary claim (denial of a FAPE) and the other relief ordered by the IHO. See, e.g., B.W. v. N.Y.C. Dep't of Educ., 716 F. Supp. 2d 336, 348 (S.D.N.Y. 2010) ("An order for the CSE to develop a new IEP that provides greater benefits than those proposed in the initial IEP is not de minimis relief so minor that it does not warrant attorney's fees, even when the specific placement initially sought is denied."); N.S. v. Stratford Bd. of Educ., 97 F. Supp. 2d 224, 240 (D. Conn. 2000) ("[T]he hearing officer's failure to make a specific directive with regard to [the child's] permanent placement does not impact the determination of whether [the child's] parents are prevailing parties. Indeed, the hearing officer was unable to render a decision on that exact point because of the Board's failures up to that point. The fact that the hearing officer did not design a new IEP herself does not preclude a determination that [the child's] parents are prevailing parties.").[15]

---

[15]  See also, e.g., Hensley v. Eckerhart, 461 U.S. 424, 435 & n.11, 103 S. Ct. 1933, 1940 & n.11 (1983); G.M. v. New Britain Bd. of Educ., 173 F.3d 77, 81 (2d Cir. 1999); Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 542 (S.D.N.Y. 2008) ("The defendants are correct that the plaintiff did not obtain certain categories of relief sought in her complaint . . . . A plaintiff may still be viewed as having 'obtained a significant and valuable level of success' even if
(continued...)

c.     **The IHO Closing Brief**

Finally, the DOE argues that the time spent preparing M.C.'s IHO closing brief is not compensable because it was an unnecessary submission that served as an academic exercise. (Dkt. No. 23: DOE Opp. Br. at 7-9; see Dkt. No. 16: Hill Aff. Ex. R: M.C. 11/5/10 IHO Closing Br.) It is undisputed that the IHO gave the parties the option of submitting closing briefs or making oral closing statements. (DOE Opp. Br. at 8; see also Hill Aff. Ex. Q: 9/21/10 IHO Tr. at 37.) In light of the extensive relief granted by the IHO, the Court rejects the DOE's argument that the (apparently effective) written closing brief was merely "a helpful learning experience for the Clinic law students." (DOE Opp. Br. at 7.) To the extent the DOE is arguing that the time spent was unreasonable due to the inefficiency inherent in clinical practice, that concern is alleviated by plaintiff's own voluntary deduction of 73.92 hours spent on the closing brief,[16] as well as the Court-imposed percentage reduction taken below. (See pages 23-29 below.)[17]

---

[15]     (...continued)
she did not achieve the precise result originally sought."); Moon v. Gab Kwon, 99 Civ. 11810, 2002 WL 31512816 at *6 (S.D.N.Y. Nov. 8, 2002) (Lynch, D.J.) ("It is well-established . . . that plaintiff does not have to prevail on all of his claims in order for his attorneys to receive 'fully compensatory' fees. Plaintiff has obtained 'excellent results,' establishing his basic claim and receiving a substantial amount of damages, representing almost all of what he sought. . . . Thus, no downward adjustment to the lodestar amount is warranted for [plaintiff's] failure to prevail on every aspect of his claims." (citations omitted)).

[16]     Between October 14 and November 5, 2010, M.C.'s attorneys spent 73.92 hours on the closing brief for which no compensation is sought. (See Dkt. No. 1: Compl. Ex. C: Billing Records at 31-33: 10/17/10 (4 hours); 10/18/10 (5 hours); 10/20/10 (5.33 hours); 10/25/10 (5 hours); 10/26/10 (4 hours); 10/27/10 (5 hours); 10/29/10 (4 hours); 11/1/10 (8 hours); 11/2/10 (1.92 hours); 11/3/10 (14.67 hours); 11/4/10 (7 hours); 11/5/10 (10 hours).)

[17]     See, e.g., E.F. v. N.Y.C. Dep't of Educ., 11 Civ. 5243, 2012 WL 5462602 at *7-8 (S.D.N.Y. Nov. 8, 2012) (the Court did not strike billing entries where it found "excessive hours were spent drafting a forty[-]page brief for the IHO hearing," applying a 15% overall reduction
(continued...)

### 2.     The Law Student Interns' Time Should Be Reduced By Twenty Percent

Finally, the DOE argues for a seventy-five percent reduction to account for the

allegedly excessive and duplicative billing entries that necessarily result from clinical law practice,

"which no doubt provided educational experience, but which were unnecessary," and to further

account for the use of vague billing entries and block-billing. (Dkt. No. 23: DOE Opp. Br. at 12-18.)

The Court has carefully reviewed M.C.'s counsel's time records. (Dkt. No. 1: Compl. Ex. C: Billing

Records; Dkt. No. 30: M.C. Reply Br. Ex. D: Supp. Billing Records.)  The Court agrees that there

was some duplicative and vague billing, and some excess time spent on certain projects or

improperly block-billed, but not to the extent argued by the DOE. To account for this, the Court will

reduce the law student interns' compensable time by twenty percent.

The very nature of a clinical practice—one in which legal representation is combined

with student instruction (see Dkt. No. 16: Hill Aff. ¶¶ 3-6)—often necessitates a substantial

reduction to the number of hours requested in an application for attorneys' fees:

> The potential difficulty in calculating the hours expended in this matter is that
> the litigation was conducted in association with a law school legal clinic, making
> substantial use of law students.  While such use of student labor in some respects
> reduces the cost of litigation, substituting lower-priced law students for more
> expensive junior associates and paralegals, clinical legal education by its nature
> combines the practice of law with instruction, and thus may increase the number of
> hours spent on a case, not only because less experienced student attorneys must
> spend more time accomplishing a task than more experienced personnel, but also
> because the best clinical instruction deliberately invests more time in supervision and
> instruction than a law office can provide.  Moreover, the frequent turnover of law
> students rotating in and out of clinical courses each year or even each semester
> requires more time in getting new staff up to speed than would typically be the case
> in a law firm setting.  Careful examination of the hours claimed in a case litigated by
> a clinic is thus in order, and substantial reductions in the hours charged may be
> warranted.

---

17/     (...continued)
          to remedy the excessive time).

Moon v. Gab Kwon, 99 Civ. 11810, 2002 WL 31512816 at *3 (S.D.N.Y. Nov. 8, 2002) (Lynch,

D.J.); see also, e.g., Petrovits v. N.Y.C. Transit Auth., 95 Civ. 9872, 2004 WL 42258 at *4-5

(S.D.N.Y. Jan. 7, 2004); Gavin-Mouklas v. Info. Builders, Inc., 97 Civ. 3085, 1999 WL 728636 at

*4 (S.D.N.Y. Sept. 17, 1999) ("In determining the number of hours reasonably expended by the law

students and their clinical professors, I have borne in mind that the students are just that, students,

billed at a lower rate than attorneys admitted to practice. I have also considered that the law students

reasonably require more supervision than an associate admitted to practice. Thus, the proportion

of student time to supervisor time reflected below is applicable only to this situation; it is not

intended to reflect any view as to an appropriate proportion of partner and associate time or junior

and senior lawyer time for admitted attorneys in law firms.").

It is the fee applicant's duty to exercise good faith billing judgment to "adjust for this

inefficiency" prior to making a request for attorneys' fees. Moon v. Gab Kwon, 2002 WL 31512816

at *4; accord, e.g., Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40 (1983)

("Counsel for the prevailing party should make a good faith effort to exclude from a fee request

hours that are excessive, redundant, or otherwise unnecessary . . . .").

Where the fee applicant's own billing adjustments are adequately documented and

sufficiently substantial "to account for the unavoidable inefficiency, and overlap between instruction

and litigation, inherent in clinical law practice," the Court need not make additional substantial

reductions. Moon v. Gab Kwon, 2002 WL 31512816 at *4 ("In this case, however, plaintiff's

application has already commendably addressed these issues. The attorney supervisors attest, and

this Court has no reason to doubt their testimony, that they did not record time spent on purely

instructional tasks, and cut all instructional hours from the students' time records. Moreover, . . .

they then took further, substantial across-the-board discounts in their own hours, and even steeper

deductions in the students' hours, to account for the unavoidable inefficiency, and overlap between instruction and litigation, inherent in clinical law practice. Having carefully examined the hours that remain . . . the Court is satisfied that the substantial across-the-board cuts in the hours claimed appropriately adjust for this inefficiency, and also more than account for most of defendants' arguments with regard to the propriety of individual time entries." (citations omitted)).[18]

Here, there is no doubt that M.C.'s attorneys were "proactive in exercising billing judgment prior to making the demand for attorneys' fees." (Hill Aff. ¶ 44.) M.C.'s attorneys represent they "did not charge for excessive, redundant or unnecessary work" (Hill Aff. ¶ 44), and the billing records show that they seek compensation for only 403.05 of the 1,160.89 hours expended. (See pages 6-7 above; Compl. Ex. C: Billing Records; M.C. Reply Br. Ex. D: Supp. Billing Records.) Cf., e.g., Moon v. Gab Kwon, 2002 WL 31512816 at *6 (defendants' objections

---

[18]    See also, e.g., Torres v. Gristede's Operating Corp., No. 12-3336-cv, --- F. App'x ----, 2013 WL 2257859 at *1 n.1 (2d Cir. May 22, 2013) (affirming 15% overall reduction where plaintiffs had already "corrected for, among other things, 'duplicative, vague, or erroneously billed entries'" by making "their own 'voluntary reductions' of the requested fees by 25% and costs by 6%, prior to the district court's discounting the revised amounts"); LV v. N.Y.C. Dep't of Educ., 700 F. Supp. 2d 510, 524-25 (S.D.N.Y. 2010) ("District courts have 'ample discretion' in 'assessing the extent of staffing and background research appropriate for a given case.' While '[t]he use of multiple attorneys . . . is not unreasonable per se,' courts should reduce the hours actually expended to account for 'duplicative or repetitive work.' Here, . . . the staffing led to certain inefficiencies as, for example, that three or more plaintiffs' attorneys often attended depositions. The duplication is also in evidence in the time plaintiffs' attorneys spent in team meetings and conferences together conferring about strategy. [Plaintiffs' law firm] has already factored potential inefficiencies into its hours, cutting 359.05 hours of time for which [plaintiffs'] lawyers actually billed, and writing off 209 hours of work performed by [plaintiffs'] attorneys and paralegals who billed less than 20 hours on the case through June 30, 2008. [Plaintiffs' law firm] has also chosen to bill 132.75 hours of [a law firm partner's] time at paralegal rates despite the fact he is a seasoned . . . litigator, because his work was similar to that later performed by paralegals in the case. Plaintiffs' use of billing judgment recommends against another large deduction here; the Court will simply reduce plaintiffs' hours across the board by an additional five percent." (citations omitted)).

"on the grounds of excessiveness and inefficiency" were "mooted" where the overall "reduction taken by plaintiff's counsel was designed to account for the inefficiency inherent in the students' work").

      Further, the Court finds that many of the specific entries that the DOE identifies as excessive or unnecessary are in fact properly compensable. For example, the DOE objects to six hours "spent 'mooting arguments . . . in preparation for the hearing'" and 8.33 hours spent "drafting and editing direct and cross examination questions." (DOE Opp. Br. at 16.) These billing entries are neither unnecessary nor unreasonable, and do not justify a reduction. See, e.g., Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 540 (S.D.N.Y. 2008) ("It is entirely proper, however, to bill a client for a mock trial exercise devoted to the case at hand. Just as preparation for oral argument frequently involves a moot court, so may preparation for an evidentiary presentation appropriately include a mock trial." (citation omitted)); Moon v. Gab Kwon, 2002 WL 31512816 at *6 ("[D]efendants argue that 65.45 hours of 'mooting,' or rehearsing a deposition or other court proceeding, represents pedagogical activities that would not have been performed in a private law firm, and thus are not properly billed to defendants. However, private law firms often use mooting to prepare even the most experienced litigators for trials and oral arguments, and would be ill-advised to allow their attorneys to 'perform' in court unrehearsed; indeed, lawyers have been known to rehearse entire trials before mock juries, for similar reasons. Such time is appropriately billed to clients." (citations omitted)); BD v. DeBuono, 177 F. Supp. 2d 201, 204 (S.D.N.Y. 2001) (McMahon, D.J.) ("If plaintiffs' counsel had organized mock trials themselves . . . the hourly rates they charged for those services would be reimbursable as part of an attorneys' fee award" under the IDEA.).

      Likewise, the Court rejects the DOE's contention that a reduction is warranted for 8.08 hours spent preparing research memoranda. (DOE Opp. Br. at 16-17.) See, e.g., N.Y.S. Ass'n

for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983) ("Nor are counsel forbidden from receiving fees for background research."); G.B. v. Tuxedo Union Free Sch. Dist., 894 F. Supp. 2d 415, 436, 437 n.20 (S.D.N.Y. 2012) (finding "an overall reduction for excessive or unnecessary time entries" was not warranted where the "contested time entries include:  4.5 hours spent . . . conducting legal research on numerous issues concerning the SRO appeal, 1.1 hours spent . . . researching the NYCRR rules of practice, and .8 hours spent . . . researching legislative and DOE updates"). The Court similarly takes no issue with the billing entries for "20.67 hours . . . dedicated simply to compiling time records and drafting the fee demand" or "11 hours the law students utilized to draft the Due Process Complaint." (DOE Opp. Br. at 15, 17.) See, e.g., LV v. N.Y.C. Dep't of Educ., 700 F. Supp. 2d at 526-27 ("Plaintiffs request fees in connection with the preparation of their fee application.  The law is clear that prevailing plaintiffs—which, here, defendants acknowledge that plaintiffs are—are entitled to such fees." (citation omitted)); Petrovits v. N.Y.C. Transit Auth., 2004 WL 42258 at *6 (finding two attorneys reasonably spent 29.1 hours preparing the initial fee application, which was reduced from the 49.1 hours they requested for that work); Moon v. Gab Kwon, 2002 WL 31512816 at *5 (rejecting defendants' argument that "hours spent on the fee application should not be compensated, because they represent time spent reducing students' claimed hours" and concluding that those "hours appear to have been necessary to proper preparation of the fee application and not redundant, and so they will be awarded in full"); Gavin-Mouklas v. Info. Builders, Inc., 1999 WL 728636 at *5 ("Given the rather routine nature of this case, and the brief notice pleading complaint, ten hours of student time and three hours of supervisor time is reasonable for these tasks," i.e., preparation of the complaint.).

        Nevertheless, some duplicative and excessive billing entries remain that justify a reduction, including the unreasonable number of hours billed for team meetings, conferences,

discussions and the like.[19] Additionally, the law student interns' use of vague and block-billing entries further justifies a reduction.[20]

        To account for these billing deficiencies, the Court will reduce the number of compensable law student hours by twenty percent, from 389.64 to 311.71. See, e.g., Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (affirming district court's fee reduction of twenty percent "for vagueness, inconsistencies, and other deficiencies in the billing records"); Hicks v. Vane Line Bunkering, Inc., 11 Civ. 8158, 2013 WL 1747806 at *10-11 (S.D.N.Y. Apr. 16, 2013) (twenty percent fee reduction warranted for "unclear and sometimes duplicative billing entries"); Harris v. Fairweather, 11 Civ. 2152, 2012 WL 3956801 at *8 (S.D.N.Y. Sept. 10, 2012) (Peck, M.J.) ("In light

---

[19]    See Compl. Ex. C: Billing Records: 10/28/09 (2 hours, "Team meeting"); 1/25/10 (2 hours, "Discuss with [co-intern]"); 1/25/10 (0.5 hours, "Met with team"); 1/26/10 (1 hour, "Team meeting"); 2/1/10 (0.5 hours, "Conference with team"); 2/8/10 (1 hour, "Student Team, Met with team"); 2/15/10 (1.7 hours, "Student Team; Met with team"); 2/23/10 (1 hour, "Conference with team"); 3/10/10 (1 hour, "Discussed with team"); 3/26/10 (0.5 hours, "Talked with [co-intern]"); 4/21/10 (0.5 hours, "Conference with team"); 9/14/10 (2.5 hours, "Meeting with team"); 9/16/10 (3 hours, "met with team"); 9/16/10 (2.58 hours, "Met with team"); 9/20/10 (2 hours, "Met with partner"); 9/28/10 (2.5 hours, "met with team"); 10/15/10 (1 hour, "Conference - Discussing . . . with team"); 10/17/10 (2.5 hours, "Conference . . . with team"); 10/28/10 (4 hours, "Meeting - Student Team"); 11/4/10 (2 hours, "Meeting with team"); see also M.C. Reply Br. Ex. D: Supp. Billing Records: 11/12/12 (0.75 hours, "Meeting - Student Team"); 2/19/13 (0.7 hours, "Meeting - Supervision with Professor"); 3/20/13 (0.03 hours, "Correspondence with team and supervisor"); 3/21/13 (0.07 hours, "Telephone Call with team"); 4/3/13 (0.6 hours, "Meeting - Student Team"); 4/3/13 (0.07 hours, "Correspondence with . . . team member from last semester"); 4/3/13 (0.33 hours, "Conference with team and supervisor"); 4/3/13 (0.25 hours, "Meeting - Student Team"); 4/12/13 (0.17 hours, "Correspondence with team"); 4/14/13 (0.08 hours, "Correspondence with team and supervisor"); 4/16/13 (0.17 hours, "Telephone Call with team").

[20]    See, e.g., Compl. Ex. C: Billing Records: 3/10/10 (1 hour, listing telephone call, team discussion, independent evaluator contact, and medical appointment tasks); 4/23/10 (5 hours, listing telephone call and email pertaining to DOE adjournment request, telephone call pertaining to private school placement issue, and discussion with supervising attorney); 9/16/10 (2.58 hours, listing team meeting and research tasks pertaining to impartial hearings generally and summary judgment motions).

of the . . . vague billing entries and excessive time spent on certain tasks, the Court should reduce

the total attorneys' fees sought by twenty percent . . . ."), report & rec. adopted, 2012 WL 5199250

(S.D.N.Y. Oct. 19, 2012); Trs. of N.Y. Oil Heating Ins. Fund v. Anchor Tank Lines Corp., 09 Civ.

9997, 2011 WL 767162 at *4-5 (S.D.N.Y. Mar. 4, 2011) (Peck, M.J.) (twenty percent fee reduction),

report & rec. adopted as modified on other grounds, 2011 WL 1641981 (S.D.N.Y. Apr. 29, 2011);

All-Star Mktg. Grp., LLC v. Media Brands Co., 775 F. Supp. 2d 613, 617, 629 (S.D.N.Y. 2011)

(Peck, M.J.) (over twenty percent fee reduction); Grievson v. Rochester Psychiatric Ctr., 746 F.

Supp. 2d 454, 469, 471 (W.D.N.Y. 2010) (twenty percent reduction for "excessive, vague, unrelated

entries"); Auscape Int'l v. Nat'l Geographic Soc'y, 02 Civ. 6441, 2003 WL 21976400 at *5 (S.D.N.Y.

Aug. 19, 2003) (twenty percent reduction for "inefficiencies due to over-staffing and excessive time

expenditures"), adopted, 2003 WL 22244953 (S.D.N.Y. Sept. 29, 2003).[21]

---

[21]     See also, e.g., Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 12 Civ. 5456, 2013 WL 174226
at *10 (S.D.N.Y. Jan. 17, 2013) (Peck, M.J.) (20% fee reduction), report & rec. adopted,
2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013); E.S. v. Katonah-Lewisboro Sch. Dist., 796 F.
Supp. 2d 421, 433 (S.D.N.Y. 2011) ("Plaintiffs' counsel's excessive, redundant, unnecessary,
and vague billing requires an across-the-board reduction of the time for which they seek
compensation."), aff'd, 487 F. App'x 619 (2d Cir. 2012); Etna Prods. Co. v. Q Mktg. Grp.,
Ltd., 03 Civ. 3805, 2005 WL 2254465 at *10 (S.D.N.Y. June 6, 2005) ("[W]hile a client
ordinarily may add lawyers to its team whenever it wishes to do so, any experienced litigator
knows that this inevitably will lead to a certain degree of inefficiency. Here, although [the
old firm] remained involved in this case to some extent, the addition of [the new firm] was
really a substitution of counsel, at least insofar as the trial was concerned. As a result, some
of the time that [the old firm] expended in this case was likely duplicative of time that [the
new firm] billed. Moreover, the [the new firm's] attorneys obviously had to spend time
educating themselves about factual details that [the old firm's attorney] had already
mastered. . . . The effect of these two factors on the cost of this litigation is not something
that is readily quantified. Nonetheless, some offset clearly is appropriate so that the
Defendants are only required to pay their adversary's reasonable attorneys' fees. For this
reason, I have concluded that [the old firm's] bills for legal fees . . . should be reduced by
twenty percent after all other adjustments have been made."); Petrovits v. N.Y.C. Transit
Auth., 2004 WL 42258 at *5 (applying 20% reduction to account for "'the unavoidable
inefficiency . . . inherent in clinical law practice'").

An overall reduction is not warranted for Prof. Hill's time, as the Court finds 13.41 hours to be reasonable for a supervising attorney in comparison to the law student intern hours being awarded. See, e.g., Morales v. Cancun Charlie's Rest., No. 07-cv-1836, 2010 WL 7865081 at *9 (D. Conn. Nov. 23, 2010) (awarding reasonable fees "based on 577 hours of work by law student interns and 71 hours of work by clinical supervisors"); Moon v. Gab Kwon, 2002 WL 31512816 at *6 ("The resulting total of 519.98 student hours appears reasonable, particularly considering that the ratio of student hours to the approximately 450 hours spent by the senior attorneys on the case reflects a very modest ratio of associate/paralegal hours to senior attorney hours expended on the case."); Gavin-Mouklas v. Info. Builders, Inc., 1999 WL 728636 at *6-7 (attorneys' fees awarded for 161.5 hours spent by nine law students and 47.5 hours spent by their supervising attorney).

## C.   Summary Of Attorneys' Fees Award

In total, M.C. is entitled to attorneys' fees for 325.12 hours for a total award of $43,993, which is within the range of attorneys' fees awarded in similar cases in this District. See, e.g., E.F. v. N.Y.C. Dep't of Educ., 11 Civ. 5243, 2012 WL 5462602 at *8 (S.D.N.Y. Nov. 8, 2012) (awarding $108,968.13 for 261.38 hours in single-plaintiff IDEA case); T.K. v. N.Y.C. Dep't of Educ., 11 Civ. 3964, 2012 WL 1107660 at *7 (S.D.N.Y. Mar. 30, 2012) (awarding $34,569 in a single-plaintiff IDEA case, including $11,312 in the federal action to recover the fees, and $23,257 for 87.88 hours spent on the administrative proceeding after a fifty percent reduction to account for the limited success achieved); E.S. v. Katonah-Lewisboro Sch. Dist., 796 F. Supp. 2d 421, 433 (S.D.N.Y. 2011) (awarding $153,870.40 in attorneys' fees for 658.8 hours in single-plaintiff IDEA case), aff'd, 487 F. App'x 619 (2d Cir. 2012); Morales v. Cancun Charlie's Rest., No. 07-cv-1836, 2010 WL 7865081 at *9 (D. Conn. Nov. 23, 2010) (finding plaintiff's hours were reasonable and awarding $71,215.20 in attorneys' fees "based on 577 hours of work by law student interns and 71

hours of work by clinical supervisors" who billed at $80 per hour and $350 per hour respectively); Moon v. Gab Kwon, 99 Civ. 11810, 2002 WL 31512816 at *3, *6-7 (S.D.N.Y. Nov. 8, 2002) (Lynch, D.J.) (awarding $198,022.40 in attorneys' fees for approximately 520 law student intern hours and 450 attorney hours where the prevailing plaintiff was represented by LSLS and the law student interns were participants in a Fordham Law School clinic); see also, e.g., J.S. v. Carmel Cent. Sch. Dist., 10 Civ. 8021, 2011 WL 3251801 at *8 (S.D.N.Y. July 26, 2011) (finding "the requested fees for the federal action reasonable" and awarding $14,487.50 in attorneys' fees for 60.6 hours), aff'd, 501 F. App'x 95 (2d Cir. 2012).

The chart below summarizes the fees awarded to M.C.'s counsel:

| Attorney(s) | Hours Sought | Reduction Applied | Hours Allowed | Rate | Total |
|---|---|---|---|---|---|
| Prof. Hill | 13.41 | - | 13.41 | $375 | $5,028.75 |
| Law Student Interns | 389.64 | 20% | 311.71 | $125 | $38,963.75 |
| Total: | | | | | $43,993 |

## CONCLUSION

For the reasons set forth above, M.C.'s summary judgment motion (Dkt. No. 15) should be GRANTED as modified herein and M.C. should be awarded $43,993 in attorneys' fees.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Colleen McMahon, 500 Pearl Street, Room 1350, and to my chambers, 500 Pearl Street, Room

32

1370.  Any requests for an extension of time for filing objections must be directed to Judge

McMahon (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver

of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985);

Ingram v. Herrick, 475 F. App'x 793, 793 (2d Cir. 2012); IUE AFL-CIO Pension Fund v. Herrmann,

9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v.

Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied,

506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16

(2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson,

714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:       New York, New York
             June 4, 2013

                                    Respectfully submitted,



                                    Andrew J. Peck
                                    United States Magistrate Judge

Copies ECF to:       All Counsel
                     Judge Colleen McMahon